**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LIAT ATZILI, | |
| *Plaintiff*, | |
| v. | |
| | Civil Action No. <u>1:24-cv-03365-CJN</u> |
| ISLAMIC REPUBLIC OF IRAN<br>Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street<br>Tehran, Iran, | |
| HARAKAT AL-MUQAWAMA AL-ISLAMIYA A/K/A/ HAMAS<br>c/o Waqfiya Al-Ri'aya Al Usra Al-Filistinya Wa Al-Lubnanya<br>PO Box 1267925<br>Beirut, Lebanon, | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SERVE DEFENDANTS CHANGPENG ZHAO AND HARAKAT AL-MUQAWAMA AL-ISLAMIYA PURSUANT TO FED. R. CIV. P. 4(f)(3)** |
| BINANCE HOLDINGS LIMITED, D/B/A BINANCE.COM<br>Sertus Chambers, Governors Square Suite #5-204<br>23 Lime Tree Bay Avenue<br>P.O. Box 2547<br>Grand Cayman, KY1-1104<br>Cayman Islands, | |
| BAM MANAGEMENT US HOLDINGS, INC.<br>252 NW 29th Street<br>Suite 905<br>Miami, Florida 33217, | |
| BAM TRADING SERVICES INC. D/B/A BINANCE.US<br>252 NW 29th Street<br>Suite 905<br>Miami, Florida 33217, | |
| AND | |

CHANGPENG ZHAO
118, 57VJ+6HW - Dubai Fountain St
Downtown Dubai
Dubai
United Arab Emirates,

*Defendants.*

# Table of Contents

TABLE OF AUTHORITIES ...........................................................................................................3

I.    INTRODUCTION ..............................................................................................................5

II.   RELEVANT FACTS ..........................................................................................................5

A.   CHANGPENG ZHAO ............................................................................................................6
B.   HAMAS ................................................................................................................................8
I.    PLAINTIFF ATTEMPTED TO SERVE HAMAS AT ITS LAST KNOWN ADDRESS IN LEBANON...........8
II.   SERVING HAMAS VIA AL JAZEERA WOULD PROVIDE HAMAS WITH REASONABLE NOTICE ....10

III.  LEGAL STANDARD ........................................................................................................12

IV.   ARGUMENT ....................................................................................................................13

A.   THE COURT SHOULD DEEM SERVICE OF THE COMPLAINT VIA MAIL SUFFICIENT FOR BOTH
CZ AND HAMAS .....................................................................................................................13
B.   SERVICE ON CZ CANNOT BE EFFECTED THROUGH THE HAGUE CONVENTION .....................14
C.   PLAINTIFF SHOULD BE PERMITTED TO SERVE CZ BY SERVING HIS COUNSEL OF RECORD IN
THE *RANAAN* CASE..................................................................................................................16
D.   SERVICE THROUGH X (TWITTER) IS APPROPRIATE BECAUSE CZ IS AN INVESTOR IN AND
FREQUENT USER OF X..............................................................................................................17
E.   SERVICE OF PROCESS ON HAMAS VIA PUBLICATION IN *AL JAZEERA* IS APPROPRIATE..........18

V.    CONCLUSION ................................................................................................................20

CERTIFICATE OF SERVICE ...................................................................................................21

## Table of Authorities

**Cases**

*Aboulgaed v. Hifter*, No. CV 20-298 (CKK), 2020 WL 12765270, at *1 (D.D.C. Apr. 28, 2020) .................................................................................................................................... 19

*Carillo v. Sabbadini*, 2025 WL 30446 (S.D.N.Y. Jan. 27, 2025) ................................................ 18

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, No. 03CIV.8554(LTS)(JCF), 2005 WL 1123755 (S.D.N.Y. May 11, 2005) .................................................................................... 14

*Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74 (D.C. Cir. 2014) .......................................................................................................................... 12, 16

*Juniper Networks, Inc. v. Bahattab,* Civil Action No. 07–1771(PLF), 2008 WL 250584 (D.D.C. Jan. 30, 2008) ........................................................................................................ 19

*Kaplan v. Hezbollah*, 715 F. Supp. 2d 165 (D.D.C. 2010) ......................................................... 13

*Lewis v. Dimeo Const. Co.,* 41 F. Supp. 3d 108 (D. Mass. 2014) ............................................... 14

*Marks v. Alfa Grp.,* 615 F. Supp. 2d 375 (E.D. Pa. 2009) .......................................................... 14

