## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIAT ATZILI, KEITH SIEGEL, ADRIENNE SIEGEL, SHAI SIEGEL, SHIR SIEGEL, ELAN TIV, GAL SIEGEL, LUCY SIEGEL, DAVID SIEGEL, and LEE SIEGEL, | Case No.: 1:24-cv-03365-CJN |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| ISLAMIC REPUBLIC OF IRAN, HARAKAT AL-MUQAWAMA AL-ISLAMIYA A/K/A HAMAS, BINANCE HOLDINGS LIMITED, D/B/A BINANCE.COM, BAM MANAGEMENT US HOLDINGS INC., BAM TRADING SERVICES INC. D/B/A BINANCE.US, and CHANGPENG ZHAO | ORAL ARGUMENT REQUESTED |
| Defendants. | |

**BAM MANAGEMENT US HOLDINGS INC. AND BAM TRADING SERVICES INC. d/b/a BINANCE.US'S MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>**

<u>**TABLE OF CONTENTS**</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   THE ALLEGATIONS AND JURISDICTIONAL FACTS ............................... 4

    A.    BAM and BHL Are Separate Entities Operating Independent Trading
          Platforms. ........................................................................................... 4

    B.    The Amended Complaint Does Not Allege That Any Transactions
          Occurred on BAM's Platform. ............................................................ 6

III.  ARGUMENT ..................................................................................................... 7

    A.    The Amended Complaint Should Be Dismissed Pursuant to Rule 8 as an
          Impermissible "Shotgun" Pleading. .................................................... 7

    B.    The Amended Complaint Should Be Dismissed Pursuant to Rule 12(b)(2)
          Because the Court Does Not Have Personal Jurisdiction Over BAM. ........ 8

        1.    There Is No General Jurisdiction Over BAM in D.C. ............... 10

        2.    There Is No Specific Jurisdiction Over BAM Under D.C.'s Long-
            Arm Statute. .................................................................... 12

    C.    Plaintiffs' Federal Claims Should Be Dismissed Pursuant to Rule 12(b)(6)
          for Failure to State a Claim. ............................................................... 14

        1.    The Complaint Fails to Allege Aiding-and-Abetting Liability
            Under the ATA/JASTA (Count XI). ....................................... 15

        2.    Plaintiffs Fail to State a Claim for Provision of Material Support
            Under the ATA (Counts XII and XIII). ................................... 21

    D.    Plaintiffs' State-Law Claims Should Be Dismissed Pursuant to Rule
          12(b)(6) for Failure to State a Claim. .................................................. 23

        1.    Plaintiffs' Negligence Claims Against BAM Fail (Counts IV, IX,
            & X). ............................................................................... 24

            a.    Plaintiffs Fail to Sufficiently Allege that BAM Owed a Duty to
                Plaintiffs. ............................................................... 24

                 i.    BAM Owed No Duty to Plaintiffs as Noncustomers. ........ 25

                 ii.   Plaintiffs Fail to Allege a Special Relationship of
                     Control Between BAM and Hamas. ............................... 26

                 iii.  Plaintiffs Fail to Meet the Heightened Foreseeability
                     Standard. ......................................................... 27

             b.    Plaintiffs Fail to Allege Any Breach by BAM. ........................... 28

             c.    Plaintiffs Fail to Allege BAM Proximately Caused Their
                  Injuries. ................................................................ 29

2.    Plaintiffs Fail to State a Negligent Infliction of Emotional Distress Claim Against BAM (Count V). ............................................................... 30

3.    Plaintiffs Fail to State a Negligence Per Se Claim Against BAM (Count VIII). ............................................................................................. 30

4.    Plaintiffs Fail to State a Loss of Consortium Claim Against BAM (Count XVI). .............................................................................................. 32

5.    Plaintiffs Fail to State a Claim for Negligent Entrustment (Count XIV). ........................................................................................................ 33

6.    Plaintiffs Fail to State Product Liability Claims Against BAM (Counts VI, VII, IX & X). ...................................................................... 35

    a.    The Binance.US Exchange Is Not a Product. .............................. 35

    b.    Even if Binance.US Is a Product, Plaintiffs Fail to State a Product Liability Claim. ............................................................. 36

7.    Plaintiffs' Manufacturing Defect Claims (Counts VII & X) Fail Because They Merely Duplicate Their Design Defect Claims (Counts VI & IX). ........................................................................................ 38

8.    Plaintiffs Fail to State a Claim for Public Nuisance (Count XV). ............ 39

E.    Plaintiffs Fail to Establish that BAM Is the "Alter Ego" of BHL or Mr. Zhao. .................................................................................................................... 41

1.    Courts Have Repeatedly Rejected the Same Theory. ............................... 41

2.    Plaintiffs Cannot Meet the Demanding Standard of Piercing the Corporate Veil. .......................................................................................... 41

IV.    CONCLUSION ..................................................................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta Orellana v. CropLife Int'l*,
   711 F. Supp. 2d 81 (D.D.C. 2010) ............................................................39

*Ahrendt v. Granite Bank*,
   740 A.2d 1058 (N.H. 1999) .....................................................................26

*Alkanani v. Aegis Def. Servs., LLC*,
   976 F. Supp. 2d 13 (D.D.C. 2014) ...............................................13, 14, 44

*Amore v. Accor N. Am., Inc.*,
   529 F. Supp. 2d 85 (D.D.C. 2008) ............................................................42

*Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC*,
   2020 WL 6262090 (D.D.C. Oct. 23, 2020) ...............................................11

*Ashley v. Deutsche Bank Aktiengesellschaft*,
   144 F.4th 420 (2d Cir. 2025) .....................................................2, 17, 19, 20

*In re Baan Co. Sec. Litig.*,
   245 F. Supp. 2d 117 (D.D.C. 2003) ..........................................................43

*Bankers Std. Ins. Co. v. Anand*,
   2020 WL 4698363 (D.D.C. Aug. 13, 2020) .........................................33, 34

*Bd. of Trs. of Univ. of D.C. v. DiSalvo*,
   974 A.2d 868 (D.C. 2009) ........................................................................28

*Bernhardt v. Islamic Republic of Iran*,
   47 F.4th 856 (D.C. Cir. 2022) ..................................................................18

*In re Binance Holdings Ltd.*,
   No. 2023-04 (Nov. 21, 2023).......................................................................6

*Brightwell Dispensers Ltd. v. Dongguan ISCE Sanitary Ware Indus. Co.*,
   2019 WL 7040443 (D.D.C. Oct. 9, 2019) ...........................................11, 13

*Brunson v. Kalil & Co.*,
   404 F. Supp. 2d 221 (D.D.C. 2005) ..........................................................12

*Buie v. District of Columbia*,
   2023 WL 6142139 (D.D.C. Sep. 20, 2023) ..........................................33, 34

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
    274 F. Supp. 2d 86 (D.D.C. 2003) .......................................................................25

*CFTC v. Zhao*,
    No. 23-cv-01887 (N.D. Ill. Mar. 27, 2023), ECF No. 1 ...........................................7

*Chen Jun v. Regions Bank*,
    2020 WL 5603527 (N.D. Ala. Sept. 18, 2020) ......................................................32

*Christian v. Walmart*,
    2022 WL 602450 (D.D.C. 2022) ..........................................................................37

*Cox v. CoinMarketCap OpCo, LLC*,
    2023 WL 1929551 (D. Ariz. Feb. 10, 2023).........................................................41

*Cox v. CoinMarketCap OpCo, LLC*,
    112 F.4th 822 (9th Cir. 2024) ...............................................................................6

*Crane v. Carr*,
    814 F.2d 758 (D.C. Cir. 1987) ............................................................................13

*Crane v. N.Y. Zoological Soc.*,
    894 F.2d 454 (D.C. Cir. 1990) ..............................................................................9

*D'Ambrosio v. Rajala*,
    2025 WL 1383286 (N.D. Ill. May 13, 2025) .......................................................34

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).............................................................................................9

*Danielsen v. Burnside-Ott Aviation Training Ctr.*,
    746 F. Supp. 170 (D.D.C. 1990) ..........................................................................23

*Delahanty v. Hinckley*,
    564 A.2d 758 (D.C. 1989) ..............................................................................24, 29

*District of Columbia v. Beretta, U.S.A., Corp.*,
    872 A.2d 633 (D.C. 2005) ..........................................................................28, 39, 40

*District of Columbia v. Howell*,
    607 A.2d 501 (D.C. 1992) ....................................................................................33

*Dixon v. Midland Mortg. Co.*,
    719 F. Supp. 2d 53 (D.D.C. 2010) ........................................................................33

*Doe v. GTE Corp.*,
    347 F.3d 655 (7th Cir. 2003) ................................................................................34

*Dubai Islamic Bank v. Citibank, N.A.*,
 126 F. Supp. 2d 659 (S.D.N.Y. 2000) ..................................................................31

*E. Sav. Bank, FSB v. Papageorge*,
 31 F. Supp. 3d 1 (D.D.C. 2014) ..........................................................................33

*Erwin-Simpson v. AirAsia Berhad*,
 985 F.3d 883 (D.C. Cir. 2021) ......................................................................10, 11

*Est. of Mickens v. U.S. Bank Nat'l Ass'n*,
 2021 WL 3418955 (D.D.C. Aug. 5, 2021) ............................................................8

*Flynn v. R.C. Tile*,
 353 F.3d 953 (D.C. Cir. 2004) ............................................................................44

*Flynn v. R.D. Masonry, Inc.*,
 736 F. Supp. 2d 54 (D.D.C. 2010) ........................................................................9

*In re Fort Totten Metrorail Cases*,
 793 F. Supp. 2d 133 (D.D.C. 2011) ................................................................24, 39

*Freeman v. HSBC Holdings PLC*,
 465 F. Supp. 3d 220 (E.D.N.Y. 2020) ................................................................20

*Geiger v. Crestar Bank*,
 778 A.2d 1085 (D.C. 2001) ................................................................................26

*Glycobiosciences, Inc. v. Vichy Lab'ys, S.A.*,
 2023 WL 157322 (D.D.C. Jan. 11, 2023) ............................................................41

*Goodrich v. Bank of Am. N.A.*,
 136 F.4th 347 (D.C. Cir. 2025) ..........................................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) ..............................................................................10, 13, 14

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
 199 F.3d 1343 (D.C. Cir. 2000) ......................................................................9, 11

*Guarini v. Doe*,
 634 F. Supp. 3d 1100 (S.D. Fla. 2022) ..............................................................41

*Hakki v. Zima Co.*,
 2006 WL 852126 (D.C. Super. Ct. Mar. 28, 2006) ............................................29

*Hedgepeth v. Whitman Walker Clinic*,
 22 A.3d 789 (D.C. 2011) ....................................................................................33

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)....................................................................................10

*Hill v. Medlantic Health Care Grp.*,
    933 A.2d 314 (D.C. 2007) ..........................................................................32

*Holland v. TD Ameritrade*,
    2012 WL 592042 (Feb. 22, 2012)..........................................................35, 36

*Iacangelo v. Georgetown Univ.*,
    580 F. Supp. 2d 111 (D.D.C. 2008) ............................................................31

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)....................................................................................10

*Jackson v. Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022) .........................................................35

*Jacobs v. Meta Platforms, Inc.*,
    2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023) .....................................35

*Jiggetts v. District of Columbia*,
    319 F.R.D. 408 (D.D.C. 2017).......................................................................8

*Jograj v. Enter. Servs.*,
    270 F. Supp. 3d 10 (D.D.C. 2017)....................................................28, 30, 32

*Johnson-Tanner v. First Cash Fin. Servs.*,
    239 F. Supp. 2d 34 (D.D.C. 2003).........................................................18, 42

*Jonathan Woodner Co. v. Breeden*,
    665 A.2d 929 (D.C. 1995) ..........................................................................39

*Joyner v. Morrison & Foerster LLP*,
    140 F.4th 523 (D.C. Cir. 2025)...................................................................15

*Kaplan v. Cent. Bank of the Islamic Republic of Iran*,
    896 F.3d 501 (D.C. Cir. 2018)......................................................................9

*Kent Grp. Partners, LLC v. Citizens Bank, Nat'l Ass'n*,
    688 F. Supp. 3d 608 (N.D. Ohio 2023)........................................................40

*Keren Kayemeth LeIsrael-Jewish Nat'l Fund v. Educ. for a Just Peace in the
    Middle E.*,
    530 F. Supp. 3d 8 (D.D.C. 2021) ......................................................18, 19, 23

*Khatib v. All. Bankshares Corp.*,
    846 F. Supp. 2d 18 (D.D.C. 2012) ...............................................................12

*Kline v. 1500 Mass. Ave. Apt. Corp.*,
    439 F.2d 477 (D.C. Cir. 1970) ...................................................................................26

*Kuklinski v. Binance Cap. Mgmt.*,
    2023 WL 2788654 (S.D. Ill. Apr. 4, 2023) .............................................................41

*Leake v. Alex Gen. Constr., LLC*,
    2025 WL 1342694 (D.D.C. May 8, 2025) ...............................................................45

*Lee v. Foris DAX, Inc.*,
    2025 WL 1084794 (N.D. Cal. Apr. 10, 2025) .........................................................25

*Lewis v. United States*,
    83 F. Supp. 3d 198 (D.D.C. 2015) ...........................................................................30

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018) ........................................................................19, 21, 22

*Malek v. Flagstar Bank*,
    70 F. Supp. 3d 23 (D.D.C. 2014) ...................................................................2, 24, 25

*Marchak v. JPMorgan Chase & Co.*,
    2016 WL 3911926 (E.D.N.Y. July 15, 2016) .........................................................32

*Martinez-Colon v. Santander Nat'l Bank*,
    4 F. Supp. 2d 53 (D.P.R. 1998) ...............................................................................31

