## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIAT ATZILI, KEITH SIEGEL, ADRIENNE SIEGEL, SHAI SIEGEL, SHIR SIEGEL, ELAN TIV, GAL SIEGEL, LUCY SIEGEL, DAVID SIEGEL, and LEE SIEGEL, | Case No.: 1:24-cv-03365-CJN |
| Plaintiffs, | |
| v. | |
| ISLAMIC REPUBLIC OF IRAN, HARAKAT AL-MUQAWAMA AL-ISLAMIYA A/K/A HAMAS, BINANCE HOLDINGS LIMITED, D/B/A BINANCE.COM, BAM MANAGEMENT US HOLDINGS INC., BAM TRADING SERVICES INC. D/B/A BINANCE.US, and CHANGPENG ZHAO | |
| Defendants. | |

**BINANCE HOLDINGS LIMITED d/b/a BINANCE.COM, BAM MANAGEMENT US HOLDINGS INC., AND BAM TRADING SERVICES INC. d/b/a BINANCE.US'S JOINT NOTICE OF SUPPLEMENTAL AUTHORITY**

Binance Holdings Limited ("BHL"), BAM Management U.S. Holdings, Inc., and BAM Trading Services Inc. (together, "BAM," and with BHL, "Defendants") respectfully submit this joint notice of an opinion issued by the United States Court of Appeals for the District of Columbia in *Atchley v. AstraZeneca UK Ltd.*, No. 20-7077, 2026 WL 184415 (D.C. Cir. Jan. 23, 2026) ("*AstraZeneca*," "Op.," or the "Opinion") (attached as Exhibit A). *AstraZeneca* unequivocally supports the arguments set forth by Defendants in their pending motions to dismiss Plaintiffs' Amended Complaint[1] in the above-captioned case.[2]

Although the *AstraZeneca* court reinstated the plaintiffs' aiding-and-abetting claims, the Opinion underscores how much more severe and culpable the alleged aiding-and-abetting conduct in *AstraZeneca* was compared to what is alleged in the Amended Complaint and, therefore, why Plaintiffs' allegations fail to state an aiding-and-abetting claim under JASTA (Count 11). *AstraZeneca* involved allegations of (1) defendant's affirmative conduct undertaken to assist a foreign terrorist organization ("FTO") with well-documented awareness and intentionality, and (2) tight geographic and temporal nexuses between that assistance and the specific attacks that caused plaintiffs' harms. In stark contrast, the AC here rests on general hindsight AML compliance criticisms and unspecified associations, which courts have routinely held is insufficient under the ATA and JASTA. *See, e.g.*, *Fraenkel v. Standard Chartered Bank*, No. 24-CV-4484 (MMG) (RWL), No. 24-CV-5788 (MMG) (RWL), 2025 WL 2773251, at *9 (S.D.N.Y. Sept. 26, 2025) ("Even though [the bank] clearly engaged in some wrongdoing with regard to evading sanctions regimes and assisting customers to evade those sanctions, this conduct is far too attenuated to

---

[1] Unless otherwise noted, all emphasis is added, internal quotations and citations are omitted, and defined terms have the meanings ascribed to them in Plaintiffs' Amended Complaint (Dkt. 47, "AC").

[2] *See* ECF Nos. 63-1 (BAM Mov. Br.), 64-1 (BHL Mov. Br.), 86 (BAM Reply Br.), 87 (BHL Reply Br.).

establish a direct nexus between [the bank's] conduct and the [a]ttacks.").

*First*, *AstraZeneca*'s culpability allegations reflected "**direct**" **assistance** through "**unusual and corrupt means**." (Op. at 23, 24.) The D.C. Circuit emphasized the intentional and bespoke nature of defendants' dealings with the FTO Jaysh al-Mahdi, including "pa[ying] illegal cash bribes directly to the group and suppl[ying] extra, off-the-books batches of valuable medical goods that Jaysh al-Mahdi monetized on the black market to fund its operations." (Op. at 3.) Specifically, the complaint alleged that defendants entered into "a long-running scheme to provide Jaysh al-Mahdi with cash and in-kind bribes that amounted to at least 20 per cent of the value of each contract, as well as off-the-books shipments of free goods that were not tied to any particular contract." (Op. at 30.) Defendants "pursued" these relationships and "repeatedly and voluntarily renewed" these contracts over the period in question. (Op. at 3, 20.) As the court summarized, "[p]erhaps the strongest support for the inference of culpable association there was the 'unusual' kind of assistance defendants allegedly provided." (Op. at 29.) The complaint alleged conduct that was "highly irregular and illegal under both U.S. and Iraqi law." (Op. at 30.)

