# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIAT ATZILI, KEITH SIEGEL, ADRIENNE SIEGEL, SHAI SIEGEL, SHIR SIEGEL, ELAN TIV, GAL SIEGEL, LUCY SIEGEL, DAVID SIEGEL, and LEE SIEGEL,<br><br>*Plaintiffs*,<br><br>v.<br><br>ISLAMIC REPUBLIC OF IRAN, HARAKAT AL-MUQAWAMA AL-ISLAMIYA A/K/A/ HAMAS, BINANCE HOLDINGS LIMITED, D/B/A BINANCE.COM, BAM MANAGEMENT US HOLDINGS, INC., BAM TRADING SERVICES INC. D/B/A BINANCE.US, CHANGPENG ZHAO<br><br>*Defendants*. | Civil Action No. 1:24-cv-03365-CJN<br><br>**PLAINTIFFS' RENEWED MOTION TO SERVE DEFENDANTS CHANGPENG ZHAO AND HARAKAT AL-MUQAWAMA AL-ISLAMIYA PURSUANT TO FED. R. CIV. P. 4(f)(3)**<br><br>**ORAL ARGUMENT REQUESTED** |

i

# **CONTENTS**

INTRODUCTION ........................................................................................................................ iii

**FACTUAL AND PROCEDURAL BACKGROUND**.................................................................. 1

**LEGAL STANDARD**.................................................................................................................. 3

**ARGUMENT** ............................................................................................................................... 4

    I.    Rule 4(f)(3) ...................................................................................................................... 4

    II.   The Court Should Authorize Service on CZ via NFT Under Fed. R. Civ. P. 4(f)(c) ......... 5

        1.    Background on NFTs.................................................................................................. 5

        2.    Serving CZ via NFT is Reasonably Calculated to Provide Notice and Does Not Offend the Laws of the UAE.................................................................................................... 6

        3.    CZ's Public Acknowledgement of this Action Supports Authorization of Service Via NFT 10

    III.  The Court Should Authorize Plaintiff to Serve Hamas via Website Publication ......... 11

CONCLUSION............................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*AngioDynamics, Inc. v. Biolitec, AG*,

   780 F.3d 420, 429 (1st Cir. 2015) ................................................................................. 5

*Bandyopadhyay v. Defendant 1*,

   2022 WL 17176849 (S.D. Fla. Nov. 23, 2022) .............................................................. 11

*Bazarian International Financial Associates, LLC v. Desarrollos Aerohotelco, C.A*,

   168 F.Supp.3d 1(D.D.C. 2016) ....................................................................................... 5

*Bowen v. Li*,

   2023 WL 2346292(S.D. Fla. March 3, 2023) ................................................................ 11

*Chow v. Defendants 1*,

   2024 WL 3225917 (E.D. La. Sept. 19, 2024) ................................................................ 11

*CipherBlade, LLC v. CipherBlade,* LLC,

   2024 WL 69164 (D. Alaska Jan. 5, 2024) ................................................................ 11, 13

*Freedom Watch, Inc. v. OPEC*,

   766 F.3d 74 (D.C. Cir. 2014) ..................................................................................... 7, 10

*In re Celsius Network LLC*,

   666 B.R. 28 (Bankr. S.D.N.Y. 2024) ............................................................................... 8

*Kaplan v. Hezbollah*,

   715 F.Supp.2d 165 (D.D.C. 2010) ................................................................................... 7

*Mullane v. Cent. Hanover Bank & Trust Co.*,

   339 U.S. 306 (1950) ......................................................................................................... 6

*Polansky v. Defendant 1*,

   2023 WL 5951838 (S.D. Fla. Aug. 31, 2023) ............................................................... 11

*Securities and Exchange Commission v. Campo*,

    2025 WL 2603613 (D.D.C. Sept. 9, 2025) .................................................................................. 12

*Strange v. Islamic Republic of Iran*,

    2019 WL 13158028 (D.D.C. June 4, 2019) ................................................................................ 6

*Troell v. Binance Holdngs. Ltd.*,

    2025 WL 1415808 (S.D.N.Y. May 16, 2024) .......................................................................... 12

*U.S. ex rel. Barko v. Halliburton Co.*,

    952 F.Supp.2d 108 (D.D.C. 2013) ..................................................................................... 7, 12

