## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIAT ATZILI, KEITH SIEGEL, ADRIENNE SIEGEL, SHAI SIEGEL, SHIR SIEGEL, ELAN TIV, GAL SIEGEL, LUCY SIEGEL, DAVID SIEGEL, and LEE SIEGEL, <br><br> *Plaintiffs*, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, HARAKAT AL-MUQAWAMA AL-ISLAMIYA A/K/A/ HAMAS, BINANCE HOLDINGS LIMITED, D/B/A BINANCE.COM, BAM MANAGEMENT US HOLDINGS, INC., BAM TRADING SERVICES INC. D/B/A BINANCE.US, CHANGPENG ZHAO <br><br> *Defendants*. | Civil Action No. <u>1:24-cv-03365-CJN</u> <br><br> **DECLARATION OF ROGER BOUTROS IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR ALTERNATE SERVICE OF PROCESS** |

I, Roger Boutros, hereby declare as follows:

1.     I am an attorney admitted to practice in Lebanon. I am currently in good standing in all jurisdictions.

**I.     Summary of Qualifications**

2.     I received my undergraduate degree in baccalaureate from Freres Mont La Salle in 1988. I subsequently received my Master 2 from Sagesse University Faculty of Law and have been admitted to the Lebanese Bar since 1998.

3.     I am currently the owner and managing partner of my law firm R.B LEGAL CONSULTANCY AND PARTNERS. I am admitted to practice in Lebanon and serve

as an international and local legal consultant in Lebanon, Qatar, Saudi Arabia, and the United Arab Emirates. I specialize in international arbitration corporate law across the Middle East, Europe, and the United States.

4.    My additional experience and qualifications are contained in my Curriculum Vitae, attached as **Exhibit A** to my declaration.

5.    In reaching the opinions and conclusions described in greater detail below, I relied upon my education, training, and experience, as well as the additional research I performed on the issues of service of process in the United Arab Emirates.

## II.    Scope of Assignment

6.    My assignment was twofold:

a.    First, I was asked by counsel for the Plaintiffs in this action to review and respond to the Declaration of Susie Abdel-Nabi.

b.    Second, I was further asked to assess the legality of serving a defendant with a Non Fungible Token (NFT) under the laws of the United Arab Emirates and in the Emirate of Dubai.

## III.    Summary of My Opinions

### A.    Response to the Declaration of Susie Abdel-Nabi:

7.    Service of process on Mr. Zhao via mail and leaving the Summons and Complaint at the front desk of his residence is not offensive to the laws of the United Arab Emirates.

8.    Similarly, service of process via X.com (formerly Twitter) also does not offend the laws of the United Arab Emirates.

**B. Legality of Serving a Defendant with an NFT:**

9.  It is my opinion to a reasonable degree of certainty within my field that serving a defendant with an NFT in the United Arab Emirates does not violate the laws of the UAE or Dubai.

## IV.    My Opinions

**A. Traditional Methods of Service are Generally Unavailable to Foreign Litigants in the UAE**

10. In many countries, international service of process is governed by the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (hereinafter "Hague Convention"). However, as Ms. Abdel-Nabi acknowledges in her declaration, the United Arab Emirates is not a signatory to the Hague Convention.[1]

11. Similarly, though the UAE and US are signatories to the Treaty between the Government of the United States of America and the Government of the United Arab Emirates on Mutual Legal Assistance in Criminal Matters, this treaty is limited to *criminal* matters and so does not apply in the present civil case.[2]

12. Because the UAE is not a signatory to the Hague Convention, it has substantially limited the typical tools foreign litigants have in civil litigation.