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).............................. 12, 17, 18

*Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005) ............................................................... 14, 18

*Saleh v. Al Nahyan,* No. CV 20-1168 (ABJ), 2021 WL 7210780 (D.D.C. July 16, 2021) .... 14, 16

*Smith v. Islamic Emirate of Afghanistan,* No. 01 CIV 10132 (HB), 2001 WL 1658211 (S.D.N.Y. Dec. 26, 2001).................................................................................................. 19

*St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-CV-3240-LB, 2016 WL 5725002 (N.D. Cal. Sept. 30, 2016) ...................................................................................................... 12, 18

*Strange v. Islamic Republic of Iran*, No. CV 14-435 (CKK), 2019 WL 13158028 (D.D.C. June 4, 2019) ......................................................................................................................... 12

*WhosHere, Inc. v. Gokhan Orun*, 2014 670817 (E.D. Va. Feb. 20, 2014) ................................. 18

**Other Authorities**

@cz_binance, X, https://x.com/cz_binance, last accessed January 28, 2025 .......................... 7, 17

Al Jazeera, *The Power of Al Jazeera*, AL JAZEERA, https://commercial.aljazeera.net/ (last accessed January 28, 2025)............................................................................................... 11

Associated Press, *Advertising*, https://contentservices.ap.org/advertising/ (last accessed Feb. 5, 2025) .................................................................................................................................. 11

Catarina Demony & Sergio Goncalves, *Binance CEO Says Support for Free Speech is Reason He Invested in Twitter*, REUTERS (Nov. 1, 2022) https://www.reuters.com/technology/binance-ceo-says-support-free-speech-is-reason-he-invested-twitter-2022-11-01/ (last accessed January 22, 2025)................................................................................................................... 8, 17

Emmanuel Fabian, *IDF Releases More Documents it Says Show Cooperation Between Hamas and Al Jazeera*, THE TIMES OF ISRAEL (Oct. 24, 2024) https://www.timesofisrael.com/idf-releases-more-documents-it-says-show-cooperation-between-hamas-and-al-jazeera/, (last accessed January 21, 2025).......................................................................................... 11

Emmanuel Fabian, *IDF Says Gaza Documents Prove Al Jazeera Journalists are Hamas, PIJ Documents*, THE TIMES OF ISRAEL (OCT. 23, 2024) https://www.timesofisrael.com/idf-says-gaza-documents-prove-6-al-jazeera-journalists-are-hamas-pij-operatives/, (last accessed January 28, 2025)................................................................................................................. 11

Giacomo Togini, *Inside the Secret Dubai Homes of CZ, Mukesh Ambani, and 20 Other Billionaires*, FORBES (MAY 14, 2024)

https://www.forbes.com/sites/giacomotognini/2024/05/14/inside-the-secret-dubai-homes-cz-mukesh-ambani-billionaires-binance/ (last accessed Jan. 28, 2025) .................................... 6, 15

https://x.com/cz_binance (last accessed on January 28, 2025) ....................................................... 7

Kali Robinson, *What is Hamas?*, COUNCIL ON FOREIGN RELATIONS (Oct. 17, 2024)
https://www.cfr.org/backgrounder/what-hamas (last accessed Jan. 28, 2025) .......................... 8

Nikhilesh De, *Freed from Prison, Binance Founder CZ Gets Ovation in Dubai and Talks New Educational Venture*, COINDESK (Oct. 31, 2024)
https://www.coindesk.com/policy/2024/10/31/cz-talks-prison-new-educational-venture-at-first-public-appearance-since-release-from-us-jail (last accessed Jan. 28, 2025) ..................... 6

Reuters, *Binance Founder Zhao Released from US Custody, Bloomberg News Reports*, REUTERS, (Sept. 27, 2024) https://www.reuters.com/technology/binance-founder-zhao-released-us-custody-bloomberg-news-reports-2024-09-27/ (last accessed Jan. 28, 2025)............................ 6

The Associated Press, *Rare Multiformat Interview with Hamas Leader Breaks News* (May 3, 2024) https://www.ap.org/news-highlights/best-of-the-week/first-winner/2024/rare-multiformat-interview-with-hamas-leader-breaks-news/ (last accessed Feb. 5, 2025) ............ 11

U.S. Dep't of State, United Arab Emirates Judicial Assistance Information, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/UnitedArabEmirates.html  (last updated Mar. 23, 2018) ..................................... 15

**Rules**

Fed. R. Civ. P. 4(f) .............................................................................................................. passim

## I.    Introduction

Plaintiff, by and through counsel, respectfully moves this Court to find that Plaintiff has sufficiently served both Hamas and Changpeng Zhao ("CZ"). To the extent the Court determines that service to this point has not satisfied the requirements of Rule 4, Plaintiff alternatively requests permission from the Court serve CZ and Hamas through alternate means in accordance with Fed. R. Civ. P. 4(f)(3). Further, to the extent the Court is not inclined to permit these defendants to be served via alternative means, Plaintiff respectfully requests an extension of the time required to serve the defendants via other means.