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*,
    62 F. Supp. 2d 13 (D.D.C. 1999) .................................................................42, 44, 45

*McCarthy v. Sturm, Ruger & Co.*,
    916 F. Supp. 366 (S.D.N.Y. 1996) ..........................................................................38

*McKenney v. Wash. Metro. Area. Transit Auth.*,
    318 A.3d 559 (D.C. 2024) ........................................................................................24

*McKethean v. Wash. Metro. Area Transit Auth.*,
    588 A.2d 708 (D.C. 1991) ........................................................................................29

*Melehy v. Salha*,
    2023 WL 6313195 (D.D.C. Sept. 28, 2023) ...........................................................27

*Miango v. Democratic Republic of the Congo*,
    243 F. Supp. 3d 113 (D.D.C. 2017) .........................................................................32

*Newman v. Associated Press*,
    758 F. Supp. 3d 1357 (S.D. Fla. 2024) ..............................................................18, 22

*Night & Day Mgmt., LLC v. Butler*,
    101 A.3d 1033 (D.C. 2014) ....................................................31

*Novak-Canzeri v. Saud*,
    864 F. Supp. 203 (D.D.C. 1994) ...........................................14

*Ortberg v. Goldman Sachs Grp.*,
    64 A.3d 158 (D.C. 2013) ........................................................39

*Owens v. BNP Paribas, S.A.*,
    897 F.3d 266 (D.C. Cir. 2018) ...............................................23

*Parisi v. Sinclair*,
    806 F. Supp. 2d 93 (D.D.C. 2011) .........................................12

*Reynolds v. Binance Holdings, Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ...................................41

*Rice v. District of Columbia*,
    774 F. Supp. 2d 25 (D.D.C. 2011) .........................................30

*Ridgell v. HP Enter. Servs., LLC*,
    209 F. Supp. 3d 1 (D.D.C. 2016) ...............................25, 26, 27

*Rollins v. Wackenhut Servs.*,
    802 F. Supp. 2d 111 (D.D.C. 2011) .................................37, 38

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) .....................................................23

*SEC v. Binance Holdings Ltd.*,
    738 F. Supp. 3d 20 (D.D.C. 2024) ...........................................5

*SEC v. Binance Holdings Ltd.*,
    No. 23-cv-01599 (Oct. 16, 2024), ECF No. 282.................5, 7, 20

*Selig v. Taliban*,
    774 F. Supp. 3d 129 (D.D.C. 2025) ........................................21

*Shapiro, Lifschitz & Schram, P.C. v. Hazard*,
    90 F. Supp. 2d 15 (D.D.C. 2000) ...........................................42

*Shatsky v. Palestine Liberation Org.*,
    955 F.3d 1016 (D.C. Cir. 2020) ..............................................10

*Siegel v. HSBC N. Am. Holdings, Inc.*,
    933 F.3d 217 (2d Cir. 2019) ...................................................20

*United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*,
    191 F. Supp. 2d 17 (D.D.C. 2002) .......................................................42

*Sigmund v. Starwood Urb. Inv.*,
    475 F. Supp. 2d 36 (D.D.C. 2007) .......................................................27

*Simmons v. Textron, Inc.*,
    2025 WL 901170 (D.D.C. Mar. 24, 2025) ..............................................38

*Simms v. District of Columbia*,
    699 F. Supp. 2d 217 (D.D.C. 2010) .....................................................28

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025).................................................................. *passim*

*Strauss v. Crédit Lyonnais, S.A.*,
    379 F. Supp. 3d 148 (E.D.N.Y. 2019) .............................................19, 22

*Szymkowicz v. Pres. & Dirs. of Coll. of Georgetown Univ.*,
    336 A.3d 650 (D.C. 2025) ................................................................39

*Tall v. Comcast of Potomac, LLC*,
    729 F. Supp. 2d 342 (D.D.C. 2010) .....................................................43

*In re Terrorist Attacks on Sep. 11, 2001*,
    2008 WL 7073447 (S.D.N.Y. Dec. 23, 2008) .........................................29

*In re Terrorist Attacks on Sep. 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ..................................................25

*Thompson Hine, LLP v. Taieb*,
    734 F.3d 1187 (D.C. Cir. 2013) ..........................................................10

*Thompson v. Trump*,
    590 F. Supp. 3d 46 (D.D.C. 2022) ......................................................30

*Tifa, Ltd. v. Republic of Ghana*,
    1991 WL 179098 (D.D.C. Aug. 27, 1991) ..............................................9

*Toumazou v. Turkish Republic of N. Cyprus*,
    71 F. Supp. 3d 7 (D.D.C. 2014)......................................................8, 42

*Tucci v. District of Columbia*,
    956 A.2d 684 (D.C. 2008) ...........................................................39, 40

*Turner & Newall, PLC v. Am. Mut. Liab. Ins.*,
    1985 WL 8056 (D.D.C. Aug. 1, 1985) ..................................................44

*Twitter, Inc. v. Taamneh,*
   598 U.S. 471 (2023)..................................................................................... *passim*

*United States v. Emor,*
   850 F. Supp. 2d 176 (D.D.C. 2012) ...............................................................42, 43, 45

*United States v. TDC Mgmt. Corp.,*
   263 F. Supp. 3d 257 (D.D.C. 2017) ...............................................................44, 45

*Valley Fin., Inc. v. United States,*
   629 F.2d 162 (D.C. Cir. 1980) .......................................................................44

*Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.,*
   2019 WL 3503109 (N.D. Cal. Aug. 1, 2019) .................................................32

*Warner Fruehauf Trailer Co. v. Boston,*
   654 A.2d 1272 (D.C. 1995) ...........................................................................36, 37

*Weiss v. Nat'l Westminster Bank,*
   993 F.3d 144 (2d Cir. 2021)...........................................................................22

*White v. United States,*
   780 F.2d 97 (D.C. Cir. 1986).........................................................................26

*Workman v. United Methodist Comm.,*
   320 F. 3d 259 (D.C. Cir. 2003)......................................................................24, 27

*Ziencik v. Snap, Inc.,*
   2023 WL 2638314 (C.D. Cal. Feb. 3, 2023)..................................................35

**Statutes**

18 U.S.C. § 2331(1)(A)-(C)...................................................................................21

18 U.S.C. § 2333(a) ...............................................................................................15

18 U.S.C. § 2333(d)(2) ..........................................................................................15

18 U.S.C. § 2339A .................................................................................................15, 22

18 U.S.C. § 2339B .................................................................................................22

18 U.S.C. § 2339B(a)(1) ........................................................................................15

50 U.S.C. § 1701(a)-(b) .........................................................................................31

Anti-Terrorism Act ................................................................................................ *passim*

Bank Secrecy Act...................................................................................................31, 32, 40

D.C. Code § 13-334(a) ........................................................................................10

D.C. Code § 13-422 ...........................................................................................10

D.C. Code § 13-423 .............................................................................................9

D.C. Code § 13-423(a) ......................................................................................9, 12

D.C. Code § 13-423(b) ........................................................................................14

Int'l Emergency Econ. Powers Act ...................................................................31, 32

Justice Against Sponsors of Terrorism Act ......................................................... *passim*

Patriot Act ..........................................................................................................40

## Other Authorities

Am. Law. of Products Liab., § 31:5 (3d ed. 1987) ....................................................39

*Binance and CEO Plead Guilty to Federal Charges in $4B Resolution*, U.S. Dep't
    of Just. (Nov. 21, 2023), https://www.justice.gov/archives/opa/pr/binance-
    and-ceo-plead-guilty-federal-charges-4b-resolution ........................................29

Fed. R. Civ. P. 4(k)(1)-(2) .....................................................................................12

Fed. R. Civ. P. 8 .......................................................................................1, 7, 8, 45

Fed. R. Civ. P. 12(b)(2) ...............................................................................1, 8, 45

Fed. R. Civ. P. 12(b)(6) .................................................................................. *passim*

OFAC Settlement Agreement (Nov. 21, 2023),
    https://ofac.treasury.gov/system/files/2023-
    11/20231121_binance_settlement.pdf .............................................................7

Restatement (Third) of Torts: Products Liab. (1998) ...........................................35, 38

*SEC Announces Dismissal of Civil Enforcement Action Against Binance Entities
    and Founder Changpeng Zhao*, U.S. Sec. & Exch. Comm'n (May 29, 2025),
    https://www.sec.gov/enforcement-litigation/litigation-releases/lr-26316. ..............7

*United States v. Binance Holdings Ltd.*,
    No. 23-cr-00178 (W.D. Wash. Nov. 21, 2023), ECF No. 23 ..................................6

*United States v. Changpeng Zhao*,
    No. 23-cr-00179 (W.D. Wash. Nov. 21, 2023), ECF No. 31 ..................................6

Pursuant to Federal Rules of Civil Procedure 8, 12(b)(2), and 12(b)(6), Defendants BAM Management US Holdings Inc. ("BAM US Holdings") and BAM Trading Services Inc. d/b/a Binance.US ("BAM Trading," and collectively "BAM") move to dismiss BAM from this action with prejudice. As discussed below, (i) this Court lacks personal jurisdiction over BAM, and (ii) Plaintiffs fail to state a federal or state claim against BAM.

## I.    INTRODUCTION

BAM unequivocally condemns terrorism in all forms and deeply sympathizes with the victims of the devastating October 7, 2023 attacks perpetrated by Hamas that form the basis of the Amended Complaint. However, BAM is not responsible for these acts under any theory of liability.

Plaintiffs' Amended Complaint suffers from multiple, incurable deficiencies, many stemming from the fact that BAM—which operates a federally- and state-regulated digital asset exchange for U.S. customers—has no connection to Plaintiffs, the transactions at issue, or the perpetrators of the October 7 attacks. Plaintiffs attempt to obscure this fundamental flaw by conflating BAM with Binance Holdings Limited ("BHL"), a separate entity that operates a different platform (Binance.com) for non-U.S. customers.[1] This conflation is evident from Plaintiffs' own cited sources, which confirm that BAM and BHL operate distinct platforms, maintain separate and independent corporate and governance structures, and serve different markets. *See infra* Section II.

As a threshold matter, Plaintiffs cannot establish either general or specific jurisdiction over BAM. Each of BAM US Holdings and BAM Trading is a Delaware company that is headquartered in Florida with no substantial business in the District of Columbia; as such, this Court cannot

---

[1] The Amended Complaint impermissibly lumps together all "Binance Defendants" and attributes conduct to the undefined term "Binance Platform" without specifying which entity or platform allegedly engaged in the conduct. This pleading strategy has been repeatedly rejected in this District as violative of Rule 8 and warrants dismissal. *See infra* Section III(A).

exercise general jurisdiction over BAM. With respect to specific jurisdiction, BAM's sparse connections with the District alleged in the Amended Complaint (e.g., maintaining a website that is accessible in D.C.) are entirely unrelated to Plaintiffs' claims. Plaintiffs' assertions of jurisdiction are conclusory, generalized, and legally insufficient, and their claims should be dismissed on this basis alone. *See infra* Section III(B).

The Amended Complaint asserts federal claims under the Anti-Terrorism Act ("ATA") and Justice Against Sponsors of Terrorism Act ("JASTA"), but they are legally deficient based on clear and recent United States Supreme Court precedent. In *Twitter, Inc. v. Taamneh* and *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, the Court confirmed that ATA and JASTA liability requires knowing and substantial assistance to a specific act of terrorism—not passive nonfeasance or generalized awareness. The Second Circuit's recent decision in *Ashley v. Deutsche Bank* reinforces this standard, rejecting ATA claims where financial institutions allegedly provided services after being warned of terrorist ties, because plaintiffs failed to show a culpable state of mind or a concrete nexus to the attacks. Plaintiffs do not allege that BAM provided any assistance to Hamas, let alone the requisite scienter or nexus to the October 7 attacks. *See infra* Section III(C).

The Amended Complaint's state-law claims are equally flawed. Plaintiffs strain to invoke negligence, product liability, and other tort theories inapplicable to BAM under the facts alleged.

Plaintiffs' negligence claims fail at the threshold element: duty. Plaintiffs were not customers of BAM and had no relationship with either BAM entity. Courts consistently hold that entities providing similar financial services, including cryptocurrency exchanges, do not owe a duty of care to noncustomers. *See, e.g.*, *Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 32 (D.D.C. 2014). Plaintiffs also allege no special relationship between BAM and Hamas, nor facts meeting the heightened foreseeability standard required to impose liability for third-party criminal acts.

2

Setting aside that the transactions at issue are not even alleged to have occurred on BAM's platform, Plaintiffs' suggestion—that BAM should have foreseen a terrorist attack orchestrated by actors ineligible to access its U.S.-only, federally- and state-regulated platform—is unsupported and implausible. Moreover, Plaintiffs cannot demonstrate that BAM was negligent because the purported basis for such liability—compliance deficiencies relating to Anti-Money Laundering ("AML") and Know Your Customer ("KYC") controls on BHL's separate platform—is belied by the regulatory filings and enforcement actions the Amended Complaint heavily relies on. These very filings confirm that BAM was established to be a U.S. platform compliant with U.S. regulations, and none of the cited governmental actions attribute any compliance deficiencies to BAM. These failures foreclose any viable negligence theory. *See infra* Section III(D)(1)-(5).

The same sources defeat Plaintiffs' product liability claims, which rest on the unsupported assertion that BAM's exchange is a defective *product*. BAM provides a *service*, and its platform is not a tangible good. This renders Plaintiffs' product liability theories inapplicable. Plaintiffs also allege no defect involving BAM that could support liability. *See infra* Section III(D)(6).