Further, the complaint alleged that defendants knew precisely how their bribes and direct deliveries of medical goods were being used. Plaintiffs alleged that U.S. government personnel referred to the Jaysh al-Mahdi as "The Pill Army," because its fighters were "paid in drugs that they either consumed or sold for cash on the black market." (Op. at 8.) Defendants also allegedly "finalized contracts at in-person meetings at the [Iraqi Ministry of Health (the "Ministry"), a known front for the Jaysh al-Mahdi], where conspicuous displays of Jaysh al-Mahdi weaponry, fighters, and propaganda made clear who was in charge." (Op. at 3.) Defendants' agents "had to walk by Sadrist propaganda posters lining the premises, Jaysh al-Mahdi fighters in the hallways, and an array of heavy weaponry displayed in the offices of officials." (Op. at 27.) Additionally,

news organizations widely and contemporaneously reported the diversion of Ministry funds and medical supplies to Jaysh al-Mahdi. (Op. at 27, 28.) A 2006 U.S. State Department report described the Ministry as "openly under the control" of the militia and financing attacks using diverted medical goods. (Op. at 28.) And a 2007 report by the head of the Iraqi Commission on Public Integrity was even more explicit: It concluded that Jaysh al-Mahdi had "fully commandeered the Ministry of Health," and "resold medical supplies *to fund the insurgency against the Americans*." (*Id.* (emphasis in the original).)

*Second*, the D.C. Circuit highlighted the **tight temporal and geographic nexuses** alleged between defendants' assistance and the relevant attacks. Plaintiffs claimed that virtually all of the relevant attacks occurred in Baghdad, including near the Ministry itself, and that defendants executed bribery-tainted contracts with the Ministry during the same period as the attacks. (Op. at 23.) Some attacks took place just outside the Ministry's front gate. (*Id.*) The court described this as a "localized story" in which defendants' knowing provision of substantial assistance was tied to a "defined" and "discrete" set of attacks. (Op. at 22, 23.) In other words, defendants were allegedly bribing and directly providing an FTO with supplies in their main base of operations during an active military conflict, in which the FTO was using those bribes and supplies to contemporaneously attack US service members directly outside that base.

In contrast, the AC here bears none of the hallmarks that led the D.C. Circuit to allow the claims in *AstraZeneca* to proceed.

**The AC alleges no direct link or affirmative conduct.** Whereas *AstraZeneca* alleged direct bribes, personal interactions, and the delivery of free goods into the hands of a known terrorist organization, including at the scene of certain terrorist attacks, the allegations here focus instead on BHL's AML shortcomings that were purportedly exploited by customers Defendants

3

knew or must have known had connections to FTOs. (*See* AC ¶¶ 123, 191-92, 203, 208, 210, 224, 279.) The AC contains no allegations that any Defendant dealt directly with an FTO. As for BAM, Plaintiffs do not even allege that any relevant transactions occurred on BAM's exchange, which serves only U.S. individuals and, as Plaintiffs concede, was designed to be regulatory compliant. (See ECF No. 63-1 (BAM Mov. Br) at 6-7.)

**The AC contains no well-pled contemporaneous allegations of knowledge.** The AC does not allege Defendants made payments to an FTO, or that Defendants could or did contemporaneously connect any of their customers to a particular FTO, let alone any violent terrorist attack by that FTO, or that any governmental or corporate intelligence alerted Defendants to that information. This stands in stark contrast to the extensive contemporaneous notice alleged in *AstraZeneca*, where multiple independent sources confirmed defendants knew at the time of the transactions that their money and goods were fueling attacks, including firsthand knowledge from in-person meetings.

**The AC does not allege a concrete nexus.** The AC also does not allege anything close to the "localized story" of *AstraZeneca* regarding the geographic and temporal nexus between defendants' alleged conduct and any attack. Unlike the detailed allegations situating AstraZeneca's personal, physical conduct and the resulting attacks within a single city, a single Ministry complex, and a specific time window, Plaintiffs here identify no city, region, time period, or specific act of terrorism connected to any alleged Binance transaction. Plaintiffs instead offer a broad, generalized theory that seeks to hold Defendants liable under a theory of inaction or willful blindness (Plaintiffs' Opposition to BHL's Motion to Dismiss (ECF No. 83) at 29), that Defendants allegedly allowed transactions on Binance.com that eventually, and without any specificity, helped fund FTOs. This is precisely the sort of attenuated pleading *Twitter* rejects absent allegations of a

"near-common enterprise," which Plaintiffs do not and cannot allege. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 501-02 (2023).

For these reasons, *AstraZeneca* confirms that Plaintiffs' allegations fall far short of pleading knowing and substantial assistance or any cognizable nexus under JASTA and should be dismissed.

Dated: January 27, 2026                                    Respectfully submitted,

/s/ Christopher N. LaVigne                              /s/ Thania Charmani
Christopher N. LaVigne (*pro hac vice*)        Daniel Tramel Stabile (*pro hac vice*)
Joseph E. Gallo (*pro hac vice*)                   Thania (Athanasia) Charmani (*pro hac vice*)
Alexander C. Haden                                     WINSTON & STRAWN LLP
WITHERS BERGMAN LLP                            200 Park Avenue
430 Park Avenue, 10th Floor                        New York, NY 10166
New York, NY 10022                                   Tel.: (212) 294-4659
Tel.: (212) 848-9800                                    DStabile@winston.com
Christopher.LaVigne@withersworldwide.com   ACharmani@winston.com
Joseph.Gallo@withersworldwide.com
Alex.Haden@withersworldwide.com

*Attorneys for Defendant Binance Holdings*        *Attorneys for Defendants BAM Management*
*Limited*                                                        *US Holdings Inc. and BAM Trading Services*
                                                                    *Inc. d/b/a Binance.US*