*United States v. Mohammad*,

    249 F.Supp.3d 450 (D.D.C. 2017) .......................................................................................... 12

**Other Authorities**

Amy J. Schmitz, *Resolving NFT and Blockchain Disputes*,

    6 STAN. J. BLOCKCHAIN L. & POL'Y 156 (2023) ........................................................................ 8

Andrew C. Michaels, *Confusion in Trademarked Nfts*,

    7 STAN. J. BLOCKCHAIN L. & POL'Y 1 (2024) ............................................................................ 8

Brian L. Frye, *How to Sell NFTs Without Really Trying*,

    13 HARV. J. SPORTS & ENT. L. 113 (2022) ................................................................................ 8

Fed. R. Civ. P. 4(f)(3)—advisory committee notes ...................................................................... 7

UAE Federal Decree-Law No. 42/2022 ................................................................................. 7, 12

**Rules**

Fed. R. Civ. P. 4(f)(3) ............................................................................................................ passim

Rule 4(f)(2)(C) ................................................................................................................................. 9

**INTRODUCTION**

Plaintiffs, by and through counsel, respectfully renew their Motion for Alternate Service. Plaintiffs seek leave to serve Defendants Changpeng Zhao (CZ) and Harakat Al-Muqawama Al-Islamiya (Hamas) through alternate means in accordance with Fed. R. Civ. P. 4(f)(3). Following the Court's Order on Plaintiffs' Motion for Alternate Service, Plaintiffs sought to serve CZ and Hamas through personal service and publication, respectively, but were unsuccessful. In accordance with the Court's guidance and with Rule 4, Plaintiffs made several inquiries as to alternate means of serving each defendant in advance of bringing this renewed motion. In light of all these attempts, Plaintiffs now renew their Motion for Alternate Service.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 9, 2025, the Court instructed Plaintiffs to "attempt to serve CZ through other means that comply with Rule 4(f)(2)" but "[i]n the event those efforts also fail, they may return to the Court to argue why alternative service under Rule 4(f)(3) is merited and would minimize offense to UAE law." ECF 79 at 5. The Court authorized Plaintiffs to serve Hamas under Rule 4(f)(3) "by publishing a link to Plaintiffs' Amended Complaint on *Al Jazeera*'s website for a period of three weeks." ECF 79 at 6–7. Per the September 9, 2025, order issued by this Court, Plaintiffs continued to make multiple attempts at serving CZ under Federal Rule of Civil procedure 4(f).

*First*, Plaintiffs investigated the use of personal service through several potential process servers. Plaintiffs contacted three separate companies who are qualified to serve documents in the United Arab Emirates, but none of these companies felt that it was even likely that they would be able to do more than Plaintiffs had already done, namely, deliver an envelope to the front desk of CZ's residence. Goldenberg Decl. ¶ 5; Ingalls Decl., ¶¶ 6–8. Each company provided quotes ranging between $5,000 and $9,000 merely for agreeing to *attempt* to serve CZ, and one company

1

stated it would only make only one attempt. *Id.* Further, unlike in the United States, where process servers can wait for individuals outside their homes or other locations they are expected to visit, process servers in the UAE cannot (and will not) engage in such conduct due to custom. *Id.*; Ingalls Decl. ¶¶ 6–8. Thus, even while Plaintiffs provided reliable information about CZ's residence and CZ's scheduled appearance at an upcoming public event during the first week of December, Plaintiffs could not locate a process server willing to do more than bring the Summons and Complaint to the concierge of CZ's building, *id.,* which the Court already deemed insufficient. *See* ECF 79 at 4. Plaintiffs therefore investigated alternate methods.

*Second*, Plaintiffs investigated the use of Letters Rogatory. Plaintiffs learned that the Letters Rogatory process takes approximately one year. Boutros Decl. ¶ 12.[1] Even if Letters Rogatory could be executed within a reasonable duration, as a practical matter, they are not available in civil matters like this one. Plaintiffs learned that service of process by Letters Rogatory is discretionary ,and UAE courts rarely, if ever, execute Letters Rogatory in civil matters. *See* Ingalls Decl. ¶ 5; Boutros Decl. ¶ 12. Plaintiffs therefore investigated alternate methods.