13. In considering the next step for serving a foreign defendant, the next option would generally be to consider letters rogatory. However, based on my knowledge, research, and

---

[1] *See* HCCH, HCCH Members, https://www.hcch.net/en/states/hcch-members (last accessed Jan. 13, 2026).
[2] *See Treaty between the Government of the United States of America and the Government of the United Arab Emirates on Mutual Legal Assistance in Criminal Matters*, https://www.congress.gov/treaty-document/119th-congress/1/all-info (last accessed Jan. 13, 2026).

experience, UAE courts rarely, if ever, grant assistance to foreign proceedings through Letters Rogatory.

   a.    Letters Rogatory in the UAE involve multiple bureaucratic layers, including the foreign litigant's home country authorities, the UAE Ministry of Foreign Affairs, the relevant embassy or consulate, and finally the UAE courts. Each step can take weeks or months, meaning the entire process often stretches 6–12 months or longer, depending on case complexity and the responsiveness of the authorities involved.

   b.    Even if submitted correctly, execution is entirely discretionary. Additionally, for civil and commercial matters, many legal practitioners and process-service guides report that Letters Rogatory are effectively not accepted in practice. Even when technically allowed, courts may delay, limit, or reject execution, making it an uncertain method of serving documents.

   c.    The combination of long delays, uncertain outcomes, and extensive bureaucratic requirements makes Letters Rogatory a high-risk and costly option for foreign litigants. Time, translation and legalization fees, and administrative costs can accumulate quickly, which counsels against the use of this method.

**B. What UAE Law Requires for Adequate Service**

14. UAE Civil Procedure Law treats the subject of the serving process, as per the following laws and methods.

   a.    Under the Federal Decree-Law No. 42 of 2022 ("Civil Procedure Law"), the service of process ("service of notice") is regulated by the following key articles:

      i.    Article 6 states the below:

1.     Initiation of Service: Process can be served at the request of a litigant, by court order, or via the Case Management Office, either by an official process server or other methods allowed under the Code.

2.     Court Authorization: The court or supervising authority may permit the plaintiff or their lawyer to serve documents using authorized alternative methods.

3.     Private Service Providers: Service can be carried out by approved private companies or firms, regulated by the Federal Judicial Council or local judicial authority; such individuals are considered official process servers.

4.     Statewide Validity: Service of process is valid anywhere in the UAE, regardless of territorial jurisdiction.

ii.     Article 9: Lists permitted methods of service, including: personal delivery; service at residence or workplace; service to a co-resident/colleague if the defendant isn't present; and — important for modern use — "audio or video recorded calls, SMS, e-mail, fax or any other modern means of communication".

iii.     Article 11(2): For cases where the person to be served is abroad (outside UAE jurisdiction), the service is considered effective 21 working days after the notice is sent via the Ministry of Foreign Affairs.

b.     Electronic Service (Email / Digital Notice)

i.     Modern UAE courts, particularly DIFC and ADGM, allow electronic service as an alternative to personal service, but only with prior court permission.

ii.      Electronic service can include: email to a verified address, notification via court

portals, or other secure digital methods approved by the judge.

iii.     Like publication, electronic service is considered informal and valid only if the

court is satisfied

that the defendant actually received notice.

c.     The Civil Procedure Law is silent on service of process of foreign proceedings.

## C. Legality of Serving a Defendant with an NFT:

15.     I examined UAE law to determine whether serving a defendant using an NFT would

violate any laws within the United Arab Emirates. In my expert opinion, it would not.

16.     In addition to relying on my own knowledge and experience, I also reviewed Ms.

Abdel-Nabi's declaration and conducted additional research. Specifically, I reviewed

Federal Decree-Law No. 42 of 2022 (Civil Procedure Law), which governs service of

process in civil and commercial matters in the UAE, and the relevant provisions

regarding alternative service under Article 9 and the procedures of the Dubai

International Financial Centre Courts (DIFC) and Abu Dhabi Global Market Courts

(ADGM) with respect to the blockchain.

17.     Under the Civil Procedure Law:

a.     Service of process is limited to methods expressly authorized by the Code, including

personal delivery, service at the defendant's residence or workplace, service to co-

residents or colleagues if the defendant is unavailable, electronic communications

directly linked to the defendant (email, SMS, calls, fax), posting at the residence,

publication in newspapers, or posting on the court's website if all other methods fail.

b. While NFTs are not currently specified amongst the authorized means of service, the Civil Procedure Law authorizes service by "other modern means of communication." Service by NFT would be consistent with this provision. Service by NFT would also be consistent with the Civil Procedure Law's emphasis that service must be verifiable, reach the intended recipient, and be documented in a manner recognized by the court, jurisprudence is increasingly exploring innovative solutions in situations where traditional methods prove inefficient

c. Although UAE courts have not yet formally recognized blockchain assets, NFTs, or crypto wallets as valid methods of delivering legal notice, and no statutory provision currently allows them as a substitute for prescribed methods, emerging judicial practice may consider such technologies as alternative means when conventional service methods fail to ensure effective notice.

d. Nothing in the Civil Procedure Law prohibits service by NFT or the blockchain.