Plaintiff met and conferred with counsel for Binance Holdings Limited and the BAM entities in advance of filing this motion. Counsel for the BAM entities indicated that they take no position on the Motion, while counsel for Binance Holdings Limited indicated without elaboration that they do not consent to the Motion.

## II.    Relevant Facts

On October 7, 2023, Plaintiff Liat Atzili was taken hostage by Hamas. Her husband, Aviv, was killed, and her house was burned down. On November 29, 2024, Ms. Atzili commenced this action against Defendants for their role in her capture and the injuries she suffered as a result. Ms. Atzili now seeks to expedite service of process on these defendants so that all parties can proceed with adjudicating this case on its merits and avoid undue delays.

### a. Changpeng Zhao

Defendant Changpeng Zhao ("CZ") is the former CEO of Defendant Binance Holdings Ltd. (hereinafter "BHL"). He resided in federal prison in the United States from May 2024 through September 2024.[1] Upon his release, CZ appears to have relocated to Dubai.[2]

Following the commencement of this action, Plaintiff's counsel was contacted by counsel for BHL and the BAM Defendants. Declaration of Marlene Goldenberg (hereinafter "Goldenberg Dec."), ¶ 4. Plaintiff asked if either would be representing CZ but was told neither currently represents him. *Id.* Plaintiff is aware, however, that the attorneys representing BHL in the above-captioned action represent CZ in another similar case, *Ranaan et al. v. Binance Holdings Limited, et al.* Goldenberg Dec., Exs. A, B, and C.

After confirming that CZ was not presently represented in this action, on January 10, 2025, Plaintiff FedEx-ed the Summons and Complaint to the address for CZ in Dubai. Goldenberg Dec., ¶ 5. According to the tracking notice, the package was delivered to CZ's residence and was signed for on January 13, 2025. *Id.* Plaintiff respectfully submits that service was therefore effected upon CZ on January 13, 2025.

To the extent the Court determines service via FedEx was insufficient, Plaintiff seeks permission to serve CZ, either through CZ's counsel in the *Raanan* action or via X (formerly

---

[1] Reuters, *Binance Founder Zhao Released from US Custody, Bloomberg News Reports*, REUTERS, (Sept. 27, 2024) https://www.reuters.com/technology/binance-founder-zhao-released-us-custody-bloomberg-news-reports-2024-09-27/ (last accessed Jan. 28, 2025).

[2] Giacomo Togini, *Inside the Secret Dubai Homes of CZ, Mukesh Ambani, and 20 Other Billionaires*, FORBES (MAY 14, 2024) https://www.forbes.com/sites/giacomotognini/2024/05/14/inside-the-secret-dubai-homes-cz-mukesh-ambani-billionaires-binance/ (last accessed Jan. 28, 2025); *see also* Nikhilesh De, *Freed from Prison, Binance Founder CZ Gets Ovation in Dubai and Talks New Educational Venture*, COINDESK (Oct. 31, 2024) https://www.coindesk.com/policy/2024/10/31/cz-talks-prison-new-educational-venture-at-first-public-appearance-since-release-from-us-jail (last accessed Jan. 28, 2025).

known as Twitter). In addition to the facts presented above, Changpeng Zhao ("CZ") is also independently a heavy X user. His account is managed personally by him, where he has tweeted more than 8,600 times:



Since being released from prison, CZ has resumed an active presence on X and continues to tweet on a nearly daily basis. *See* @cz_binance, X, https://x.com/cz_binance, last accessed January 28, 2025.