Finally, Plaintiffs' attempt to impute liability to BAM through an alter ego theory is equally unavailing. The Amended Complaint lacks facts sufficient to disregard BAM's corporate separateness from BHL or Mr. Zhao. Plaintiffs rely on outdated and conclusory allegations regarding ownership and early operational overlap, but veil-piercing requires far more—namely, active and substantial control at the time of the alleged misconduct, and a showing that treating the entities separately would result in injustice. Plaintiffs do not allege that BAM was dominated by BHL or Mr. Zhao during the relevant period, nor do they allege any commingling of funds, failure to observe corporate formalities, or other indicia of unity of interest. To the contrary, the record (even at the motion-to-dismiss stage) reflects that BAM and BHL operate distinct platforms,

maintain separate financial, operational, governance, and ownership structures, and are bound only by arm's-length trademark and service agreements. Courts have consistently held that such arrangements do not support alter ego liability, and Plaintiffs' theory should be rejected. *See infra* Section III(E).

In sum, Plaintiffs have not alleged any conduct by BAM that could support personal jurisdiction or liability under federal or state law. Their claims are deficient and should be dismissed with prejudice.

## II.    THE ALLEGATIONS AND JURISDICTIONAL FACTS

### A.    BAM and BHL Are Separate Entities Operating Independent Trading Platforms.

BAM Trading operates Binance.US, a trading platform customers in the United States can use to purchase or sell digital assets. (Ex. A, Blodgett Decl. ¶ 8; *see* AC ¶¶ 153-54.) BAM Trading is organized under Delaware law and headquartered in Florida; BAM US Holdings, its holding company, is also a Delaware corporation with no business operations in the District of Columbia. (Decl. ¶¶ 4-5; AC ¶¶ 45-46.) Since its inception in 2019, BAM has restricted all non-U.S. residents from accessing and using Binance.US. (Decl. ¶¶ 9-10, 12.)

BAM Trading is registered as a "money services business" with the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCEN"), and it maintains 31 state-issued money transmitter licenses. (Decl. ¶¶ 38-39.) BAM is therefore subject to oversight by the federal government and the many States in which it is licensed. (*Id.*)

The Amended Complaint's attempt to blur the distinction between BAM and BHL by characterizing their respective exchanges as different "access points" to a unified "Binance Platform" is inaccurate and unsupported. BAM and Binance.US operate an entirely separate platform and maintain distinct operations from BHL and its non-U.S. exchange, Binance.com.

4

(Decl. ¶¶ 7, 13, 15-37; *see* AC ¶ 34.) The companies service customers in different geographic markets, and have their own onboarding and compliance policies and procedures. (Decl. ¶¶ 12-14.) BAM has its own Board of Directors, and BAM and BHL do not share common officers or employees. (*Id.* ¶¶ 15, 21-22.) The companies maintain separate offices. (*Id.* ¶ 22.)

Moreover, the financial operations of BAM and BHL are completely separate: the companies do not share bank accounts, and BAM pays its own operating expenses. (*Id.* ¶¶ 27, 30.) The "relationship" between BAM and BHL is an arm's-length business relationship, memorialized in service-level agreements, under which BHL provides software and trademark licenses to support BAM's operation of its independent Binance.US platform. (Decl. ¶ 23; *see* AC ¶ 157 (describing BAM and BHL's service-level agreements).) BHL does not collect user fees from transactions that occur on BAM's exchange. (Decl. ¶ 37.)

Notably, the regulatory filings cited by Plaintiffs themselves confirm that BAM and BHL operate two distinct cryptocurrency exchanges—separate platforms, not merely different gateways to a unified service. For example, in the now-dismissed Securities and Exchange Commission ("SEC") litigation, cited extensively by Plaintiffs, the SEC expressly defined the "Binance.com Platform" and the "Binance.US Platform" as separate "trading platforms." *See* Am. Compl. ¶ 2, *SEC v. Binance Holdings Ltd.*, No. 23-cv-01599 (Oct. 16, 2024), ECF No. 282 (separately defining the "Binance.com Platform" and "Binance.US Platform"). Plaintiffs' own allegations reinforce this distinction, noting that BHL's plea agreement described BAM's exchange as "*a separate exchange that would serve the U.S. market*."[2] (AC ¶ 410.) This Court likewise recognized that BHL "operate[s] the internet-based Binance.com international crypto asset trading platform," while BAM Trading has, since its launch in 2019, "operated the Binance.US crypto asset internet-based

---

[2] All emphasis is added unless otherwise noted.

trading platform." *SEC v. Binance Holdings Ltd.*, 738 F. Supp. 3d 20, 31 (D.D.C. 2024); *see also id.* at 33 (referring to Binance.com and Binance.US as two "crypto asset trading platforms," rather than a single exchange); *Cox v. CoinMarketCap Opco, LLC*, 112 F.4th 822, 828 (9th Cir. 2024) (explaining that BAM launched Binance.US, "a *new* cryptocurrency exchange," after the Binance.com exchange stopped accepting U.S. users).

**B.    The Amended Complaint Does Not Allege That Any Transactions Occurred on BAM's Platform.**

Plaintiffs conflate the two distinct platforms in an apparent effort to obscure the absence of substantive allegations against BAM. Their pleading hinges on presenting BAM and BHL as a unified platform; otherwise, they cannot plausibly allege any conduct by BAM relevant to their claims. But the very sources Plaintiffs cite underscore a critical point: there are no allegations of transactions on the BAM platform, there is no mention of any BAM customer, and there certainly is no suggestion that Hamas (or any other terrorist organization) engaged with BAM in any way.

For instance, Plaintiffs cite a FinCEN Consent Order entered into by "Binance Holdings Limited, Binance (Services) Holdings Limited, Binance Holdings (IE) Limited, d/b/a Binance and Binance.com" as evidence that "Binance" users interacted with Hamas-associated wallets. (AC ¶ 208.) BAM Trading and BAM US Holdings are absent from this paragraph of the Amended Complaint for good reason—they were not parties to the Consent Order, which concerned violations relating to Binance.com only. FinCEN Consent Order at 4 n.8, *In re Binance Holdings Ltd.*, No. 2023-04 (Nov. 21, 2023). Plaintiffs similarly cite Mr. Zhao and BHL's plea agreements to allege that trades occurred between Binance users and Iranian users. (*See* AC ¶¶ 224, 275.) But BAM was neither a target, nor a party, to those proceedings, and the pleas explicitly state that any such transactions occurred on the Binance.com exchange. *See* Plea Agreement ¶ 79, *United States v. Binance Holdings Ltd.*, No. 23-cr-00178 (W.D. Wash. Nov. 21, 2023), ECF No. 23 (describing

transactions involving "Defendant's" customers, defined to mean BHL); Plea Agreement at 12, *United States v. Changpeng Zhao*, No. 23-cr-00179 (W.D. Wash. Nov. 21, 2023), ECF No. 31 (describing transactions involving "Binance," defined to mean BHL).[3]

The Amended Complaint is similarly devoid of any allegations that *BAM* specifically maintained deficient compliance controls. Again, that is for good reason—none of the agency actions Plaintiffs cite made such allegations or findings. In fact, to the extent that these filings mention BAM, they frequently emphasize its *compliance* with U.S. regulations. *See, e.g.*, Am. Compl. ¶ 233, *SEC v. Binance Holdings Ltd.* ("BAM Trading takes steps to verify that [its] users meet certain terms and conditions to access the Binance.US Platform . . . related to KYC review and other eligibility criteria"); Compl. ¶ 81, *CFTC v. Zhao*, No. 23-cv-01887 (N.D. Ill. Mar. 27, 2023), ECF No. 1 (Binance.US was intended "to be a navy boat," not a "pirate ship"). Plaintiffs appear to concede that BAM's exchange was intended to be "regulatory compliant" with U.S. law. (AC ¶ 154.)

## III.    ARGUMENT

### A.    The Amended Complaint Should Be Dismissed Pursuant to Rule 8 as an Impermissible "Shotgun" Pleading.

Throughout the Amended Complaint, Plaintiffs improperly refer to the "Binance Defendants" collectively, conflate BHL and BAM, and invoke conduct on the "Binance Platform"—a term they never define. (*See, e.g.*, AC ¶¶ 8-9, 29-35, 50, 54.) These pleading

---

[3] Nor was BAM a party to the Office of Foreign Assets Control ("OFAC") settlement Plaintiffs reference. (*See* AC ¶ 264.) OFAC Settlement Agreement (Nov. 21, 2023), https://ofac.treasury .gov/system/files/2023-11/20231121_binance_settlement.pdf. The only regulatory action cited in the Amended Complaint that involved BAM was the SEC litigation, which did not involve any allegations related to terrorism and was ultimately dismissed against BAM with prejudice. *See SEC Announces Dismissal of Civil Enforcement Action Against Binance Entities and Founder Changpeng Zhao*, U.S. Sec. & Exch. Comm'n (May 29, 2025), https://www.sec.gov/enforcement-litigation/litigation-releases/lr-26316.

deficiencies violate Rule 8's requirement for a clear statement of claims and warrant dismissal.

"It is well settled that a plaintiff cannot satisfy the minimum pleading requirements under Rule 8 by lumping all the defendants together and providing no factual basis to distinguish their conduct." *Est. of Mickens v. U.S. Bank Nat'l Ass'n*, 2021 WL 3418955, at *4 (D.D.C. Aug. 5, 2021) (dismissing complaint under Rule 8 where the complaint "refer[red] to [d]efendants collectively without specifying which of [them] allegedly took each action described in the complaint"). "[G]rouping multiple defendants together in a broad allegation," as Plaintiffs do here, fails "to provide the defendants with fair notice of the claims against them and the grounds for relief." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014).

Plaintiffs fail to "specify[] which of" BAM, BHL, or Mr. Zhao "allegedly took each action described in the complaint," and ascribe actions to the "Binance Defendants" that could not possibly have involved BAM because it did not exist at the time. *Mickens*, 2021 WL 3418955, at *4.[4] "[I]t is clear beyond cavil" that this type of "shotgun pleading" which renders it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief []] does not comply with the standards of Rule 8," and must be dismissed. *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 417 (D.D.C. 2017) (Jackson, J.).

**B.      The Amended Complaint Should Be Dismissed Pursuant to Rule 12(b)(2) Because the Court Does Not Have Personal Jurisdiction over BAM.**

Plaintiffs' personal jurisdiction allegations rest on generalized assertions about BAM's thin presence in the District that are insufficient to establish general jurisdiction. Moreover, Plaintiffs

---

[4] *See, e.g.*, AC ¶ 9 ("[t]he Binance Defendants were aware that the Binance Platform was used to facilitate unlawful transactions"), ¶ 116 ("[t]he Binance Defendants launched the Binance Platform in July 2017," before BAM was established), ¶ 283 ("the Binance Defendants" entered a plea agreement with the Department of Justice ("DOJ")), ¶ 405 ("[t]he Binance Defendants . . . concealed Binance's avoidance and noncompliance with U.S. law"), ¶ 418 ("the Binance Defendants did not implement an effective AML program").

fail to sufficiently plead any suit-related conduct by BAM in the District sufficient to support specific jurisdiction under D.C.'s long-arm statute, D.C. Code § 13-423(a).

"[A] court must first determine that it possesses personal jurisdiction over the defendants before it can address the merits of a claim." *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018). "The plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction." *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). "In this context, it must be remembered that the Court is no longer bound to treat all of plaintiff's allegations as true." *Tifa, Ltd. v. Republic of Ghana*, 1991 WL 179098, at *8 (D.D.C. Aug. 27, 1991). "If a defendant's affidavits contradict the plaintiff's prima facie case that personal jurisdiction exists, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Flynn v. R.D. Masonry, Inc.*, 736 F. Supp. 2d 54, 58 n.3 (D.D.C. 2010).

General jurisdiction may be asserted if the forum is one in which the corporation is "fairly regarded as at home," which has been defined as being either its "place of incorporation" or its "principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiffs acknowledge that both BAM entities are incorporated in Delaware and have their principal place of business in Florida (and therefore are non-resident defendants). (AC ¶¶ 45-46.)

Specific jurisdiction over a non-resident defendant to adjudicate claims that arise from the defendant's contacts with the forum state turns on a two-prong test: a court "first examine[s] whether jurisdiction is applicable under the state's long-arm statute and then determine[s] whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

Because D.C.'s long-arm statute, D.C. Code § 13-423, extends as far as the Due Process Clause allows, the "statutory and constitutional jurisdictional questions . . . merge into a single

9

inquiry." *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013). In other words, a plaintiff must show that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Although not explicitly pled, BAM first addresses general personal jurisdiction for purposes of completeness. This Court lacks personal jurisdiction over BAM under any theory.

### 1.    There Is No General Jurisdiction Over BAM in D.C.

A court may exercise general personal jurisdiction over a non-resident defendant when that non-resident defendant has engaged in "continuous and systematic general business contacts" in the forum, regardless of whether those contacts relate to the underlying cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). However, where a defendant's business ties are the basis for general jurisdiction, those ties must be so pervasive "as to render [the company] essentially at home in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011). "Absent exceptional circumstances, that standard is met only in the corporation's 'formal place of incorporation or principal place of business.'" *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1024 (D.C. Cir. 2020).

"A District of Columbia court may exercise [general] personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining . . . its principal place of business in, the District of Columbia[.]" D.C. Code § 13-422. These statutory requirements comport with the Due Process Clause, which dictates that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place[.]" *See Goodyear*, 564 U.S. at 924. But Plaintiffs acknowledge that the BAM entities are non-resident corporations, which renders general jurisdiction improper under this statute.