*Third*, Plaintiffs investigated diplomatic measures. Plaintiffs discovered that service via the Mutual Legal Assistance Treaty between the United States and the UAE is reserved for criminal matters only, rendering it inapplicable here. *See* Boutros Decl. ¶ 10. Plaintiffs researched other methods to serve individuals who could not be located in a private fashion, consistent with Defendants' expert declaration. Plaintiffs identified service by NFT as a viable option to serve CZ.

---

[1] "Rule 4(f)(3) does not require exhaustion of all possible methods of service before a court may authorize service by 'other means,' such as service through counsel and by email." *Bazarian International Financial Associates, LLC v. Desarrollos Aerohotelco, C.A*, 168 F.Supp.3d 1, 17 (D.D.C. 2016) (quoting *AngioDynamics, Inc. v. Biolitec, AG*, 780 F.3d 420, 429 (1st Cir. 2015)).

2

Meanwhile, Defendant CZ displayed his actual notice of this litigation by publicly taunting Plaintiffs' counsel through a post made on his personal X.com (formerly Twitter) linking to a Law360 article about this Court's decision on Plaintiffs' First Motion for Alternate Service. *See* Goldenberg Decl. Ex. A. While Plaintiffs remain committed to complying with Rule 4, it is clear CZ already has ample notice concerning the above-captioned case.

With respect to Hamas, Plaintiffs made multiple unsuccessful inquiries with *Al Jazeera* regarding service by publication. Goldenberg Decl. ¶¶ 8–13. Plaintiffs even retained an advertising consultant to facilitate Plaintiffs' attempts to serve Hamas by publication through *Al Jazeera*, but *Al Jazeera* declined to publish the notice. *Id.*; *see also* Goldenberg Decl. Ex. A. Plaintiffs therefore investigated other means of serving Hamas. Goldenberg Decl. ¶¶ 13–14. We determined that the best method of serving Hamas would be through publication on the website GlobalLegalNotices.com because this notice would be posted publicly and would appear in internet search results for certain keywords related to Hamas and its leadership such that Hamas' press office would be likely to view the Notice. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 4(f) provides the following mechanisms for serving an individual in a foreign country:

> (1) By any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice… or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). "The Court may allow service pursuant to Rule 4(f)(3) as long as the requested means of service is 'reasonably calculated, under all circumstances, to apprise interested parties of

3

the pendency of the action and afford them an opportunity to present their objections.'" *Strange v. Islamic Republic of Iran*, 2019 WL 13158028, at *2 (D.D.C. June 4, 2019) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "[W]hether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Freedom Watch, Inc. v. Org. Of the Petroleum Exporting Countries*, 766 F.3d 74, 81 (D.C. Cir. 2014) (internal quotation marks omitted). The rule was adopted "to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Id.* (citing *Kaplan v. Hezbollah*, 715 F.Supp.2d 165, 166 (D.D.C. 2010) (internal edits and citation omitted)).

## ARGUMENT

### I. Service in the UAE Under Rule 4(f)(3)

The Court previously explained that for alternate service under Rule 4(f)(3), while parties should make an "earnest effort" to "minimize offense" to foreign law. ECF 80 at 4. Rule 4(f)(3) requires only that the method used "'not be prohibited by *international agreement*' …which is a different standard than Rule 4(f)(2)(C)'s requirement that service not be 'prohibited by the *foreign country's law*." *Id.* Plaintiffs' request to serve CZ via NFT does not offend UAE law on service of process because UAE law is silent on service of process for foreign proceedings. *See* UAE Federal Decree-Law No. 42/2022 ("Civil Procedure Law"). The Civil Procedure Law's service provisions are limited to on-shore proceedings. *Id.*; *see also* Boutros Decl. ¶ 13; Abdel-Nabi Decl., ECF 35-3 ¶ 15. Plaintiffs' requested service method cannot offend a law that does not apply. Even if the law did apply, Plaintiffs have made an "earnest effort" to "minimize offense" to UAE law. Fed. R. Civ. P. 4(f)(3)—advisory committee notes. Notably, making an "earnest effort" to "minimize offense" does not require eliminating any potential offense. *U.S. ex rel. Barko v. Halliburton Co.*,

4

952 F.Supp.2d 108, 117 (D.D.C. 2013) (recognizing that while service should "minimize" offense to foreign law, the Court "took foreign law into consideration" and limited offense by authorizing electronic service from the United States).