18. With respect to "other modern means" of service consistent with the Civil Procedure Law, based on my professional experience, knowledge, and research conducted, this likely includes use of the blockchain given that the UAE in general, and UAE courts have embraced the blockchain in court procedures in recent years:

a. In recent years, the United Arab Emirates has been named the "Crypto Capital of the World" by publications around the world, including the Wall Street Journal, Gulf News, CNN, and CNBC. [3]

---

[3] See *Nikhil Lohade, Dubai Aims to Be a City Built on Blockchain*, WALL STREET JOURNAL (2017), https://www.wsj.com/articles/dubai-aims-to-be-a-city-built-on-blockchain-1493086080?gaa_at=eafs&gaa_n=AWEtsqdkIz5NjQvwa2OAs6nvy-kKtgeZ44pFBMuxcVb44V0F4wJwFEH-DUYAMFlorIU%3D&gaa_ts=69616fbe&gaa_sig=X63R9esrCimQDwkrrIgbTnBjZVCOaukCH

b. The DIFC (Dubai International Financial Centre) Courts have publicly embraced blockchain/"distributed ledger" technology for certain judicial-administrative services. For example, as of 2025 they launched a "Notary Service" under which notarized documents are logged using blockchain to guarantee integrity and timestamp.[4]

c. In parallel, the ADGM Courts (Abu Dhabi Global Market Courts) have announced using blockchain to publish and manage commercial-judgment enforcement, with the aim of facilitating global enforcement and verification.[5]

d. The DIFC Courts are taking active steps to incorporate blockchain technology into the court system. For example, in December 2025, the Dubai International Financial Centre

gNJVM0Wu_sLfcUd6U58bzwCF (last accessed Jan. 13, 2026); Angus Berwick, *Crypto's Biggest Players Toop to Abu Dhabi, Looking for a Financial Boost*, WALL STREET JOURNAL (2025), https://www.wsj.com/finance/currencies/crypto-industry-persian-gulf-states-22a0d3a1?gaa_at=eafs&gaa_n=AWEtsqdqm65BMxczDOcAfsGzWMftPmw6Iivg7k3aG5_tS9uNSo7z1dmIyjjS_q7oC1k%3D&gaa_ts=69616fbe&gaa_sig=akoM2WqYKTzMou-b38JIwGVkyEpfgHAP2t6C24tBO6fSSTuu6InlsR7yu (Jan. 13, 2025); Rebecca Cairns and Yara Enany, *Why the UAE Has Set Its Sights on Digital Finance*, CNN (2025) https://www.cnn.com/2025/12/18/business/uae-set-sights-digital-finance-spc (last accessed Jan. 13, 2026); Dan Murphy, *The UAE is the 'Second Crypto Capital' of the World*, CNBC (2026), HTTPS://WWW.CNBC.COM/VIDEO/2025/12/10/THE-UAE-IS-THE-SECOND-CRYPTO-CAPITAL-OF-THE-WORLD-SAYS-COINBASE-CEO.HTML#:~:TEXT=ACCESS%20MIDDLE%20EAST-,THE%20UAE%20IS%20THE%20'SECOND%20CRYPTO%20CAPITAL%20OF%20THE%20WORLD,AND%20THE%20OUTLOOK%20FOR%202026 (last accessed Jan. 13. 2026); Justin Varghese, *New Crypto Capital of Mideast? UAE Sees $34 Billion Boom in Crypto Use*, GULF NEWS (2025), https://gulfnews.com/your-money/cryptocurrency/new-crypto-capital-of-mideast-uae-sees-34-billion-boom-in-crypto-use-1.500189413 (last accessed Jan. 13, 2026); *see also* Maroun Abou Harb, *Dubai: The Rising Cryptocurrency Capital of the World*, BSA LAW (2025) https://www.bsalaw.com/insight/dubai-the-rising-cryptocurrency-capital-of-the-world/ (last accessed Jan. 13, 2026).