In addition to his heavy use of the platform, Defendant CZ, who was CEO of Binance at the time, announced in November 2022 that Binance had invested $500 million into Elon Musk's

---

[3] https://x.com/cz_binance (last accessed on January 28, 2025).

buyout of Twitter.[4] In making the announcement about Binance's investment, CZ told Reuters, "I'm a heavy Twitter user."[5]

### b. Hamas

#### i. *Plaintiff Attempted to Serve Hamas at its Last Known Address in Lebanon*

Harakat al-Muqawama al-Islamiya, hereinafter "Hamas," was designated by the United States as a Specially Designated Terrorist (SDT) on January 23, 1995, under Executive Order 12947. It was later classified as a Foreign Terrorist Organization (FTO) on October 8, 1997, and as a Specially Designated Global Terrorist (SDGT) on October 30, 2001, under Executive Order 13224, designations that remain in place today. Since the beginning of the war, several members of Hamas' senior leadership have been killed, making its chain of command unclear.[6]

---

[4] Catarina Demony & Sergio Goncalves, *Binance CEO Says Support for Free Speech is Reason He Invested in Twitter*, REUTERS (Nov. 1, 2022) https://www.reuters.com/technology/binance-ceo-says-support-free-speech-is-reason-he-invested-twitter-2022-11-01/ (last accessed January 22, 2025).

[5] *Id.*

[6] Kali Robinson, *What is Hamas?*, COUNCIL ON FOREIGN RELATIONS (Oct. 17, 2024) https://www.cfr.org/backgrounder/what-hamas (last accessed Jan. 28, 2025).



**Politburo**
Fifteen members

Leader up to July 2024:
Ismail Haniyeh
Killed Jul. 30, 2024

Leader from August to October 2024:
Yahya Sinwar
Killed Oct. 16, 2024

Since October 7, 2023, Israel has assassinated five senior Hamas leaders.

**Delegations abroad**

**Shura Council**
Consultative body that elects the Politburo, exact membership unknown

**West Bank affairs**
Former leader:
Saleh al-Arouri
Killed Jan. 2, 2024

**Imprisoned members' affairs**
No photo available
Leader:
Salameh Katawi

**Gazan affairs**
Former leader:
Yahya Sinwar
Killed Oct. 16, 2024

**Palestinian diasporic affairs**
Leader:
Khaled Meshaal

**Social welfare system**

**Izz ad-Din al-Qassam Brigades**
Military wing

Former commander:
Mohammed Deif
Killed Jul. 13, 2024

Former commander:
Marwan Issa
Killed Mar. 10, 2024

Independently operating cells

**Hamas government**
Implements policy

Prime minister:
Issam al-Da'alis

**Ministries**

**Local authorities**

**Security forces**

Moreover, much of the Hamas leadership and operations has moved into underground tunnels, where it would be difficult, if not impossible to serve any member of the terrorist group with a Summons and Complaint. To state the obvious, postal services do not deliver mail to tunnels. Plaintiff was able to identify an address for Hamas in Lebanon, though this too presents tremendous challenges, as Lebanon is also at war, and mail service to the country is limited. Plaintiff's counsel contacted several postal carriers, and many informed her office that they would not deliver to Lebanon. Goldenberg Dec., ¶ 6. Nonetheless, Plaintiff's counsel mailed the Summons and Complaint to the address in Lebanon on December 11, 2024 via the United States Postal Service (USPS). Goldenberg Dec., Ex. E. The envelope was sent with tracking and did enter Lebanon and clear customs on January 21, 2025, but USPS recently informed Plaintiff's counsel that the package can no longer be located, and delivery cannot be confirmed. Goldenberg Dec., ¶ 7, Ex. E. Even if the Summons and Complaint is delivered there, the state of Hamas and its leadership is evolving quickly, and there is no guarantee that this address will be one that Hamas uses in the future.

### ii. Serving Hamas Via Al Jazeera Would Provide Hamas with Reasonable Notice

*Al Jazeera* is a prominent publication with high online and print readership throughout the Middle East. Because Hamas' leadership continues to change and likely resides in tunnels or other locations where the printed editions of the paper are less likely to be delivered, Plaintiff proposes serving Hamas via online publication in *Al Jazeera* or, alternatively, *The Associated Press.*[7] The

---

[7] As an alternative to service by publication online through *Al Jazeera*, Plaintiffs propose that service by publication online through the *Associated Press* would also be an effective means of providing Hamas with reasonable notice in accordance with the Federal Rules. The *Associated Press* offers various online advertising solutions, including location and category-based means of

company's online advertising page boasts that *Al Jazeera* receives 85 million monthly page views and 25 million unique monthly visitors.[8] Of these, 80% are views on mobile phones, which means that even Hamas' leadership could view *Al Jazeera* via their phones if they were hiding in tunnels.[9]