Likewise, D.C. Code § 13-334(a) authorizes D.C. courts to "exercise [general] jurisdiction over a foreign corporation doing business in the District." *Erwin-Simpson v. AirAsia Berhad*, 985

F.3d 883, 889 (D.C. Cir. 2021). Because "the provision of the D.C. statute authorizing personal jurisdiction over defendants 'doing business' in the District reaches as far as the Constitution permits," the test for general jurisdiction is whether BAM's contacts with the District have been "so continuous and systematic as to render [BAM] essentially at home in [D.C.]." *Id.*

Plaintiffs cannot meet the high threshold for establishing that BAM is "at home" in D.C. based on allegations that ultimately reduce to: (i) BAM is registered to do business in the District (AC ¶ 55); (ii) BAM is the alter ego of Defendants Binance and Mr. Zhao (AC ¶¶ 55-56);[5] and (iii) BAM's website is accessible to D.C. residents (AC ¶ 57). Such allegations are insufficient to establish general jurisdiction. *See Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC*, 2020 WL 6262090, at *4 (D.D.C. Oct. 23, 2020) ("That [defendant] is registered to do business in the District . . . is not sufficient to establish general jurisdiction."); *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."); *Brightwell Dispensers Ltd. v. Dongguan ISCE Sanitary Ware Indus. Co.*, 2019 WL 7040443, at *5 (D.D.C. Oct. 9, 2019) (holding that allegations that D.C. residents *could* access defendant's interactive "virtual storefront" website does not establish that any D.C. residents *actually* engaged in any business transactions with the defendant as required to establish personal jurisdiction).

Similarly, Plaintiffs' generalized allegations against the "Binance Defendants," rather than BAM specifically, fail to establish general jurisdiction as a matter of law. *See supra* Section III(A). The allegations that the Binance Defendants had "substantial contacts with the forum" (AC ¶ 54), "advertised, promoted, supplied, and distributed and/or sold their Platform within the U.S." (*id.*

---

[5] Plaintiffs' deeply flawed alter ego jurisdictional argument is addressed *infra* Section III(E).

¶ 132), and "derived substantial revenue . . . in this District" (*id.* ¶ 133), and that BAM had "significant contacts with the district" (AC ¶ 55), are conclusory and cannot satisfy the high bar of general jurisdiction. *See Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 27 (D.D.C. 2012) (holding that "conclusory" allegations that defendant "transacts business and solicits business . . . in the District of Columbia" are insufficient to establish personal jurisdiction); *Parisi v. Sinclair*, 806 F. Supp. 2d 93, 98 (D.D.C. 2011) (dismissing for lack of personal jurisdiction despite allegations that defendant derives "substantial" revenue from the District).

### 2. There Is No Specific Jurisdiction Over BAM Under D.C.'s Long-Arm Statute.

The Amended Complaint asserts that the court has jurisdiction over "all Binance Defendants" pursuant to D.C. Code § 13-423(a), but fails to specify which subsection provides the basis for specific jurisdiction in this action.[6] (AC ¶ 56.) D.C.'s long-arm statute enumerates seven kinds of contacts with the District that are sufficient to establish personal jurisdiction, none of which apply here. To the extent Plaintiffs rely on the "transacting business" prong, their allegations are insufficient to establish such jurisdictional reach.

To meet the requirements of personal jurisdiction under the "transacting business" prong of the D.C. long-arm statute, a plaintiff must prove:

> First, that the defendant transacted business in the District of Columbia; second, that the claim arose from the business transacted in D.C.; and third, that the defendant had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.

*Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 227 (D.D.C. 2005). The first and third questions can be analyzed together because "transacting business" jurisdiction "is coextensive" with

---

[6] The Amended Complaint asserts that the court may exercise personal jurisdiction pursuant to Rule 4(k)(1)-(2) only as to "BHL and Zhao." (AC ¶ 61.)

constitutional due process. *See Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). "Thus, the Court must answer two questions: whether the defendant has 'transacted business,' and whether the plaintiff's injury arises from that business." *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 24 (D.D.C. 2014). Neither of these questions can be answered affirmatively here.

First, Plaintiffs fail even to sufficiently allege that BAM transacts business within the District. Plaintiffs instead allege that BAM Trading is "registered to do business in the district," holds a "Money Transmission License in the district," and that its Binance.US website is "accessible to District of Columbia residents." (AC ¶¶ 55, 57.) However, allegations that D.C. residents could access BAM's interactive website are not tantamount to allegations that any D.C. residents "actually engaged in any business transactions with [BAM]," as required to establish personal jurisdiction.[7] *Brightwell Dispensers Ltd.*, 2019 WL 7040443, at *5.

Second, if this Court were to determine that BAM transacts business in the District, Plaintiffs must still establish that their injuries arose from BAM's contacts with the District. They cannot do so. Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919. "The central inquiry here . . . is whether [Plaintiffs'] claim[s] meet[] the nexus requirement—that [Plaintiffs'] claim[s] for relief arise[] from [BAM's] 'transacting . . . business in the District.'" *Murphy*, 2022 D.C. Super. LEXIS 108, at *12 (holding that although defendant "has offices . . . and conducts business within the District of Columbia . . . there is nothing in the record to support that [plaintiff's] alleged harm is related to or connected with [defendant's] activity in the District").

---

[7] Plaintiffs do not even allege that BAM US Holdings holds a Money Transmission License in D.C., only that BAM US Holdings is "registered to do business in the district." and is "controlled by Defendant Zhao." (AC ¶ 55.) As noted, cursory allegations of BAM US Holdings' D.C. registration are insufficient to establish jurisdiction. Nor is the fact Defendant Zhao has an ownership stake in BAM US Holdings sufficient to establish jurisdiction. *See infra* Section III(E).

The sole allegations that purport to connect Plaintiffs' injuries to conduct in the District are that (i) "Binance"—not BAM—had employees in this District (AC ¶ 127); (ii) the "Binance Defendants" previously appeared in court in this District (*id.* ¶ 135);[8] and (iii) the "Binance Defendants' strategy to act negligently . . . occurred in large part in this District, with help of consultants and law firms who worked with Binance to implement its business plans" (*id.* ¶ 137). But Plaintiffs do not allege that *BAM* employs individuals in this District. Further, Plaintiffs allege that "Binance"—not BAM—executed its alleged strategy in this District. (*Id.*)

As explained above, BAM and Binance are distinct legal entities, and the Amended Complaint alleges no facts that would justify imputing Binance's condut to BAM for purposes of personal jurisdiction. The absence of any nexus between BAM's alleged business transacted in this District and the alleged harm suffered by Plaintiffs compels dismissal of the claims against BAM for lack of specific jurisdiction. *See Novak-Canzeri v. Saud*, 864 F. Supp. 203, 206-07 (D.D.C. 1994) ("Moreover, [p]laintiff does not connect the conduct alleged to be the basis for her breach of contract claim with the claim of jurisdictional nexus with the District of Columbia . . . . Thus, [p]laintiff's allegations, on their face, fail to satisfy the requirements of D.C. Code § 13-423(b), and there therefore can be no personal jurisdiction under the long-arm statute.").

C.    **Plaintiffs' Federal Claims Should Be Dismissed Pursuant to Rule 12(b)(6) for Failure to State a Claim.**

"Dismissal under Rule 12(b)(6) is appropriate where, taking all factual allegations as true and construing all inferences in the plaintiff's favor, a plaintiff's pleadings do not present 'enough facts to state a claim to relief that is plausible on its face.'" *Goodrich v. Bank of Am. N.A.*, 136 F.4th 347, 353 (D.C. Cir. 2025). This standard "requires 'more than a sheer possibility that a

---

[8] "[C]onsent to personal jurisdiction in one case does not waive the right to assert lack of personal jurisdiction in another case in that same forum." *Alkanani*, 976 F. Supp. 2d at 37 n.10.

defendant has acted unlawfully.'" *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements and devoid of further factual enhancement, do not suffice." *Id.*

That is all Plaintiffs offer here. Plaintiffs bring three federal claims against BAM: (i) aiding-and-abetting in violation of 18 U.S.C. § 2333(d)(2) (Count XI); (ii) providing material support to Hamas in violation of 18 U.S.C. §§ 2333(a) and 2339A (Count XII); and (iii) providing material support to Hamas in violation of 18 U.S.C. §§ 2333(a) and 2339B(a)(1). Yet the Amended Complaint alleges no misconduct by BAM—and, indeed, scarcely alleges any conduct by BAM at all. Accordingly, dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted.

### 1. The Complaint Fails to Allege Aiding-and-Abetting Liability Under the ATA/JASTA (Count XI).

In Count XI, Plaintiffs allege that the "Binance Defendants" violated the ATA/JASTA by "knowingly provid[ing] substantial assistance to Hamas." (AC ¶ 568.) But Plaintiffs' allegations against BAM cannot establish aiding-and-abetting liability under the ATA and binding Supreme Court precedent because the Amended Complaint does not allege any specific conduct by BAM.

In *Twitter, Inc. v. Taamneh*, the Supreme Court held that JASTA liability requires that defendants "aided and abetted the act of international terrorism that injured the plaintiffs" through "conscious, voluntary, and culpable participation" in that specific terrorist act. 598 U.S. 471, 493, 497 (2023). There, plaintiffs alleged that social media companies knowingly allowed ISIS to use their platforms for fundraising and recruiting in order to profit from advertisements on ISIS's content. *Id.* at 481. The Court held that JASTA liability requires "conscious, voluntary, and culpable participation" in the specific act of international terrorism at issue. *Id.* at 493. This analysis hinges on whether the defendant provided knowing *and* substantial assistance to the primary tortfeasor. *Id.* at 491-92. "[T]hose twin requirements . . . work[] in tandem," i.e., "less

substantial assistance require[s] more scienter before a court c[an] infer conscious and culpable assistance." *Id.* The Court concluded that plaintiffs failed to sufficiently plead JASTA liability because (1) defendants did not provide "substantial" assistance to ISIS because they did not treat ISIS "any differently from anyone else" and their relationship was "arm's length, passive, and largely indifferent," (2) defendants did not provide "knowing" assistance because claims of "passive[]" acts do not establish "culpable assistance," and finally (3) there was "[a] lack of any concrete nexus between defendants' services and the [specific] attack." *Id.* at 500-01.

The Supreme Court recently reiterated these strict requirements for aiding-and-abetting liability in *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291-95 (2025). There, the Court addressed Mexico's claims that American gun manufacturers aided and abetted gun dealers' unlawful sales of guns to Mexican drug cartels by "supply[ing] firearms to retail dealers whom they know illegally sell to Mexican drug traffickers." *Id.* at 280-81.

The Court clearly articulated (again) the "canonical formulation" that "an aider and abettor must *participate in a crime* as in something that he *wishes to bring about* and seek by his action to make it succeed." *Id.* at 291. Accordingly, "[t]o aid and abet a crime, a person must take *an affirmative act* in furtherance of that offense." *Id.* "[A]iding and abetting usually requires misfeasance rather than nonfeasance." *Id.* at 292. "Absent an 'independent duty to act,' a person's 'failure[s],' 'omissions,' or 'inactions'—even if in some sense blameworthy—will rarely support aiding-and-abetting liability." *Id.*

The Supreme Court emphasized that "routine and general activity that happens on occasion to assist in a crime—in essence, 'incidentally'—is unlikely to count as aiding and abetting." *Id.* "So, for example, an 'ordinary merchant[ ]' does not 'become liable' for all criminal 'misuse[s] of [his] goods,' even if he knows that in some fraction of cases misuse will occur." *Id.* "The merchant

becomes liable only if, beyond providing the good on the open market, he takes steps to 'promote' the resulting crime and 'make it his own.'" *Id*.

Adhering to the Supreme Court's clear guidance, the Second Circuit recently rejected allegations that a financial institution provided "knowing and substantial assistance" to terrorist activities by offering routine banking services. *See Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 443 (2d Cir. 2025). In *Ashley*, victims of terrorist attacks brought ATA and JASTA claims against three banks and their affiliates, alleging they aided and abetted the attacks, which were orchestrated by the "Syndicate," a "joint venture of terrorists" led by Al-Qaeda. *Id*. at 428. The Second Circuit affirmed the district court's dismissal of the aiding-and-abetting claims, which went far beyond what Plaintiffs allege here, including allegations that the defendants continued to provide "irreplaceable foreign exchange and export finance services" after being warned by the U.S. military about its customers' ties to terrorist organizations. *Id*. at 430. The court dismissed the aiding-and-abetting claim because Plaintiffs did not allege a "willingness to aid the [] terrorist activities," even though they "plausibly demonstrate[d]" that the bank was "generally aware of its indirect role." *Id.* at 439, 443; *see id.* at 440 ("[W]e know from *Twitter* that knowledge of one's role in terrorist activities by itself is insufficient to allege an aiding-and-abetting claim."). The *Ashley* court rejected even allegations of active *malfeasance* against defendants alleged not only to have knowingly *permitted* illegal activity, but to have actively engaged in terrorist financing, by "custom building" and "operat[ing]" money laundering schemes known to fund terrorism. *Id*. at 431. The court highlighted that such allegations need to "offer a discernable nexus between the money laundering and the attacks committed against [p]laintiffs," not simply that the defendant assisted the terrorist organization's "activities in general." *Id*. at 444.

Applying these straightforward principles to Plaintiffs' allegations makes clear that the

Amended Complaint fails to satisfy the elements of aiding-and-abetting liability or to meet the rigorous requirements articulated by the Supreme Court.