Following Plaintiffs' diligent investigation of available service methods, the Court should exercise its discretion to authorize a direct, traceable method of service that is not prohibited by international agreements and likely not prohibited by UAE law which is silent on foreign service of process. Not only does Plaintiffs' proposed method refrain from offending UAE law, but it is also consistent with UAE law, given that the UAE government and courts embraced the blockchain for government and court processes due to its traceability. *See, e.g.*, Boutros Decl. ¶¶ 17–21.

### II. The Court Should Authorize Service on CZ via NFT Under Fed. R. Civ. P. 4(f)(3)
#### 1. Background on NFTs

A Non-Fungible Token (NFT) is a "blockchain based technology" that is "generally associated with a link to a digital content file, such as a picture or video." Andrew C. Michaels, *Confusion in Trademarked Nfts*, 7 STAN. J. BLOCKCHAIN L. & POL'Y 1, 5–6 (2024). Unlike cryptocurrency and fungible tokens, "NFTs are called "tokens" because they exist on the ledger of a digital currency but represent something other than a quantity of that currency, and they are "non-fungible" because they are unique and not substitutes for each other." Brian L. Frye, *How to Sell NFTs Without Really Trying*, 13 HARV. J. SPORTS & ENT. L. 113, 113 (2022). NFT ownership is uniquely identifiable as "[a]n NFT can only have one owner at a time, generally managed through a smart contract that assigns ownership and manages the transferability." Amy J. Schmitz, *Resolving Nft and Blockchain Disputes*, 6 STAN. J. BLOCKCHAIN L. & POL'Y 156, 159 (2023). An NFT can be sent via airdrop, the automatic process of "depositing to specific [crypto] wallet addresses[.]" *In re Celsius Network LLC*, 666 B.R. 28, 31 (Bankr. S.D.N.Y. 2024). Airdropping is a method that ensures the NFT "is sent directly to a single address[]" and "does not require the

5

recipient to take action to receive the NFT." *Id.* Plaintiffs request authorization to serve CZ by airdropping an NFT into CZ's crypto wallet, which will include a copy of the Summons and a hyperlink to a website Plaintiffs' counsel created for this case, which contains a copy of the Complaint, as well as all other documents from the docket. Goldenberg Decl. ¶ 6.

### 2. Serving CZ via NFT is Reasonably Calculated to Provide Notice and Does Not Offend the Laws of the UAE

As previously established, Plaintiffs are unable to serve CZ under Federal Rule of Civil Procedure 4(f)(1) because the UAE, where CZ resides, is not a party to the Hague Convention or other international agreement as to service of process. *See* ECF 79 at 3.

The Court previously explained that for alternate service under Rule 4(f)(3), while parties should make an "earnest effort" to "minimize offense" to foreign law, Rule 4(f)(3) requires only that the method used "'not be prohibited by *international agreement*' …which is a different standard than Rule 4(f)(2)(C)'s requirement that service not be 'prohibited by the *foreign country's law*." ECF 80 at 4. Plaintiffs' request to serve CZ via NFT does not offend UAE law on service of process because UAE law is silent on service of process for foreign proceedings. *See* UAE Federal Decree-Law No. 42/2022 ("Civil Procedure Law"). The Civil Procedure Law's service provisions are limited to on-shore proceedings. *Id.*; *see also* Boutros Decl. ¶ 13; Abdel-Nabi Decl., ECF 35-3 ¶ 15. Plaintiffs' requested service method cannot offend a law that does not apply.