[4] DIFC Courts, *DIFC Courts Launches New Mediation Service Centre and Notary Service to Expand Support for UAE Businesses and Residents*, https://www.difccourts.ae/media-centre/newsroom/difc-courts-launches-new-mediation-service-centre-and-notary-service-expand-support-uae-businesses-and-residents (last accessed Jan. 13, 2026).

[5] *See* ADGM, *ADGM Courts Put Justice on the Blockchain* (2022), https://www.adgm.com/media/announcements/adgm-courts-put-justice-on-the-blockchain (last accessed Jan. 13, 2026).

(DFIC) announced it would be opening "specialised services for complex cases, with digital custodian and blockchain intelligence capabilities being offered via third party service providers, as part of initiatives under the newly launched DIFC Courts Growth Strategy (2026–2030)."

19.   The judicial environment in the UAE is therefore evolving: digital assets (cryptocurrency, NFTs, tokens), as well as blockchain technology are being legally recognized in a a growing number of contexts.

20.   In addition, the UAE government has embraced blockchain technology throughout its government as "a shared immutable real-time ledger for recording the history of financial transactions, contracts, physical assets, supply chain info, etc." because it "provides a permissioned network with known identities" to record the transmission of information.[6]

21.   Moreover, since the UAE Civil Procedure Law does not expressly list service of process via Non-Fungible Tokens (NFTs) as one of the recognized methods of judicial notification, the law likewise does not prohibit it. The statutory framework remains silent on this specific digital method but does authorize "modern method[s]" of communication which is consistent with NFTs, and the courts may find it acceptable.

22.   Therefore, although NFT service is not yet an expressly identified method under the Civil Procedure Law, it is not offensive to UAE law. To the contrary, blockchain technology is consistent with the adoption of blockchain technology by the UAE government and court system.

---

[6] UAE Telecommunications & Digital Gov't Reg. Auth., *Blockchain in the UAE Government*, https://u.ae/en/about-the-uae/digital-uae/digital-technology/blockchain-in-the-uae-government (last accessed Jan. 13, 2026).

**D. Response to the Declaration of Susie Abdel-Nabi:**

23.     I disagree with Ms. Abdel-Nabi that service of process via X.com (formerly Twitter) would offend the laws of the UAE.

24.     Moreover, I have reviewed Mr. Zhao's own X profile and found numerous instances where he makes negative statements about others. Surely, if Ms. Adbel-Nabi's interpretation of the UAE's laws were correct, Mr. Zhao himself would have subjected himself to legal liability for his statements.

25.     Moreover, Mr. Zhao is a frequent user of Twitter, and thus tweeting at him would provide a minimally invasive way to ensure he receives notice of the lawsuit, especially given the other service attempts Plaintiffs have already made.

26.     Indeed, Mr. Zhao tweeted about the lawsuit on his own account already, evidencing (1) that he certainly is aware of the proceedings but refuses to participate in them, and (2) that sending him a link to the Summons and Complaint will not offend the laws of the UAE, because Mr. Zhao himself already posted to all of his followers about the lawsuit.

27.     Plaintiffs' proposed method of serving Mr. Zhao using an NFT similarly would not offend the UAE's criminal laws, specifically UAE Federal Decree-Law No. 31/2021 Articles 425–426. Service through an NFT would transmit the Summons and Complaint to Mr. Zhao's cryptocurrency wallet, and while the transaction would be publicly recorded on the blockchain, the contents would not be public. In other words, service through an NFT would private ensuring that there would be no violation of the UAE laws on harassment, defamation and privacy. However, as stated above, Mr. Zhao has already acknowledged the existence of the Complaint on his public X.com account, apprising his millions of Twitters of the lawsuit anyway.

I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of January in 2026, Lebanon.

_____
Roger Boutros