Moreover, *Al Jazeera* and Hamas have a long history of collaboration. News articles chronicle the close and collaborative relationship that *Al Jazeera* has with Hamas. For example, one article exposed six *Al Jazeera* reporters as Hamas and Palestinian Islamic Jihad operatives.[10] Another article describes documents uncovered by the IDF showing that Hamas provided *Al Jazeera* with instructions on how to cover a failed Islamic Jihad rocket launch in Jabaliya, in which several civilians were killed.[11] Another document described in the same article shows that Hamas instructed *Al Jazeera* journalist Tamer Almisshall to support the "resistance" in his coverage of Palestinian Islamic Jihad during a battle between Israel and PIJ, dubbed Operation Breaking Dawn.[12] Moreover, a court in Israel determined in June 2024 that there is a direct and causal relationship between individuals who have carried out terror attacks inside Israel and the

---

reaching the desired audience. *See* Associated Press, *Advertising*, https://contentservices.ap.org/advertising/ (last accessed Feb. 5, 2025). Additionally, Hamas officials regularly give interviews—including exclusive interviews—to the Associated Press. *See, e.g.*, The Associated Press, *Rare Multiformat Interview with Hamas Leader Breaks News* (May 3, 2024) https://www.ap.org/news-highlights/best-of-the-week/first-winner/2024/rare-multiformat-interview-with-hamas-leader-breaks-news/ (last accessed Feb. 5, 2025).

[8] Al Jazeera, *The Power of Al Jazeera*, AL JAZEERA, https://commercial.aljazeera.net/ (last accessed January 28, 2025).

[9] *Id.*

[10] Emmanuel Fabian, *IDF Says Gaza Documents Prove Al Jazeera Journalists are Hamas, PIJ Documents*, THE TIMES OF ISRAEL (Oct. 23, 2024) https://www.timesofisrael.com/idf-says-gaza-documents-prove-6-al-jazeera-journalists-are-hamas-pij-operatives/, (last accessed January 28, 2025).

[11] 11 Emmanuel Fabian, *IDF Releases More Documents it Says Show Cooperation Between Hamas and Al Jazeera*, THE TIMES OF ISRAEL (Oct. 24, 2024) https://www.timesofisrael.com/idf-releases-more-documents-it-says-show-cooperation-between-hamas-and-al-jazeera/, (last accessed January 21, 2025).

[12] *Id.*

consumption of *Al Jazeera* content.[13] This demonstrates a close working relationship between Hamas and *Al Jazeera*, such that it is highly likely that Hamas' leadership is likely to receive adequate notice of Plaintiff's Complaint if notice was published on Al Jazeera's website.

### III.    Legal Standard

"Federal Rule of Civil Procedure 4(f) establishes three mechanisms for serving an individual in a foreign country: 1) by an internationally agreed means of service that is reasonably calculated to give notice, such as those provided by the Hague Convention; 2) if there is no international means or no means specified then by means reasonably calculated to give notice; or 3) by other means not prohibited by international agreement, as the court orders." *St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-CV-3240-LB, 2016 WL 5725002, at *1 (N.D. Cal. Sept. 30, 2016) (citing Fed. R. Civ. P. 4(f)). "The Court may allow service pursuant to Rule 4(f)(3) as long as the requested means of service is 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Strange v. Islamic Republic of Iran*, No. CV 14-435 (CKK), 2019 WL 13158028, at *2 (D.D.C. June 4, 2019) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "[W]hether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 81 (D.C. Cir. 2014) (internal quotation marks omitted). Courts are given great latitude in determining what constitutes an acceptable form of service. *Id.* As another court in this district has observed, the rule was adopted "to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign

---

[13] *Id.*

countries." *Id.* (citing *Kaplan v. Hezbollah*, 715 F. Supp. 2d 165, 166 (D.D.C. 2010) (internal edits and citation omitted)).

## IV.    Argument

First, Plaintiff has served CZ via mail and is in the process of serving Hamas via mail. Plaintiff's first request is that the Court deem service proper via mail, as explained in greater detail below. However, to the extent the Court determines that Hamas and CZ need to be served in a different manner, Plaintiffs respectfully request that the Court permit CZ and Hamas to be served through the alternate means described below, as each option would satisfy the requirements of Rule 4(f)(3).