*First*, Plaintiffs fail to establish that BAM provided "substantial assistance" to the attacks at issue here. The Amended Complaint does not allege that any of the underlying transactions were conducted via BAM's platform or that BAM provided any type of assistance to the perpetrators of these attacks. (*See generally* AC ¶¶ 186-221 (describing the "Binance Defendants' scheme to maximize profits" but only referring to actions taken by Binance and Zhao and transactions on the Binance.com Platform).) Indeed, there are no allegations in the Amended Complaint: (i) describing BAM's purported "substantial assistance" (whether in kind, amount, or duration) to any terrorists, (ii) articulating any relationship or interaction between BAM and the bad actors, or (iii) asserting a culpable state of mind on BAM's part. Numerous courts have held that similarly deficient pleadings cannot establish liability under the ATA. *See Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 870-72 (D.C. Cir. 2022) (finding no "knowing and substantial assistance" where plaintiff failed to allege defendant's "involvement with" the terrorists, "any relationship, much less a close one, between [defendant] and [the terrorists]," or "defendant's state of mind"); *Keren Kayemeth LeIsrael-Jewish Nat'l Fund v. Educ. for a Just Peace in the Middle E.*, 530 F. Supp. 3d 8, 14 (D.D.C. 2021) (holding that "threadbare assertions that defendant provided substantial assistance and played an integral role in . . . terrorist activities" were insufficient to establish aiding and abetting under the ATA); *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1372-73 (S.D. Fla. 2024) (finding no knowing and substantial assistance where plaintiffs' "conclusory allegations [were] inadequate to establish that any amount of money or assistance from the [defendant] went to Hamas in carrying out its terrorist attacks," "that the [defendant] participated in the tortious conduct," or "any 'arms-length relationship' between the [defendant] and the Hamas-affiliates").

***Second***, Plaintiffs fail to establish that BAM "knowing[ly]" provided assistance to bring about the terrorist attacks at issue here "as in something that [they] wishe[d] to bring about," and "s[ought] by [their] action to make it succeed." *Smith & Wesson*, 605 U.S. at 291; *see also Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (plaintiffs must plead that defendant was "'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities."). The Amended Complaint alleges in conclusory fashion that "[t]he Binance Defendants also knew that their substantial assistance would enable Hamas to carry out terrorist attacks." (AC ¶ 570.) This is precisely the type of allegation rejected by the Supreme Court in *Smith & Wesson*. 605 U.S. at 293 ("When a company merely knows that 'some bad actors' are taking 'advantage' of its products for criminal purposes, it does not aid and abet. And that is so even if the company could adopt measures to reduce their users' downstream crimes."). Similar claims that "Binance"—not BAM—"continued to provide [its] services" after it "became aware of [Hamas] transactions" (AC ¶ 568) amount to nothing more than allegations of "passive nonfeasance" which "are rarely the stuff of aiding-and-abetting liability." *Smith & Wesson*, 605 U.S. at 282; *see also Ashley*, 144 F.4th at 443 (affirming dismissal because continued banking services do not demonstrate "interested cooperation, stimulation, [or] instigation"); *Ashley*, 144 F.4th at 443 (affirming dismissal where defendant "failed to 'impose restraints' on its distribution chain because of downstream actors" because "these are allegations of indifferen[ce], rather than assistance"); *Keren Kayemeth LeIsrael*, 530 F. Supp. 3d at 15 (requiring plaintiffs to show defendant was "one in spirit" with the tortfeasor or "desire[d] to make the venture succeed," and holding that allegations that defendant "knowingly provided financial and other support" to Hamas did not suggest such intent); *Strauss v. Crédit Lyonnais, S.A.*, 379 F. Supp. 3d 148, 164 (E.D.N.Y. 2019), *aff'd*, 842 F. App'x 701 (2d Cir. 2021) ("Evidence that [d]efendant knowingly provided banking services to a terrorist organization,

without more, is insufficient to satisfy JASTA's scienter requirement."); *Freeman v. HSBC Holdings PLC*, 465 F. Supp. 3d 220, 230 (E.D.N.Y. 2020) (even provision of "non-routine or illegal" services including sanctions-evading transactions with entities tied to terrorists does not establish culpable participation in terrorism).

The Amended Complaint fails to plead a "definable nexus between [BAM's] assistance and th[e] attack" at issue here. *Twitter*, 598 U.S. at 503. It does not "pinpoint . . . any specific criminal transactions that [BAM] (allegedly) assisted" occurring "at a particular time and place." *Smith & Wesson*, 605 U.S. at 294. As previously noted, Plaintiffs concede that any relevant transactions did not occur on BAM's platform. (*See, e.g.*, AC ¶ 191 (stating that *Binance* executive "receiv[ed] information 'regarding HAMAS transactions' on Binance" in 2019, *before BAM was created*); *id.* ¶ 209 ("*Binance* was aware that Hamas, PIJ, and other architects of the October 7th Attacks were using *Binance* to fundraise."); *id.* ¶ 286 ("*Binance* willfully caused over $898 million in trades between U.S. users and users ordinarily resident in Iran.").) *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225-26 (2d Cir. 2019) (holding anti-money laundering and sanctions violations insufficient for liability because they failed to show the defendant bank "knowingly assumed a role in AQI's terrorist activities or substantially assisted AQI in those activities, *specifically the November 9 Attacks*"); *see also Ashley*, 144 F.4th at 444 (affirming dismissal because "it is not enough to say that the defendant assisted the terrorist organization's activities in general" and "the complaint offers no [other] discernable nexus between the money laundering and the attacks committed against [p]laintiffs").

Plaintiffs inaccurately characterize Binance.US as an "access point" to the Binance Platform, without support. (*See* AC ¶¶ 32-33.) At most, Plaintiffs allege that Binance retained U.S. users who should have been directed to BAM's compliant platform. (*See, e.g.*, *id.* ¶ 180 ("Zhao

directed Binance to implement a plan to encourage customers to circumvent Binance's geographic blocking of US-based IP addresse[s].");  *id.* ¶ 409 (asserting that "BHL and Zhao [made a] deliberate decision to create pathways for individuals in the US to continue using the international Binance Platform").) These allegations do not implicate any misconduct on BAM's platform.

Accordingly, because Plaintiffs fail to allege that BAM "consciously and culpably participated in" violent terrorist attacks on civilians "so as to help make [them] succeed," Count XI should be dismissed. *Twitter*, 598 U.S. at 493.

### 2.    Plaintiffs Fail to State a Claim for Provision of Material Support Under the ATA (Counts XII and XIII).

In Counts XII and XIII, Plaintiffs allege that the "Binance Defendants" committed a primary violation of the ATA by providing "material support to Hamas." (AC ¶¶ 578, 596.) As Plaintiffs' allegations fall short of establishing secondary liability, they cannot establish primary liability. *See Linde*, 882 F.3d at 320 (JASTA "expands ATA civil liability").

An ATA primary liability claim requires: "(1) a U.S. national suffered an injury; (2) the defendant committed an act of international terrorism; and (3) that the act of international terrorism caused the injury." *See Selig v. Taliban*, 774 F. Supp. 3d 129, 137 (D.D.C. 2025).

The statute's definition of the second element (i.e., "international terrorism") requires allegations against BAM which "(A) involve violent acts or acts dangerous to human life that are or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) that appear to be intended to intimidate or coerce a civilian population or government policy, or affect the conduct of the government by mass destruction, assassination, or kidnapping; and (C) occur outside the United States' territorial jurisdiction or transcend national boundaries." *See Selig*, 774 F. Supp. 3d at 137; 18 U.S.C. § 2331(1)(A)-(C). Further, provision of

"routine financial services to members and associates of terrorist organizations" is insufficient to plead that defendants committed an act of international terrorism. *Linde*, 882 F.3d at 327.

The allegations against BAM are a far cry from this demanding standard. In support of their primary-liability claims, Plaintiffs offer conclusory allegations that "[t]he Binance Defendants provided material support to Hamas and facilitated their efforts to engage in acts of international terrorism" (AC ¶ 578; *see id.* ¶ 595), and that Binance—not BAM—may have been aware of Hamas transactions on Binance's—not BAM's—platform. (*See* AC ¶¶ 191, 209.) Notwithstanding that the BAM entities are not mentioned a single time in the allegations pertaining to Counts XII and XIII, Rule 12(b)(6) and the ATA require more.

As explained above, Plaintiffs fail to allege any conduct by BAM linked to the alleged terrorist attacks. *See supra* Section II(B). Even if they had, their claims rest on generalized assertions regarding provision of financial services which "in and of itself, is insufficient either to show that the services involved an act of violence or threat to human life or to give the appearance that such services were intended to intimidate or coerce a civilian population or government." *Weiss v. Nat'l Westminster Bank*, 993 F.3d 144, 162-63 (2d Cir. 2021); *see also Strauss*, 379 F. Supp. 3d at 160 ("Evidence that [d]efendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement.").

Further, because Plaintiffs fail to allege BAM had knowledge of any terrorist-linked transactions (*see supra* Section II(B)), they cannot establish the scienter required by the material-support statutes. *See* 18 U.S.C. § 2339A (criminalizing provision of material support or resources "*knowing or intending* that they are to be used in preparation for, or in carrying out a violation of" specified criminal statutes); *id.* § 2339B (prohibiting "*knowingly* provid[ing] material support or resources to a[n] [FTO]"); *Newman*, 758 F. Supp. 3d at 1378-80.

Finally, because the Amended Complaint does not adequately allege any connection between BAM and alleged terrorist-linked transactions, Plaintiffs cannot establish that BAM proximately caused their injuries.[9] Conclusory assertions that "[t]he Binance Defendants' knowing provision of material support and substantial assistance to Hamas was the direct and proximate cause of Plaintiffs' physical and emotional injuries" (AC ¶ 588; *see id.* ¶ 599) are insufficient. *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (dismissing primary-liability claim where there was "no nonconclusory allegation" showing a "proximate causal relationship between the cash transferred" by defendant and terrorist attacks harming plaintiffs), *superseded by statute on other grounds*; *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 276 (D.C. Cir. 2018) (similar).

Accordingly, Plaintiffs' claims that BAM is subject to primary liability (i.e., provision of material support) for the October 7 terrorist attacks fail on multiple fronts and should be dismissed.

### D. Plaintiffs' State-Law Claims Should Be Dismissed Pursuant to Rule 12(b)(6) for Failure to State a Claim.

In addition to their federal claims, Plaintiffs bring various state common-law claims, largely premised on negligence theories. Dismissal is warranted for two reasons.

First, Plaintiffs assert that the Court "has pendent jurisdiction" over these claims. (AC ¶ 51.) "Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Danielsen v. Burnside-Ott Aviation Training Ctr.*, 746 F. Supp. 170, 178 (D.D.C. 1990). Because Plaintiffs have no viable federal claims, their state-law claims should be dismissed as well. *See id.* ("If the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Keren Kayemeth LeIsrael*, 530 F. Supp. at 15 (dismissing state-law claims after dismissing ATA claims).

Second, Plaintiffs' state-law claims reflect a strained effort to force allegations about

---

[9] As set out in BHL's Motion, Plaintiffs' allegations against Binance Defendants generally are inadequate. (*See* BHL Mem. Section II.)

BHL's allegedly inadequate AML and KYC controls into ill-fitting common-law frameworks. Plaintiffs urge the Court to adopt novel and unsupported interpretations of narrowly defined doctrines that do not align with their allegations. The Court should reject this invitation.

### 1. Plaintiffs' Negligence Claims Against BAM Fail (Counts IV, IX, & X).

Plaintiffs assert three duplicative claims for negligence (Count IV), negligent design defect (Count IX), and negligent manufacturing defect (Count X), attempting to impose liability on BAM for the criminal acts of Hamas.[10] Because Hamas's criminal actions could not create a duty for BAM absent extraordinary circumstances not present here, and because Plaintiffs do not allege any relevant conduct by BAM, these counts must be dismissed.

To establish negligence, a plaintiff must allege: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; (3) damage to the interests of the plaintiff; and (4) that the damage was proximately caused by defendant's breach. *McKenney v. Wash. Metro. Area. Transit Auth.*, 318 A.3d 559, 564 (D.C. 2024).

### a. Plaintiffs Fail to Sufficiently Allege that BAM Owed a Duty to Plaintiffs.

Plaintiffs' claims fail at the threshold element of duty. First, BAM owed no duty to Plaintiffs, who do not allege that they were customers or users of BAM's exchange. *See Malek*, 70 F. Supp. 3d at 32 ("[A] bank does not owe a duty of care to a noncustomer . . . ."). Second, D.C. law does not impose liability "for harm caused by the criminal act of a third party." *Workman v. United Methodist Comm.*, 320 F. 3d 259, 262 (D.C. Cir. 2003); *see also Delahanty v. Hinckley*, 564 A.2d 758, 762 (D.C. 1989) (same).

---

[10] Plaintiffs' negligence, negligent design, and negligent manufacturing claims share the same core theory that the Binance defendants allegedly failed to implement an adequate compliance program. (*See* AC ¶¶ 458, 549, 558.) These claims are thus duplicative because they "rest[] on the same factual allegations, would be decided under the same legal standards, and authorize[] the same forms of relief." *In re Fort Totten Metrorail Cases*, 793 F. Supp. 2d 133, 155 (D.D.C. 2011).

While two interrelated exceptions exist—(1) where the defendant has a "special relationship of control" over the criminal actor, and (2) where the criminal conduct was "particularly foreseeable"—neither applies here. *See Ridgell v. HP Enter. Servs., LLC*, 209 F. Supp. 3d 1, 21-23 (D.D.C. 2016), *vacated in part on other grounds by Delorenzo v. HP Enter. Servs., LLC*, 2016 WL 6459550 (D.D.C. Oct. 31, 2016). Plaintiffs, of course, do not allege that BAM had any "relationship of control" over Hamas, "the intervening criminal actor." Nor do they sufficiently allege that it was "particularly foreseeable" to BAM that Hamas would "commit the crime" that harmed Plaintiffs. *Id.* at 21.