However, even if UAE law governing service in UAE proceedings could be interpreted to apply foreign proceedings, Plaintiffs have met their burden of making an "earnest effort" to "minimize offense" to UAE law. Fed. R. Civ. P. 4(f)(3)—advisory committee notes. As an initial matter, Rule 4(f)(3) does not require Plaintiffs to completely avoid offense to foreign law; they need only try to limit offense. *See*, *e.g.*, *Barko*, 952 F.Supp.2d at 117 (recognizing that while service should "minimize" offense to foreign law, the Court "took foreign law into consideration"

6

and limited offense by authorizing electronic service from the United States); *Moriarty v. Hashemite Kingdom of Jordan*, 2024 WL 3010850, *4 (D.D.C. June 14, 2024) (stating that "regardless of whether service by publication is proper in Jordan, service must only 'minimize offense to foreign law,' not avoid it completely."). The D.C. Circuit has emphasized that Courts "retain[] discretion under Rule 4(f)(3) to authorize service even if the alternative would contravene foreign law." *Freedom Watch, Inc. v. Org. of Petrol. Exporting Countries*, 766 F.3d 74, 84 (D.C. Cir. 2014). To the extent Plaintiff's request would contravene UAE law, the Court should nonetheless authorize it because, as described *infra*, service in the UAE is expensive, time-consuming, and—most importantly—not guaranteed. The UAE rejects letters rogatory for civil cases and private process servers can only deliver papers to the concierge of a building, which is inconsistent with United States' due process requirements. Ingalls Decl. ¶¶ 5–8; Boutros Decl. ¶ 12. Plaintiffs' proposed alternate method on the other hand is reasonably calculated to provide notice to Defendant CZ.

CZ has devoted his entire career to developing blockchain and crypto technology. It therefore could not be any more fitting or tailored to serve him via the very technology he has spent years developing and touting.[2] Following Plaintiffs' diligent investigation of available service methods, the Court should exercise its discretion to authorize a direct, traceable method of service that is not prohibited by international agreements and likely not prohibited by UAE law which is silent on foreign service of process.

Accordingly, Plaintiffs respectfully request that this court authorize service of process on CZ via NFT under Fed. R. Civ. P. 4(f)(3). Plaintiffs propose airdropping an NFT into CZ's

---

[2] *See* Mouaz Taghastiano, *From Immigrant to Billionaire: Changpeng Zhao's Journey to Build a Crypto Empire*, BINANCESQUARE, https://www.binance.com/en/square/post/13757987141873 (last accessed Feb. 6, 2026).

7

personal crypto wallet. Goldenberg Decl. ¶ 6. The content of the NFT will include the summons and a link to a specially created website, website containing all pleadings and copies of all documents filed on the docket. *Id.* Service via NFT is "reasonably calculated to give notice" to CZ, a sophisticated crypto user, and delivery to his crypto wallet will ensure compliance with UAE laws against harassment and privacy violations. *See* Fed. R. Civ. P. 4(f).

*First*, service through an NFT is not novel;, U.S. courts have recognized this method as reasonably calculated to give notice to defendants. *See*, *e.g.*, *Bowen v. Li*, 2023 WL 2346292, at *3 (S.D. Fla. March 3, 2023) ("NFT and posting on a designated website are reasonably calculated to give notice to Defendants."). Specifically, courts in the United States are increasingly authorizing service in the form of NFTs in cases involving cryptocurrency schemes and foreign defendants. *See CipherBlade, LLC v. CipherBlade,* LLC, 2024 WL 69164, at *3 (D. Alaska Jan. 5, 2024) ("[Service via NFT] is reasonably calculated to apprise the [UAE and Singapore-based] defendants of this action as this case involves a "blockchain investigation" company and the parties are knowledgeable about blockchain technology."); *Bandyopadhyay v. Defendant 1*, 2022 WL 17176849, at *3 (S.D. Fla. Nov. 23, 2022) (service via NFT permitted on foreign defendants in China since it is not prohibited by international agreement; the case arises out of a cryptocurrency scheme); *Polansky v. Defendant 1*, 2023 WL 5951838, at *1, 3 (S.D. Fla. Aug. 31, 2023) (same).

CZ was the CEO of the largest cryptocurrency company (built on blockchain technology) in the world for six years. *See* ECF 64-5 at 6. CZ is specifically knowledgeable about NFTs. Goldenberg Decl., Ex. C. If anyone would be able to clearly navigate and understand service upon receipt of an NFT into their crypto wallet, it would be Binance's founder and CEO, CZ. *See Chow v. Defendants 1*, 2024 WL 3225917, at *1 (E.D. La. Sept. 19, 2024) (concluding service via NFT was reasonably calculated to give notice because a foreign defendant in China was alleged to

8

operate a cryptocurrency fraud and conversion scheme via "cryptocurrency blockchain electronic technology.").