### a.   The Court Should Deem Service of the Complaint via Mail Sufficient for Both CZ and Hamas

Rule 4(f)(1) permits service through "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Both Hamas and CZ are located in countries which are not parties to the Hague Convention on International Service of Process.[14] Further, CZ is a private citizen, and Hamas is not a "foreign state" or a "political subdivision of a foreign state," and thus cannot be served under the Foreign Sovereign Immunities Act.

Rule 4 further provides, in relevant part:

Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed ... may be effected in a place not within any judicial district

---

[14] *Status Table*, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Maters, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last accessed Jan. 28, 2025) (listing 84 contracting parties to Convention).

> of the United States ... by ... means not prohibited by international agreement *as may be directed by the court.*

Fed. R. Civ. P. 4(f)(3) (emphasis added); *see also Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005). Plaintiff, as a first preference, respectfully requests that the Court deem service of the Summons and Complaint upon Hamas and CZ via mail sufficient.

Plaintiff is unaware of any authority which prohibits service via mail. Neither Lebanon nor the UAE have objected to service via mail, and Hamas is a nonstate actor without authority to accede to or object to the treaty. *See Saleh v. Al Nahyan,* No. CV 20-1168 (ABJ), 2021 WL 7210780, at *3 (D.D.C. July 16, 2021) ("there is no 'internationally agreed means of service' between the United States and the UAE").

Plaintiff mailed a copy of the Summons and Complaint to CZ's address in the UAE and to Hamas at its address in Lebanon. The copy sent to CZ arrived only days later and was signed for at his residence. Plaintiff therefore requests that the Court deem the delivery of the Summons and Complaint to CZ's personal residence and to Hamas in Lebanon sufficient. *See Marks v. Alfa Grp.,* 615 F. Supp. 2d 375, 380 (E.D. Pa. 2009) (deeming service of process via mail effective under Rule 4(f)(3)); *Lewis v. Dimeo Const. Co.,* 41 F. Supp. 3d 108, 112-13 (D. Mass. 2014) (same); *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, No. 03CIV.8554(LTS)(JCF), 2005 WL 1123755, at *5 (S.D.N.Y. May 11, 2005) (same).

### b.  Service on CZ Cannot be Effected Through the Hague Convention

According to Plaintiff's research, CZ currently owns a home and resides in the United Arab Emirates.[15] Service under Federal Rule of Civil Procedure 4(f)(1) is unavailable because there is

---

[15] Giacomo Togini, *Inside the Secret Dubai Homes of CZ, Mukesh Ambani, and 20 Other Billionaires*, FORBES (MAY 14, 2024)

no "internationally agreed means of service" between the United States and the UAE. *See* U.S.

Dep't of State, *United Arab Emirates Judicial Assistance Information*,

https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-

Information/UnitedArabEmirates.html  (last updated Mar. 23, 2018) (explaining that the UAE is

not a party to the Hague Service Convention or the Inter-American Convention on Letters

Rogatory). Moreover, there is no express prohibition on service via mail or any other means,

including social media:



---

https://www.forbes.com/sites/giacomotognini/2024/05/14/inside-the-secret-dubai-homes-cz-mukesh-ambani-billionaires-binance/ (last accessed Jan. 28, 2025); *see also* Nikhilesh De, *Freed from Prison, Binance Founder CZ Gets Ovation in Dubai and Talks New Educational Venture*, COINDESK (Oct. 31, 2024)  https://www.coindesk.com/policy/2024/10/31/cz-talks-prison-new-educational-venture-at-first-public-appearance-since-release-from-us-jail (last accessed Jan. 28, 2025).

*Id. See also Saleh v. Al Nahyan*, No. CV 20-1168 (ABJ), 2021 WL 7210780, at *3 (D.D.C. July 16, 2021). Therefore, service on an individual foreign defendant such as CZ is governed by the requirements of Rule 4(f)(2) or (f)(3). *Saleh* 2021 WL 7210780, at *3 (D.D.C. July 16, 2021) (citing Fed. R. Civ. P 4(f)).

### c. Plaintiff Should be Permitted to Serve CZ by Serving His Counsel of Record in the *Ranaan* Case

To the extent the Court determines that serving CZ at his personal residence in the UAE was insufficient, Plaintiff requests that the Court permit her to serve CZ via his counsel of record in a similar October 7 case. Counsel for BHL (Cahill Gordon & Reindel LLP) represents CZ in another similar case, stemming from the October 7 attacks. Goldenberg Dec., Exs. A, B, and C. Although BHL's counsel indicated that they will not be representing BHL in this case, it is likely that they have already informed CZ of the existence of this action. Indeed, they have already asked the Court to transfer this action to the Southern District of New York so that it could be consolidated with the action where BHL's attorneys represent both BHL and CZ. [ECF No. 24.] Nonetheless, no attorney for CZ has entered an appearance on his behalf in this case, making it impossible for Plaintiff to engage in discussions about a local attorney accepting service on his behalf.