### i.    BAM Owed No Duty to Plaintiffs as Noncustomers.

Plaintiffs cannot allege that BAM owed them any duty that financial service companies owe the public. It is well-established that "a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship." *Malek*, 70 F. Supp. 3d at 32; *see also Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) ("[A] bank is [not] liable for injuries done with money that passes through its hands. . ."); *In re Terrorist Attacks on Sep. 11, 2001*, 349 F. Supp. 2d 765, 830 (S.D.N.Y. 2005) ("Banks do not owe non-customers a duty to protect them from the intentional torts of their customers."); *Lee v. Foris DAX, Inc.*, 2025 WL 1084794, at *10 (N.D. Cal. Apr. 10, 2025) (affirming this principle for cryptocurrency exchanges).

Plaintiffs contend that BAM's negligence stems from alleged failures to implement certain "KYC, AML, sanctions, and compliance programs" to protect them as noncustomers. (AC ¶ 463.) This argument fails. As discussed above, Plaintiffs cannot plausibly allege that BAM's platform suffered from any such deficiencies. To the contrary, Plaintiffs concede that BAM's exchange was established to be "regulatory compliant" with U.S. law. (AC ¶ 154.) The regulatory filings incorporated into the Amended Complaint likewise confirm BAM's compliance. *See supra* Section II(B). The Amended Complaint alleges that the "Binance Defendants pled guilty" to such

violations relying on BHL's plea agreement with the DOJ. (AC ¶ 461). But again, BAM was not a party to that agreement. *See supra* Section II(B). That distinction is dispositive of Plaintiffs' negligence claims, which lack any plausible allegation of negligent conduct by BAM.

> ### ii.    Plaintiffs Fail to Allege a Special Relationship of Control Between BAM and Hamas.

The special relationship exception requires "a relationship of control between the defendant and the intervening criminal actor." *Ridgell*, 209 F. Supp. 3d at 22. Courts have recognized only a few such relationships, and those are grounded in "well-established principles of tort law." *White v. United States*, 780 F.2d 97, 103 (D.C. Cir. 1986) (hospital-patient relationship); *see also Kline v. 1500 Mass. Ave. Apt. Corp.*, 439 F.2d 477, 483 (D.C. Cir. 1970) (employer-employee relationship).

Plaintiffs fail to allege any relationship between BAM and Hamas, let alone one that qualifies as a relationship of control under traditional tort principles. Their assertion that the "Binance Defendants" had a special relationship with users (AC ¶ 257), because they "had control over who used the [Binance] Platform" (AC ¶ 449), cannot apply to BAM, as Plaintiffs do not identify a single Hamas-related transaction involving BAM or its platform. *See supra* Section II(B). Even if they had, such a relationship would be insufficient. Courts have consistently held that the relationship between a financial services provider and its customer "is a contractual relationship that is governed by the written agreement between the parties," not a recognized relationship of control in tort. *Geiger v. Crestar Bank*, 778 A.2d 1085, 1090 (D.C. 2001).

Accordingly, courts have declined to impose a special duty in this context. *See Ahrendt v. Granite Bank*, 740 A.2d 1058, 1063 (N.H. 1999) ("We decline to hold that the relationship between a bank and its customer, under the facts of this case, gives rise to a special duty to protect the customer from the fraudulent conduct of third parties that the law would not otherwise impose.");

*Melehy v. Salha*, 2023 WL 6313195, at *6 (D.D.C. Sept. 28, 2023) (finding no special relationship where plaintiff alleged only a standard bank-depositor relationship). Plaintiffs therefore fail to establish that BAM owed them a duty under this narrow exception.

### iii. Plaintiffs Fail to Meet the Heightened Foreseeability Standard.

The heightened foreseeability standard applies only when the specific crime was so foreseeable that "it would seem only a matter of time" until it occurred. *Workman*, 320 F.3d at 263. This is an "exacting, demanding, precise, and restrictive" standard, *Ridgell*, 209 F. Supp. 3d at 21, that cannot be met with "generic information," *Workman*, 320 F.3d at 262. Rather, the plaintiff must show "proof that the specific type of crime, not just crime in general, be particularly foreseeable at the relevant location." *Sigmund v. Starwood Urb. Inv.*, 475 F. Supp. 2d 36, 42 (D.D.C. 2007), *aff'd*, 617 F.3d 512 (D.C. Cir. 2010). The standard becomes even more demanding where the relationship between the plaintiff and defendant is remote, suggesting that the defendant had no general duty of protection towards the plaintiff. *See id.* at 263-64 ("If the relationship between the parties strongly suggests a duty of protection, then specific evidence of foreseeability is less important, whereas if the relationship is not of a type that entails a duty of protection, then the evidentiary hurdle is higher.").

Plaintiffs' conclusory allegations cannot satisfy the heightened foreseeability standard. The Amended Complaint's allegations do not support the incredible theory that BAM could have foreseen a terrorist attack with no connection to its platform. Plaintiffs effectively suggest, without supporting allegations, that BAM—operating a U.S.-only exchange in compliance with U.S. AML and KYC requirements—should have anticipated that a terrorist organization ineligible to use its platform would indirectly utilize a separate platform, over which BAM has no visibility or control, to commit violent acts. This attenuated theory cannot support a duty or form the basis for liability.

*See Bd. of Trs. of Univ. of D.C. v. DiSalvo*, 974 A.2d 868, 875 (D.C. 2009) ("[T]he mere possibility of a criminal act occurring is not sufficient to impose a duty of protection on [defendant].").

So Plaintiffs fall back to lumping together BAM and BHL, alleging that "Binance" was "aware that Hamas is a terrorist organization" (AC ¶ 256); "that Hamas uses funds to perpetrate terrorist attacks and that Hamas' primary target has been Israelis and Americans" (*id.* ¶ 257); and that Hamas "attack[s] people" when "able to amass large sums of money" (*id.* ¶ 454). Setting aside that none of this is attributed to BAM, these threadbare descriptions of the general tendencies of terrorist organizations are "generic information" that cannot meet the heightened foreseeability standard, which requires a demonstration that the defendant "[be] able to foresee the precise crime committed, not just a likelihood of criminal activity." *Jograj v. Enter. Servs.*, 270 F. Supp. 3d 10, 21 (D.D.C. 2017). Plaintiffs' logic would make any terrorist attack against Israelis or Americans foreseeable to BAM, creating "limitless notions of duty and foreseeability." *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 643 (D.C. 2005). The D.C Court of Appeals explicitly rejected such boundless liability in *Beretta*. *Id.* And the Court should do so here.

Plaintiffs cannot plausibly allege that BAM could have foreseen Hamas's terrorist plot, and their claim fails on this independent basis as well.

### b.    Plaintiffs Fail to Allege Any Breach by BAM.

Plaintiffs' negligence claims also fail because they do not "specify a negligent act" by which BAM breached its duty of care. *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010). Plaintiffs cite BHL's plea agreement with the DOJ to demonstrate that the "Binance Defendants" negligently failed to implement certain compliance programs. (AC ¶¶ 460-61.) But BAM was not a party to this plea agreement, which made no reference to the sufficiency

of programs implemented on BAM's exchange.[11] As has been repeatedly stated, Plaintiffs fail to allege any conduct by BAM connected to any Hamas funding. *See supra* Section II(B).

> ### c. Plaintiffs Fail to Allege BAM Proximately Caused Their Injuries.

Proximate cause "embraces a liability-limiting policy" that relieves an actor of liability where the "chain of events appears highly extraordinary in retrospect." *Hakki v. Zima Co.*, 2006 WL 852126, at *5 (D.C. Super. Ct. Mar. 28, 2006). "An intervening negligent or criminal act breaks the chain of causation if it is not reasonably foreseeable." *McKethean v. Wash. Metro. Area Transit Auth.*, 588 A.2d 708, 716 (D.C. 1991). "Whether analyzed under the rubric of duty or proximate cause," Plaintiffs attempt to hold BAM responsible for Hamas' unforeseeable, intervening criminal acts. *Hakki*, 2006 WL 852126, at *5. D.C. law does not impose liability for such intervening conduct. *McKethean*, 588 A.2d at 716; *Delahanty*, 564 A.2d at 762.

Plaintiffs' tenuous causation theory was rejected by the Southern District of New York in *In re Terrorist Attacks on Sep. 11, 2001*, 2008 WL 7073447 (S.D.N.Y. Dec. 23, 2008). There, the court held that allegations of bank defendants' noncompliance with AML laws did not establish liability for the September 11 attacks, because the possibility that processed transactions "might eventually find their way to terrorists through a series of unrelated transfers" was not reasonably foreseeable as a matter of law. *Id*. at *5. The same reasoning applies here.

Because Plaintiffs cannot plausibly allege that BAM owed them a duty of care, breached any such duty, or proximately caused their injuries, Plaintiffs' duplicative negligence counts (Counts IV, IX, and X) should be dismissed with prejudice.

---

[11] *Binance and CEO Plead Guilty to Federal Charges in $4B Resolution*, U.S. Dep't of Just. (Nov. 21, 2023), https://www.justice.gov/archives/opa/pr/binance-and-ceo-plead-guilty-federal-charges-4b-resolution (cited at AC ¶ 226) (showing "Binance Holdings Limited," not BAM, entered the plea agreement with the DOJ).

2. **Plaintiffs Fail to State a Negligent Infliction of Emotional Distress Claim Against BAM (Count V).**

Plaintiffs' negligent infliction of emotional distress claim suffers from the same flaws as their negligence claim: it does not identify any conduct by BAM connected to Plaintiffs' injuries. To establish a negligent infliction of emotional distress claim, a plaintiff must allege that: "(1) the defendant acted negligently; (2) the plaintiff suffered either a physical impact or was within the 'zone of danger' of the defendant's actions; and (3) the plaintiff suffered emotional distress that was 'serious and verifiable.'" *Thompson v. Trump*, 590 F. Supp. 3d 46, 121 (D.D.C. 2022).

To allege that a defendant acted negligently, a plaintiff must "identify [a] specific act that was allegedly negligent." *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33-34 (D.D.C. 2011). Plaintiffs fail to identify any alleged negligent act by BAM because they do not allege any acts of BAM at all: none of the complaint's substantive allegations implicate BAM. *See supra* Section II(B). This failure is determinative of Plaintiffs' claim. *See Rice*, 774 F. Supp. 2d at 33-34 (dismissing a negligent infliction of emotional distress claim that failed to identify an allegedly negligent act). Further, "[a]s with their other negligence claims," Plaintiffs must "meet the heightened foreseeability standard that applies when an intervening criminal act is present." *Jograj*, 270 F. Supp. 3d at 27. Because Plaintiffs fail to meet the heightened foreseeability standard, their negligent infliction of emotional distress claim fails. *See supra* Section III(D)(1)(a)(iii).

3. **Plaintiffs Fail to State a Negligence Per Se Claim Against BAM (Count VIII).**

As with Plaintiffs' other claims, Plaintiffs' negligence *per se* claim fails because they allege no conduct by BAM constituting a violation of law or a breach of duty. To state a claim under a negligence *per se* theory, a plaintiff must allege that a defendant violated a statute that provides an applicable standard of care. *Lewis v. United States*, 83 F. Supp. 3d 198, 210 (D.D.C. 2015).

30

Plaintiffs' negligence *per se* claim fails because Plaintiffs fail to allege that BAM violated any of the AML or sanctions laws on which they base their claim. First, the claim's allegations of AML statutory violations focus exclusively on BHL, stating that "BHL . . . qualified as a money transmitter" (AC ¶ 520), and "[a]s a money transmitter," BHL was subject to certain laws (AC ¶ 522). These allegations do not implicate BAM. Second, the Amended Complaint's allegations of sanctions violations assert that "Binance already pled guilty" to the cited statutes, invoking the DOJ plea agreement to which BAM was not a party. (AC ¶ 535.) Again, Plaintiffs' claim fails because the complaint is bereft of allegations attributable to BAM.

Even if Plaintiffs' allegations could be imputed to BAM, they would still be insufficient to state a negligence *per se* claim because the Bank Secrecy Act ("BSA") and International Emergency Economic Powers Act ("IEEPA") cannot provide the bases for such claims. The violation of such statutes may constitute negligence *per se* only if: (1) the statute is meant to promote safety; (2) the plaintiff is a member of the class to be protected by the statute; and (3) the defendant is a person upon whom the statute imposes specific duties. *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014). Both Plaintiffs' BSA and IEEPA bases fail this test.

First, Plaintiffs are not part of a class protected by either the BSA or the IEEPA. These statutes are designed to aid the government in law enforcement and regulatory efforts, not to benefit a specific group. *See Martinez-Colon v. Santander Nat'l Bank*, 4 F. Supp. 2d 53, 57 (D.P.R. 1998) ("Congress' purpose in enacting the [BSA] was to ensure that certain business records assist government agencies in conducting criminal, tax, or regulatory investigations."); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) (noting that money laundering statutes benefit the public at large, not a limited class). Similarly, the IEEPA protects national interests, not individuals. See 50 U.S.C. § 1701(a)-(b); *Iacangelo v. Georgetown Univ.*, 580 F.

Supp. 2d 111, 118 (D.D.C. 2008) ("[A] line must be drawn when a party seeks to utilize an administrative regulation to create a standard of care never intended nor sanctioned by Congress[;] failing to do so would create a limitless class of citizenry with the ability to privately enforce [federal] regulations.").

Second, neither statute imposes a duty on BAM to Plaintiffs. Courts "have repeatedly held that a bank's duty [under the BSA] is owed only to the government and not to private parties." *Marchak v. JPMorgan Chase & Co.*, 2016 WL 3911926, at *3 (E.D.N.Y. July 15, 2016); *Chen Jun v. Regions Bank*, 2020 WL 5603527, at *9 (N.D. Ala. Sept. 18, 2020) ("[T]he [BSA] do[es] not impose a duty upon banks to monitor accounts for the benefit of noncustomers." or to ensure that "account holders did not misuse funds."); *see also Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *6 (N.D. Cal. Aug. 1, 2019) (holding that the IEEPA does not impose a duty of care because "defendant's liability for failure to comply is to the United States government"). Because neither statute can serve as the basis for a negligence *per se* claim, Plaintiffs' claim must be dismissed.