Service through an NFT is comparable to service via email and website posting, which is also reasonably calculated to give notice under Fed. R. Civ. P. 4(f). *See Bandyopadhyay*, 2022 WL 17176849, at *3 (reasoning that NFTs are reasonably calculated to give notice to defendants as "courts regularly permit service by e-mail and website posting[.]") D.C. courts have granted motions for alternate service via email and website posting broadly. *United States v. Mohammad*, 249 F.Supp.3d 450, 454 (D.D.C. 2017) ("this Court granted the government's motion, under Rule 4(f)(3) of the Federal Rules of Civil Procedure, for substituted service of process, and authorized the government to serve process upon the defendant by means of email and Facebook message."); *U.S. ex rel. Barko v. Halliburton Co.*, 952 F.Supp.2d 108, 117 (D.D.C. July 18, 2023) ("Service of process on defendants by electronic mail can be proper, as it was here.") *Securities and Exchange Commission v. Campo*, 2025 WL 2603613, at *2 (D.D.C. Sept. 9, 2025) ("the SEC moved under Rule 4(f)(3) for authorization to serve Campo via email, which the Court granted.").[3]

*Second*, service via NFT would neither violate an international agreement between the United States and the UAE, nor is this method specifically objected to by the UAE. CZ's previous Binance-affiliated litigation informs this court that *"*there is no international agreement that governs service of persons located within the UAE. Courts in [New York] have therefore authorized service via alternate means under Rule 4(f)(3) for defendants located in the UAE."

---

[3] Here, the Court denied Plaintiffs' first Motion for Alternate service to serve CZ via Twitter finding that, under UAE law, service via **public** website posting would offend UAE laws and customs concerning privacy. ECF 79 at 4. An NFT delivered to CZ's **private** crypto wallet, on the other hand, does not offend these laws and customs. Boutros Decl., ¶ 26.

9

*Troell v. Binance Holdngs. Ltd.,* 2025 WL 1415808, at *3 (S.D.N.Y. May 16, 2024). Furthermore, the UAE does not specifically object to service via NFT. *Id.*

*Third*, service on CZ via NFT would minimize any offense to UAE law. *See* Fed. Rule Civ. P. 4 advisory committee's note to 1993 amendment. UAE criminal laws protecting business owners from defamation and insult would not be at issue. ECF 35-3 ¶ 6. Contrary to the assertions of Ms. Abdel-Nabdi, UAE law does not prohibit service through alternate means. Further, service through an NFT would be a private process, not public, negating the possibility of violating UAE law No. 31/2021 articles 425 and 426. *Id.*; *see also* Boutros Decl. ¶ 26. Plaintiff can certify that CZ will be the intended and only recipient of the NFT through an affidavit. *See CipherBlade, LLC,* 2024 WL 69164, at *3 ("Each wallet address is uniquely identified and linked to an email address and bank account, ensuring that, like an email address, it is specific to a particular user."). By airdropping the NFT directly to CZ, the content of the NFT, including the complaint, first amended complaint, and summons, will only be available to CZ. Goldenberg Decl. ¶ 6. Furthermore, receipt of the NFT can be confirmed. *Id.*

*Fourth*, in the interest of a timely proceeding for all involved parties, an NFT will eliminate the possible year or more long process of attempting to serve CZ through a Letter Rogatory or other means that are made uniquely complex by the nature of the UAE. *See* Ingalls Decl. ¶¶ 5–8; Boutros Decl. ¶ 12.