"A number of courts thus have sanctioned service on United States counsel as an alternative means of service under Rule 4(f)(3) without requiring any specific authorization by the defendant for the recipient to accept service on its behalf." *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 83 (D.C. Cir. 2014) (collecting cases). *See also Saleh v. Al Nahyan,* No. CV 20-1168 (ABJ), 2021 WL 7210780, at *5 (D.D.C. July 16, 2021) (finding that service on counsel in the US "also satisfies the constitutional standards of due process because it

is "reasonably calculated, under all circumstances, to apprise [defendants] of the pendency of the action and afford [them] an opportunity to present [their] objections.", citing *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950).)

Not only does CZ's counsel, Cahill Gordon & Reindel LLP serve as his attorneys in another case pending in the United States, the subject matter of that is, likewise, the October 7 attacks.[16] Cahill Gordon & Reindel LLP has made appearances in and is participating in both this case and the *Ranaan* case and is more than equipped to apprise CZ of this matter that Cahill Gordon & Reindel LLP itself is anticipated to claim is related. Service on CZ's US counsel would satisfy constitutional requirements and, therefore, if the Court finds that service by mail has not been effected, Plaintiff should be permitted to serve CZ's US counsel as an alternative under Rule 4(f)(3).

### d. Service through X (Twitter) is Appropriate Because CZ is an Investor in and Frequent User of X

CZ is a major investor in X.com (formerly Twitter)[17] and remains a heavy user of the site, who has personally made posts as recently as January 27, 2025.[18] It is both appropriate and feasible to serve CZ via X.com given his ties to the site and continued, frequent usage of it. Service via social media has proven to be a useful tool to effect service on persons who could not be served

---

[16] Plaintiff anticipates that Binance's Motion to Transfer will focus largely on the fact that both this case and the *Ranaan* matter involve the October 7 attacks. While Plaintiff will address the substance of this argument when raised, Plaintiff notes that the causes of action in each case differ significantly.

[17] Catarina Demony & Sergio Goncalves, *Binance CEO Says Support for Free Speech is Reason He Invested in Twitter*, REUTERS (Nov. 1, 2022) https://www.reuters.com/technology/binance-ceo-says-support-free-speech-is-reason-he-invested-twitter-2022-11-01/ (last accessed January 22, 2025).

[18] @cz_binance, X.COM, https://x.com/cz_binance/status/1883912371510575518?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Etweet (Jan. 27, 2025, 10:18 AM) (last accessed Jan. 28, 2025).

outside the US, particularly where, as here, it is coupled with other attempts (such as mail). *See St. Francis of Assisi v. Kuwait Fin. House*, 2016 WL 572002, at *2 (N.D. Cal. Sept. 30, 2016) (authorizing service by Twitter because it was reasonably calculated to give notice to the defendant as a Twitter user and not prohibited by an international agreement); *WhosHere, Inc. v. Gokhan Orun*, 2014 670817 (E.D. Va. Feb. 20, 2014) (authorizing service by LinkedIn and Facebook which were reasonably calculated to give the defendants notice and not prohibited by international agreements). As recently as this last, federal courts have authorized service via social media in cases like this one where plaintiffs have attempted another means of serving a defendant. *Carillo v. Sabbadini*, 2025 WL 30446, at *2 (S.D.N.Y. Jan. 27, 2025) (permitting service via Instagram in conjunction with service via U.S. counsel and gmail). Here, Plaintiff has attempted to serve CZ via mail at his residence and, as in *Carillo*, has requested that the Court authorize service via CZ's US counsel. In conjunction with Plaintiff's efforts to mail the Summons and Complaint to CZ, service via social media (X.com specifically), which, if necessary, may also be combined with service on CZ's US counsel, would serve as an effective "backstop," *id.*, to ensure notice to CZ.