### 4. Plaintiffs Fail to State a Loss of Consortium Claim Against BAM (Count XVI).

Plaintiffs' loss of consortium claims fail because their negligence claims fail. "A loss of consortium claim depends on whether the underlying claim of negligence . . . has been proven." *See Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 331 (D.C. 2007); *see also Miango v. Democratic Republic of the Congo*, 243 F. Supp. 3d 113, 141 (D.D.C. 2017) (dismissing loss of consortium claim because" plaintiffs' "negligence claims . . . all fail[ed]").[12]

---

[12] Plaintiffs' loss of consortium claims fail for two additional reasons. First, they don't allege where each marriage is domiciled, which is necessary to determine applicable law. See *Jograj*, 270 F. Supp. 3d at 27 (applying law of marital domicile). Second, claims by the "Family Member Plaintiffs" are based on injuries to non-spouses, but D.C. law only recognizes consortium claims

**5.      Plaintiffs Fail to State a Claim for Negligent Entrustment (Count XIV).**

Nor do Plaintiffs' allegations that BHL's exchange employed inadequate AML and KYC controls establish a claim against BAM for negligent entrustment. Negligent entrustment requires showing that BAM (1) made "available to another a chattel," (2) that BAM "[knew] or should have known the user [was] likely to use in a manner involving risk of physical harm to others[,]" (3) whom BAM "should expect to be endangered by its use." *Buie v. District of Columbia*, 2023 WL 6142139, at *12 (D.D.C. Sep. 20, 2023). Again, Plaintiffs' failure to identify any relevant transaction on BAM's exchange precludes any basis for liability here; the Amended Complaint contains no allegation that BAM made anything available to anyone.

Further, Plaintiffs do not plausibly allege that any Defendant made a *chattel* available to Hamas, as negligent entrustment requires. Chattels are "movable or transferrable property," *Dixon v. Midland Mortg. Co.*, 719 F. Supp. 2d 53, 56 (D.D.C. 2010); "money is excluded" from this definition. *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 20 (D.D.C. 2014); *cf. id.* (dismissing trespass to chattels claim premised on interference with the use of plaintiff's funds because "funds" are not chattels). Seemingly conceding the readily apparent fact that a cryptocurrency exchange is not a movable or transferable object, Plaintiffs instead contend that "the Binance Platform as a whole" can be classified as a chattel because it makes use of some physical or transferable components, such as "servers" and "data." (AC ¶ 607.) But there is no support for reclassifying a non-chattel through this kind of deconstruction. *Bankers Std. Ins. Co. v. Anand*, for example, concluded that an immovable fireplace was not a chattel, notwithstanding the fact that fireplaces are made up of bricks. 2020 WL 4698363, at *5 (D.D.C. Aug. 13, 2020).

for injuries to spouses. *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810 (D.C. 2011); *District of Columbia v. Howell*, 607 A.2d 501, 506 (D.C. 1992).

Courts have rejected similar arguments that web-hosting services or mobile applications can create negligent-entrustment liability because, somewhere along the line, their technological infrastructure uses physical components. *See Doe v. GTE Corp.*, 347 F.3d 655, 661 (7th Cir. 2003) ("Plaintiffs want us to treat [web-host defendant's] servers, routers, and optical-fiber lines as chattels negligently 'entrusted' to [third-party] and used to injure others. But [defendant] did not entrust its computers, network, or any other hardware to [third-party]; it furnished a service, not a chattel."); *D'Ambrosio v. Rajala*, 2025 WL 1383286, at *14 (N.D. Ill. May 13, 2025) (rejecting negligent entrustment claim premised on social media company's algorithm because social media company "did not entrust chattels to its users, it provided a service").

Finally, "[t]he negligent entrustment doctrine cannot be used to evade the direct and proximate cause requirement[,]" *Anand*, 2020 WL 4698363, at *5 n.9, which the "disconnect between the [purported] chattel and [Plaintiffs' injuries]" precludes here, *Buie*, 2023 WL 6142139, at *12. That a chattel enabled a third party to more easily harm a plaintiff is not sufficient. For instance, in *Buie*, the court dismissed a negligent entrustment claim where a police officer's uniform, weapon, and squad car gave him indicia of authority that made it easier for him to assault plaintiff, but were not used to inflict harm. *Id.* Plaintiffs here allege, at most, that cryptocurrency helped facilitate the October 7 attacks, not that BHL's exchange, servers, or any other purported "chattel," were the direct instruments of their injuries.

Plaintiffs seek to stretch a "limited doctrine" beyond its breaking point, and their negligent entrustment claim must be dismissed. *Anand*, 2020 WL 4698363, at *5.

6.    **Plaintiffs Fail to State Product Liability Claims Against BAM (Counts VI, VII, IX & X).**

a.    **The Binance.US Exchange Is Not a Product.**

As a threshold matter, Plaintiffs' product liability claims fail because the BAM exchange is not a product for which a product liability claim can be established. "A product is tangible personal property distributed commercially for use or consumption. . . . Services, even when provided commercially, are not products." Restatement (Third) of Torts, Products Liab., § 19 (1998). As explained above, Binance.US is an electronic platform that facilitates financial transactions within the cryptocurrency marketplace. *See supra* Section II(A). The exchange is neither tangible nor personal property and is thus not a product.

Courts have concluded that intangible electronic platforms like Binance.US are not products. In *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022), the court concluded that Airbnb was a "marketplace," and therefore not a product, and dismissed product liability claims based on alleged design defects in the platform. Similar claims against Facebook have been rejected because "as a social media platform that connects its users, Facebook is more akin to a service than a product." *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023); *see also Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) ("Snapchat is more like a service than a product, and services are not subject to the laws of strict product liability."). Like these intangible platforms, Binance.US provides the service of facilitating transactions in the financial marketplace and cannot be classified as a product under traditional principles of tort law.[13] In *Holland v. TD Ameritrade*, the Eastern District of California

---

[13] That Binance.com occasionally uses the word "product" is immaterial to the Court's analysis. (*See* AC ¶ 229.) First, Binance.com is a distinct and independent exchange operated by BHL, a separate entity. *See supra* Section II(A). Its characterizations carry no weight—no more than those of any other among the hundreds of online exchanges. Second, a defendant's self-description of its services as a "product" does not convert a service into a product. *See Jacobs*, 2023 WL 2655586,

rejected a similar product liability claim related to the defendant's digital trading platform because "[t]he 'product' at issue in th[e] case [was] an intangible 'good' and service" to which product liability claims could not attach. 2012 WL 592042, at *6 (Feb. 22, 2012). By Plaintiffs' own admission, Binance.US is registered with FinCEN as a "Money *Services* Business." (AC ¶ 118.) Plaintiffs' product liability claims founder on this threshold inquiry and should be dismissed.

> **b.    Even if Binance.US Is a Product, Plaintiffs Fail to State a Product Liability Claim.**

To state a product liability claim, a plaintiff must establish: (1) the seller was engaged in the business of selling the product that caused the harm; (2) the product was sold in a defective, unreasonably dangerous condition to the consumer or user; (3) the product was expected to and did reach the consumer without substantial change; and (4) the defect was a direct and proximate cause of the plaintiff's injuries. *Warner Fruehauf Trailer Co. v. Boston*, 654 A.2d 1272, 1274 (D.C. 1995). A plaintiff alleging that a product was sold in a defective condition must plead: (1) a manufacturing defect; (2) an absence of sufficient warnings; or (3) an unsafe design. *Id.*

Plaintiffs' allegations fail to meet these requirements. First, Plaintiffs do not allege that any transaction occurred through BAM's exchange, nor do they allege that BAM sold any product that caused their harm. Second, Plaintiffs fail to identify any defect in the design of BAM's exchange, which operates independently from BHL's exchange.

Plaintiffs fail to allege that any Hamas-affiliated transactions occurred through BAM or its exchange. The Amended Complaint repeatedly refers to transactions on a "Binance Platform" purportedly shared by BHL and BAM. (*See, e.g.*, AC ¶ 508.) As explained above, this reflects a fundamental misunderstanding: BAM's exchange is entirely separate and independent from

---

at *3 ("However, the use by Facebook of the term 'product' does not resolve the question of whether Facebook represents a 'product' for the purposes of this analysis.").

BHL's. *See supra* Section II(A). Because of this critical gap in its allegations, the Amended Complaint does not identify a single transaction initiated through BAM or its exchange that could have conceivably funded the October 7 attacks. *See id.*

For instance, Plaintiffs allege that BHL became aware of information "regarding HAMAS transactions" in February 2019 (AC ¶ 191) and April 2019 (*id.* ¶¶ 192, 203). These dates *predate BAM's launch* in September 2019 (Decl. ¶ 8), and therefore cannot implicate BAM in any way. Plaintiffs' reliance on BHL's settlements with federal agencies to suggest the existence of Hamas-affiliated transactions similarly fails to connect those allegations to BAM, which was not a party to any of those enforcement actions. Likewise, Plaintiffs cite an Israeli National Bureau for Counter Terror Financing seizure order targeting international BHL accounts, but that order does not implicate BAM or its U.S.-based exchange. (*See id.* ¶ 215.)

Because Plaintiffs offer no factual allegations regarding any transactions on BAM's exchange, they fail to plead that BAM sold any harmful product or caused any injury. This deficiency is dispositive of their product liability claims against BAM. *See Christian v. Walmart*, 2022 WL 602450, at *2 (D.D.C. 2022) ("Nothing in the complaint supports [plaintiff's] conclusion that Walmart is poisoning its customers, tampering with its products, or acting negligently. And he proffers no facts to support his 'realiz[ation]' . . . that Walmart's alleged conduct caused his claimed injuries, as he must do at the pleading stage.").

Further, Plaintiffs fail to allege any facts specific to BAM or its exchange, and therefore fail to plead that BAM's exchange was defective. *See Warner Fruehauf Trailer Co.*, 654 A.2d at 1274 (requiring a defect as an element of a product liability claim). At the motion-to-dismiss stage, Plaintiffs must offer more than "vague and conclusory" allegations that BAM sold a "product in a defective condition." *Rollins v. Wackenhut Servs.*, 802 F. Supp. 2d 111, 124 (D.D.C. 2011).

Plaintiffs contend that the "Binance Defendants'" products were defective due to a lack of AML/KYC compliance controls, citing what those defendants "subsequently agreed to do in their plea agreement with the U.S. Department of Justice." (AC ¶ 283.) But BAM was not a party to that plea agreement or to any enforcement action brought by federal regulators. *See supra* Section II(B). Accordingly, none of the enforcement actions Plaintiffs rely on contain findings that BAM or its exchange lacked compliance controls. Plaintiffs thus offer no factual allegations of any defect in BAM's exchange. Instead, they rely solely on conclusory statements that BAM's exchange "was in a defective condition, unreasonably dangerous to users, potential users, potential consumers, and other individuals such as Plaintiffs." (AC ¶¶ 487, 505.) Such unsupported assertions are insufficient to establish liability against BAM. *See Rollins*, 802 F. Supp. 2d at 122.

Plaintiffs' product liability claims also fail for lack of causation. They allege no connection between the October 7 attacks and BAM's exchange. *See supra* Section II(B). Even if such a link were alleged, manufacturers are not responsible for "prevent[ing] the criminal misuse of its products." *See McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366, 369 (S.D.N.Y. 1996), *aff'd sub nom.*, *McCarthy v. Olin Corp.*, 119 F.3d 148 (2d Cir. 1997) ("Such liability exposure would be limitless and thus to impose a duty here would be inappropriate.").

**7.    Plaintiffs' Manufacturing Defect Claims (Counts VII & X) Fail Because They Merely Duplicate Their Design Defect Claims (Counts VI & IX).**

Plaintiffs' "Manufacturing Defect" claims fail outright because Plaintiffs do not allege a manufacturing defect at all, but merely repackage their Design Defect allegations. A manufacturing defect exists only "when [a product] departs from its intended design." *Simmons v. Textron, Inc.*, 2025 WL 901170, at *3 (D.D.C. Mar. 24, 2025) (quoting Restatement (Third) of Torts: Products Liab., § 2 (1998)). Plaintiffs do not allege that BAM's exchange departed from its intended design and thus fail to allege a manufacturing defect. Rather, they claim that "the design

of the Platform created a risk of injury[.]" (AC ¶ 510.) That is, by definition, a design defect claim. Am. Law. of Products Liab., § 31:5 (3d ed. 1987) ("The claim that a product as designed was defective is not a manufacturing defect claim but rather a design defect claim."). Such "entirely duplicative" claims cannot proceed. *See In re Fort Totten*, 793 F. Supp. 2d at 155.

## 8.     Plaintiffs Fail to State a Claim for Public Nuisance (Count XV).

Because Plaintiffs fail to plausibly allege that BAM committed any tortious conduct, their public nuisance claim necessarily fails. "Liability [for nuisance] must be based on some underlying tortious conduct, such as negligence." *Tucci v. District of Columbia*, 956 A.2d 684, 697 (D.C. 2008); *see also Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 167 (D.C. 2013) ("[A]n intentional interference [with plaintiff's interests] only gives rise to nuisance damages if it is otherwise tortious."); *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 934 (D.C. 1995) ("[N]uisance is a type of damage and not a theory of recovery in and of itself.").

Moreover, Plaintiffs must establish that this underlying tortious conduct constituted "an unreasonable interference with a right common to the general public." *Szymkowicz v. Pres. & Dirs. of Coll. of Georgetown Univ.*, 336 A.3d 650, 655 n.6 (D.C. 2025). Such interference must involve harm to public interests, such as "damage to property, damage to human health," or disruption of "safety, morals, peace, or convenience." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 101 (D.D.C. 2010). In assessing a public nuisance claim, courts should adhere to traditional common-law limitations for tort liability, including duty, foreseeability, causation, and remoteness. *See Beretta*, 872 A.2d at 650 ("[W]e decline to relax the common-law limitations of duty, foreseeability, and direct causation so as to recognize the broad claim of public nuisance[.]").