### 3. CZ's Public Acknowledgement of this Action Supports Authorization of Service Via NFT

CZ has actual notice of this action and has acknowledged its existence publicly taunting Plaintiffs' counsel on X.com (Twitter), the very medium by which he previously objected to service on privacy grounds. *Compare* Goldenberg Decl., Ex. A to ECF 35 at 24. Serving CZ, a

10

sophisticated blockchain user, via the blockchain with an NFT is an entirely private means of service—despite CZ's public acknowledgement of this lawsuit. Goldenberg Decl., Ex. A. Serving CZ via blockchain with an NFT is also a direct means of service—despite CZ already having actual knowledge of this action. *Id.* There can be no doubt that Plaintiffs' proposal satisfies Fed. R. Civ. P. 4(f) because it is nothing more than a private transmission of the Summons and Complaint directly to him.

### III. The Court Should Authorize Plaintiff to Serve Hamas via Website Publication

Plaintiffs further request authorization for alternate service of process on Hamas through digital publication on GlobalLegalNotices.com. When Plaintiffs initially requested permission to serve Hamas via *Al Jazeera,* they had good cause to believe that *Al Jazeera* would publish their notice. Goldenberg Decl. ¶ 7. While Plaintiff received permission from the court to publish the summons and amended complaint in *Al Jazeera*, this method of service has proven to be unattainable. Plaintiff was successful in contacting the offices and web team of *Al Jazeera*. Goldenberg Decl. ¶¶ 8–13. However, once *Al Jazeera's* team learned what Plaintiff wanted to purchase the ad space for, the formal response was "We do not allow such type of ad." Goldenberg Decl., Ex. B; *see also* Tucker Decl. ¶¶ 4–7.

Seeking efficient and reliable means, Plaintiff turned to other forms of alternate service. Plaintiff reached out to Process Service Network regarding digital publication through GlobalLegalNotices.com. Goldenberg Decl. ¶¶ 14–15. Digital publication includes the notice directed at Hamas on the process server's website, as well as the names Hazem Qassem and Khalil al-Hayya tagged as keyword searches. *Id.* In this format, when either member searches their own name in a search engine, the complaint against Hamas will be one of the first items that appears as

11

a result. *Id.* Because of the "obvious and unique challenges" presented by service against Hamas, Plaintiff asks that this court allows service of process through the website.

## CONCLUSION

Plaintiffs request the Court to assess all the attempts made to reasonably comply with both U.S. and UAE law in the interest of efficiency, feasibility, and time and grant Plaintiffs' Renewed Motion for Alternate Service on Defendants Hamas and CZ.

Dated: February 6, 2026

Respectfully Submitted,

| | |
|---|---|
| */s/ Marlene J. Goldenberg* | */s/ Amanda Fox Perry* |
| Marlene J. Goldenberg (DC Bar No. 166040) | Amanda Fox Perry (DC Bar No. 230024) |
| **NIGH GOLDENBERG RASO & VAUGHN PLLC** | **FOX MCKENNA PLLC** |
| 14 Ridge Square | 14 Ridge Square |
| Third Floor | Third Floor |
| Washington, D.C. 20016 | Washington, D.C. 20016 |
| Phone: (202) 978-2228 | Phone: (202) 852-2000 |
| Fax: (202) 792-7927 | Fax: (202) 915-0244 |
| mgoldenberg@nighgoldenberg.com | amanda@foxmckenna.com |
| | |
| Samantha V. Hoefs *(pro hac vice forthcoming)* | Elyse McKenna *(pro hac vice forthcoming)* |
| **NIGH GOLDENBERG RASO & VAUGHN PLLC** | **FOX MCKENNA PLLC** |
| 60 South 6th Street | 14 Ridge Square |
| Suite 2800 | Third Floor |
| Minneapolis, MN 55402 | Washington, D.C. 20016 |
| Phone: (612) 445-0202 | Phone: (202) 852-2000 |
| Fax: (202) 792-7927 | Fax: (202) 915-0244 |
| shoefs@nighgoldenberg.com | elyse@foxmckenna.com |

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following:

Served electronically via ECF:

12

Binance Holdings Limited, D/B/A Binance.com,
Bam Management Us Holdings, Inc.
Bam Trading Services Inc. D/B/A Binance.US
Changpeng Zhao

<u>Served via Mail:</u>
Islamic Republic of Iran
Harakat Al-Muqawama Al-Islamiya A/K/A/ Hamas

Dated: February 6, 2026                                                          <u>/s/ *Marlene J. Goldenberg*</u>
                                                                                 Marlene J. Goldenberg