### e.  Service of Process on Hamas Via Publication in *Al Jazeera* Is Appropriate

The Supreme Court held that service by publication was appropriate "where it is not reasonably possible or practicable to give more adequate warning," holding that, "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 (1950); *Kaplan v. Hezbollah*, 715 F. Supp. 2d 165, 166 (D.D.C. 2010) (same). DC courts have specifically permitted service by publication as a means of serving terrorist groups. *See e.g., Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C.Cir.2005) (approving service of Osama bin Laden and al

Qaeda by publication under Rule 4(f)(3)); *Smith v. Islamic Emirate of Afghanistan,* No. 01 CIV 10132 (HB), 2001 WL 1658211, at \*3–4 (S.D.N.Y. Dec. 26, 2001) (allowing service of bin Laden and al Qaeda by publication for six weeks in four Afghani newspapers, one Pakistani newspaper, and five broadcast networks). Other service methods, such as service by email, have also been approved under Rule 4(f)(3) in this District. *See, e.g., Juniper Networks, Inc. v. Bahattab,* Civil Action No. 07–1771(PLF), 2008 WL 250584, at \*1–2 (D.D.C. Jan. 30, 2008).

Specifically with regard to Hamas, this Court may be guided by the decision in *Smith v. Islamic Emirate of Afghanistan,* where the court authorized service by publication and reasoned that personal service on Al Qaeda could be complicated, as it is possible that "any high-ranking officials capable of being served [may be] captured or surrender, which would greatly complicated [the plaintiff's] ability to pursue his lawsuit against this defendant." 2001 WL 1658211, at \*4 (S.D.N.Y. Dec. 26, 2001). *See also Aboulgaed v. Hifter*, No. CV 20-298 (CKK), 2020 WL 12765270, at \*1 (D.D.C. Apr. 28, 2020) (permitting service of process via publication on four individual defendants in Libya where other methods were not feasible, particularly in light of ongoing violent fighting in the country).

Similarly here, there is an active war in the region where Hamas is located and Hamas' leadership has been routinely taken out and/or has gone into hiding. While it may be difficult—if not impossible—for process servers to safely and effectively deliver service of process to Hamas, Hamas' access to and even use of *Al Jazeera* even during the course of the current conflict is well-documented. Moreover, because Hamas' leadership is everchanging, service via publication would ensure that several members of Hamas would receive notice of Plaintiff's lawsuit given the close collaboration between the group and Al Jazeera. Service by publication is therefore the most effective means of providing Hamas with notice of this case.

## V.    Conclusion

For these reasons, Plaintiff respectfully requests a finding that she has effected service by mail on Defendants Hamas and CZ or, in the alternative, that the Court authorize service pursuant to Fed. R. Civ. P. 4(f)(3) to Defendant Hamas by publication on *Al Jazeera* and service to Defendant CZ through CZ's US counsel Cahill Gordon & Reindel LLP in the *Ranaan* case and/or via X (formerly known as Twitter).

Dated: <u>February 5, 2025</u>

<u>/s/ Marlene J. Goldenberg</u>
Marlene J. Goldenberg (DC Bar No. 166040)
**NIGH GOLDENBERG RASO & VAUGHN PLLC**
14 Ridge Square
Third Floor
Washington, D.C. 20016
Phone: (202) 978-2228
Fax: (202) 792-7927
mgoldenberg@nighgoldenberg.com

Samantha V. Hoefs *(pro hac vice forthcoming)*
**NIGH GOLDENBERG RASO & VAUGHN PLLC**
60 South 6th Street
Suite 2800
Minneapolis, MN 55402
Phone: (612) 445-0202
Fax: (202) 792-7927
shoefs@nighgoldenberg.com

<u>/s/ Amanda Fox Perry</u>
Amanda Fox Perry (DC Bar No. 230024)
**FOX MCKENNA PLLC**
14 Ridge Square
Third Floor
Washington, D.C. 20016
Phone: (202) 852-2000
Fax: (202) 915-0244
amanda@foxmckenna.com

Elyse McKenna *(pro hac vice forthcoming)*
**FOX MCKENNA PLLC**
14 Ridge Square
Third Floor
Washington, D.C. 20016
Phone: (202) 852-2000
Fax: (202) 915-0244
elyse@foxmckenna.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 5th day of February, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Marlene J. Goldenberg*
Marlene J. Goldenberg (DC Bar No. 166040)
**NIGH GOLDENBERG RASO & VAUGHN PLLC**
14 Ridge Square
Third Floor
Washington, D.C. 20016
Phone: (202) 978-2228
Fax: (202) 792-7927
mgoldenberg@nighgoldenberg.com