Plaintiffs allege none of the above. The Amended Complaint—which fails to identify a single transaction occurring on BAM's exchange, let alone any such transactions connected to Plaintiffs' injuries—does not plausibly allege that BAM committed any underlying tort. *See supra*

Section II(B). That deficiency alone requires dismissal. *See Beretta*, 872 A.2d at 646.

Plaintiffs' public nuisance claim invites an impermissible expansion of the doctrine that the D.C. Court of Appeals has explicitly cautioned against. *Id.* at 650-51 (rejecting public nuisance claim against manufacturers, importers, and distributors of firearms for alleged facilitation of unlawful gun violence, noting that upholding such claims would invite "a proliferation of lawsuits" against commercial enterprises "regardless of the distance between the 'causes' of the 'problems' and their alleged consequences."). Indeed, the court in *Beretta* declined to impose public nuisance liability where, as here, the alleged harm stemmed from "the aggregate of the criminal acts of many individuals over whom [the defendants] have no control." *Id.* at 650.

Reinforcing the narrow scope of the public nuisance doctrine, no D.C. court has sustained such claims in the financial-services context, and courts in other jurisdictions have rejected similar theories. *See Kent Grp. Partners, LLC v. Citizens Bank, Nat'l Ass'n*, 688 F. Supp. 3d 608, 611, 615 (N.D. Ohio 2023), *aff'd*, 2024 WL 945239 (6th Cir. Mar. 5, 2024) (rejecting public nuisance claim against a bank for allegedly "fail[ing] to engage in reasonable fraud prevention procedures" on the grounds that "neither the Bank Secrecy Act nor the Patriot Act create a legal duty flowing to those victimized by fraudulent account holders" and "banks have no generalized duty to seek out thieves and terrorists"). This limitation is consistent with the traditional application of public nuisance, which typically involves land use. *See Tucci*, 956 A.2d at 696 n.11.

Finally, Plaintiffs' public nuisance claim fails because providing routine transaction services cannot constitute a "nuisance." The absence of supporting case law, combined with the traditional limits of the doctrine, confirms that expanding public nuisance to reach Plaintiffs' theory would conflict with settled jurisprudence and D.C. Court of Appeals precedent.

**E.      Plaintiffs Fail to Establish that BAM Is the "Alter Ego" of BHL or Mr. Zhao.**

Plaintiffs invoke an "alter ego" theory to compensate for the lack of allegations linking BAM to the October 7 attacks. But this theory cannot replace actual jurisdictional or liability grounds and fails on multiple fronts: it's been rejected by courts, most allegations fall outside the relevant time frame, and the Plaintiffs cannot meet the stringent standard for veil piercing.

**1.      Courts Have Repeatedly Rejected the Same Theory.**

As an initial matter, numerous courts have rejected similar arguments that BAM is the alter ego of BHL or other Binance-related entities to establish either jurisdiction or liability. *See Reynolds v. Binance Holdings, Ltd.*, 481 F. Supp. 3d 997, 1008 (N.D. Cal. 2020) (holding that BAM is not BHL's alter ego and rejecting argument based on allegedly overlapping directors and shared software); *Kuklinski v. Binance Cap. Mgmt.*, 2023 WL 2788654, at *7 (S.D. Ill. Apr. 4, 2023) (concluding that BAM and Binance Capital Management were not alter egos); *Cox v. CoinMarketCap OpCo, LLC*, 2023 WL 1929551, at *15 (D. Ariz. Feb. 10, 2023), *rev'd in part on other grounds by* 112 F.4th 822 (9th Cir. 2024) (same); *cf. Guarini v. Doe*, 634 F. Supp. 3d 1100, 1106 (S.D. Fla. 2022) (declining to impute BAM's jurisdictional contacts because "Binance.US is not affiliated with the Binance that has been sued in this action").

**2.      Plaintiffs Cannot Meet the Demanding Standard of Piercing the Corporate Veil.**

To plead alter ego, Plaintiffs "must show": (1) "a unity of interest and ownership" such "that the separate personalities of the entities no longer exist," and (2) that treating the acts as those of the corporation alone would yield "an inequitable result." *Glycobiosciences, Inc. v. Vichy Lab'ys, S.A.*, 2023 WL 157322, at *4 (D.D.C. Jan. 11, 2023).[14]

---

[14] This Court applies the D.C. and D.C. Circuit veil-piercing tests regarding jurisdiction interchangeably, as they are "substantively identical." *See United States v. Emor*, 850 F. Supp. 2d 176, 205 n.10 (D.D.C. 2012). The federal test also governs alter ego liability. *See United States ex*

This is a demanding standard. "Veil-piercing is an extraordinary procedure that courts should not use lightly, and only extreme circumstances call for disregard of corporate form." *Toumazou*, 71 F. Supp. 3d at 19. "To show the requisite unity of interest and ownership," Plaintiffs must show "active and substantial control," not mere ownership or influence. *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 19-21 (D.D.C. 1999). To make this evaluation, courts look to a number of factors, including: "the nature of the corporate ownership and control; failure to maintain corporate minutes or records; failure to maintain corporate formalities; commingling of funds and assets; diversion of one corporation's funds to the other's uses; and use of the same office or business location." *Id.* at 20. Plaintiffs fail to establish the degree of control necessary to impute Mr. Zhao and BHL's contacts or actions to BAM.

Critically, Plaintiffs' theory suffers from a fundamental deficiency: their allegations do not make a showing of control "at the time of the alleged [attack]." *See Johnson-Tanner v. First Cash Fin. Servs.*, 239 F. Supp. 34, 38 (D.D.C. 2003) (evaluating whether defendant "had active and substantial control of [its subsidiary] *at the time* of the alleged [misconduct]"). Alter-ego analysis focuses on the time period during which the events giving rise to the plaintiff's claims occurred. *See Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F. Supp. 2d 15, 19 (D.D.C. 2000) ("[T]he relevant time period for examining whether two entities are alter egos is the time during which a business relationship existed between plaintiff and defendant.").

Nearly all of Plaintiffs' allegations relating to the relationship of BAM and BHL predate the period during which Hamas plausibly obtained funds for the October 7 attacks, and are

---

*rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 191 F. Supp. 2d 17, 20-21 (D.D.C. 2002). Even if state law applied, the result would be the same: BAM Trading and BAM US Holdings are Delaware entities (AC ¶¶ 45-46), and Delaware's test mirrors D.C.'s. *See Amore v. Accor N. Am., Inc.*, 529 F. Supp. 2d 85, 93 (D.D.C. 2008).

therefore irrelevant to their claims. Plaintiffs cite events from 2019 to 2022[15] which cannot plausibly support that BAM was an alter ego of Mr. Zhao or BHL when transactions purportedly connected to the October 7, 2023 attacks would have occurred. It is highly implausible that the planning and financial transactions associated with a terrorist attack in late 2023 could have been orchestrated years in advance without detection. Moreover, Plaintiffs' own allegations indicate that Mr. Zhao's involvement with BAM steadily diminished during that period, further weakening any inference of contemporaneous control and underscoring the implausibility of Plaintiffs' theory. (*See* AC ¶ 37 (alleging that Mr. Zhao no longer chairs either BAM entity's Board); *id.* ¶ 158 (alleging that BAM had control over its data by 2021); *id.* ¶ 163 (alleging that BAM began obtaining control of its bank accounts in December 2020).)

Even if considered, these allegations fall short of the required level of "domination": a relationship "closer than one of control," amounting to "formal domination such that the separateness of the entities is but a pure fiction." *In re Baan Co. Sec. Litig.*, 245 F. Supp. 2d 117, 131 (D.D.C. 2003). Plaintiffs rely on Mr. Zhao's ownership and board role, but shared executives alone "do[] not demonstrate that two corporations are alter egos." *Tall v. Comcast of Potomac, LLC*, 729 F. Supp. 2d 342, 348 n.5 (D.D.C. 2010). Nor does "domination of a corporation by a single individual" suffice. *United States v. Emor*, 850 F. Supp. 2d 176, 207 (D.D.C. 2012). Plaintiffs, at most, assert that early in BAM's existence, Mr. Zhao—its majority owner and then-Chairman—influenced corporate policy. (*See, e.g.*, AC ¶¶ 162, 170.) But such influence falls short

---

[15] *See, e.g.*, AC ¶¶ 37, 155, 158, 160-62, 164, 166, 169 (alleging that Mr. Zhao was BAM's Chairman "until approximately *March 2022*," that he contributed funding to BAM in "*July 2020*," that BAM had limited access to its data "*through much of 2021*," that BAM's CEO questioned Mr. Zhao's involvement "*[i]n November 2019*," that Mr. Zhao approved certain expenditures "*through January 2020*," transactions involving BAM funds "*in December 2020*" and "*by 2021*," that a Binance manager had signatory authority over BAM's accounts "*until December 2020*," and that Binance acted as a custodian for certain BAM assets "*through December 2022*.").

of the complete control necessary to disregard corporate separateness. Moreover, Plaintiffs concede that Mr. Zhao was no longer on either BAM entity's board during the period when transactions purportedly connected to the October 7, 2023 attacks would have plausibly occurred. (*See id.* ¶ 37.) Courts have pierced the corporate veil in exceptional circumstances where virtually all significant corporate decisions were made solely by a dominant individual. *See United States v. TDC Mgmt. Corp.*, 263 F. Supp. 3d 257, 269, 271 (D.D.C. 2017) (piercing the corporate veil where there was no "evidence that anyone other than [the owner] made a significant decision" for the corporation); *Valley Fin., Inc. v. United States*, 629 F.2d 162, 172-73 (D.C. Cir. 1980) (piercing the corporate veil where "there [was] no evidence that a major corporate decision *was ever* made by anyone other than [the dominant shareholder]"). Plaintiffs allege nothing of this sort here. *Cf. Turner & Newall, PLC v. Am. Mut. Liab. Ins.*, 1985 WL 8056, at *9 (D.D.C. Aug. 1, 1985) (finding that approving operational decisions demonstrates "the control which is incident to stock ownership"). Further, Plaintiffs' allegations undermine their theory. They concede that BAM and BHL's "affiliation" is "governed" by formal service-level agreements (*see* AC ¶ 157), which affirms corporate separateness rather than negates it. *See Flynn v. R.C. Tile*, 353 F.3d 953, 959 (D.C. Cir. 2004).

Only two allegations fall within the plausibly relevant time frame of 2023: (1) Mr. Zhao's signatory authority over a BAM account until May 2023 (and undefined "control" over that account until November), and (2) joint control over BAM assets as of June 2023. (AC ¶¶ 163, 165.) Neither suffices to warrant the "rare exception" of veil-piercing. *Alkanani*, 976 F. Supp. 2d at 8-9. First, alter ego doctrine requires that "control [] not be merely theoretical," but rather "so exercised that the prime function of one corporation is but to serve the other." *Material Supply*, 62 F. Supp. 2d at 21-22. But Plaintiffs do not allege that Mr. Zhao actually used his signatory status

to take any action or exercise any control over BAM in 2023, rendering the alleged control merely "theoretical." *Id*. Nor do Plaintiffs allege that the "joint control" he and BHL supposedly exercised over BAM assets was outside the bounds of an arm's-length agreement. (*See* AC ¶ 157.) Further, Plaintiffs fail to address several critical factors required to support an alter ego theory. They do not allege that BAM "fail[ed] to maintain corporate formalities." *Material Supply*, 62 F. Supp. 2d at 19-20. Nor could they, as the record reflects consistent adherence to such practices. (*See* Decl. ¶¶ 7, 15-20, 29, 33-34.) There are no allegations that BAM's Board met infrequently or failed to pass resolutions and discuss corporate policy. *See TDC Mgmt.*, 263 F. Supp. 3d at 268. Plaintiffs also do not claim that BAM "disregarded its corporate filing requirements" or failed "to file required annual reports," *id.* at 269; or that it failed to maintain records. *Emor*, 850 F. Supp. 2d at 208. Nor do they allege that BAM maintained "an inadequate level of capitalization" to function as a legitimate cryptocurrency exchange. *Leake v. Alex Gen. Constr., LLC*, 2025 WL 1342694, at *5 (D.D.C. May 8, 2025). (*See* Decl. ¶ 26.)

Finally, Plaintiffs fail to establish that any purported control exercised by Mr. Zhao or BHL was the "proximate cause of the alleged injustice at issue." *Material Supply*, 62 F. Supp. 2d at 21. Plaintiffs do not allege that BAM, or any transactions on BAM's exchange, had any connection to their injuries, Hamas, or the October 7 attacks.

In sum, Plaintiffs offer a patchwork of conclusory and outdated allegations that do not meet the high bar for veil-piercing. Their theory is unsupported by the facts and contradicted by their own pleadings. The Court should reject this attempt to impute liability or other Defendants' supposed jurisdictional contacts to BAM and dismiss the claims against it with prejudice.

## IV.    CONCLUSION

For the reasons stated above, the Court should dismiss the claims against BAM with prejudice pursuant to Federal Rules of Civil Procedure 8, 12(b)(2), and 12(b)(6).

Dated: August 29, 2025

Respectfully submitted,

/s/ Daniel T. Stabile
Daniel Tramel Stabile (*pro hac vice*)
Thania (Athanasia) Charmani (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-4659
DStabile@winston.com
ACharmani@winston.com

*Attorneys for Defendants BAM Management*
*US Holdings, Inc. and BAM Trading Services*
*Inc. d/b/a Binance.US*