## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIAT ATZILI, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, HARAKAT AL-MUQAWAMA AL-ISLAMIYA A/K/A HAMAS, BINANCE HOLDINGS LIMITED, D/B/A BINANCE.COM, BAM MANAGEMENT US HOLDINGS, INC., BAM TRADING SERVICES INC. D/B/A BINANCE.US, AND CHANGPENG ZHAO, <br><br> *Defendants*. | Civil Action No.: 1:24-cv-03365-CJN |

## DEFENDANT CHANGPENG ZHAO'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' AMENDED MOTION TO SERVE DEFENDANT ZHAO <u>PURSUANT TO FED. R. CIV. P. 4(f)(3)</u>

**Table of Contents**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 2

    A. International Service under Rule 4(f) ........................................................................ 2

    B. This Court Should Not Permit Alternative Service under Rule 4(f)(3) ..................... 3

        1. Plaintiffs Failed to Attempt Service under Rule 4(f)(2) before Returning to Court. ...................................................................................................................... 4

        2. Plaintiffs' Argument that Service via Rule 4(f)(2) is Difficult and Time-Consuming Does Not Justify Alternative Service Under Rule 4(f)(3) ....................... 6

        3. Plaintiffs Fail to Demonstrate that Service via NFT Would Minimize Offense to UAE Law ................................................................................................................. 8

        4. Plaintiffs Fail to Demonstrate that Service via NFT Comports with Constitutional Notions of Due Process ...................................................................... 11

III. CONCLUSION ............................................................................................................... 14

## Table of Authorities

**Cases**

*Bandyopadhyay v. Defendant 1*, No. 22-cv-22907, 2022 WL 17176849 (S.D. Fla. Nov. 23, 2022) ............................................................................................................................................. 13

*Bowen v. Li*, No. 23-cv-20399, 2023 WL 2346292 (S.D. Fla. Mar. 3, 2023) ................................ 13

*Cipherblade, LLC v. Cipherblade, LLC*, No. 3:23-cv-00238, 2024 WL 69164 (D. Ala. Jan. 5, 2024) ................................................................................................................................... 13

*Del Raine v. Carlson*, 826 F.2d 698 (7th Cir. 1987) ..................................................................... 2

*Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74 (D.C. Cir. 2014) ........................................................................................................................... 3, 9, 13

*Godson v. John Hopkins Medicine*, No. 23-3824, 2024 WL 2208196 (D.D.C. May 15, 2024)... 12

*Halvorssen v. Simpson*, 328 F.R.D. 30 (E.D.N.Y. 2018) ............................................................... 8

*Henning v. Arya*, No. 2:14-cv-00979, 2016 WL 4055641 (D. Nev. July 26, 2016) ...................... 7

*Heredia v. MTK Global Sports Mgmt., LLC*, No. 5:20-cv-02618, 2024 WL 3740104 (C.D. Cal. July 12, 2024) ............................................................................................................... 7

*Isaac v. Defendant 1*, No. 25-1325, 2025 WL 3771276 (D.N.J. Dec. 30, 2025) .......................... 13

*Jones Lang LaSalle Americas, Inc. v. Nat'l Lab. Rels. Bd.,* No. 24-1079, 2025 WL 516944 (D.C. Cir. Feb. 18, 2025) ........................................................................................................... 12

*Karroum v. Special Equipment Supplies, LLC*, No. 2:22-cv-00504, 2022 WL 18278621 (C.D. Cal. Oct. 19, 2022) .................................................................................................................. 4

*Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681 (E.D.N.Y. 2018) ......................................... 7

*Lagayan v. Odeh*, No. 15-CV-01953, 2016 WL 872228 (D.D.C. Mar. 1, 2016) .......................... 9

*Madu Edozie & Madu v. Socketworks Ltd. Nigeria*, 265 F.R.D. 106 (S.D.N.Y. 2010) ................. 8

*Mann v. Castiel*, 681 F.3d 368 (D.C. Cir. 2012) ............................................................................ 2

*Moriarity v. Hashemite Kingdom of Jordan*, No. 18-cv-2649, 2023 WL 5748566 (D.D.C. Sept. 6, 2023) ................................................................................................................................... 12

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ................................................ 11

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987) ......................................... 3, 13

*Orsi v. Falah*, No. 11-10451, 2012 WL 4469120 (D. Mass. Sept. 25, 2012) ................................. 8

*Phillips on behalf of Remus Enterprises 1, LLC v. Nasi*, No. 25-200, 2025 WL 1328315 (D.D.C. May 6, 2025) ............................................................................................................................. 12

*Pliteq, Inc. v. Mostafa*, No. 23-CV-24868, 2024 WL 3070171 (S.D. Fla. June 20, 2024) ............. 7

*Polansky v. Defendant 1*, No. 23-21852, 2023 WL 5951838 (S.D. Fla. Aug. 31, 2023) .............. 13

*S.E.C. v. Nevatia*, No. 14-cv-05273, 2015 WL 6912006 (N.D. Cal. Oct. 19, 2015) ...................... 7

*Schneider v. Kissinger*, 412 F.3d 190 (D.C. Cir. 2005) ................................................................. 12

*Smallwood v. Allied Pickfords, LLC*, No. 08cv2196, 2009 WL 3247180 (S.D. Cal. Sept. 29, 2009) ............................................................................................................................................ 4

*Spencer v. Caracal Int'l, LLC*, No. 2:21-cv-00005, 2021 WL 2073745 (M.D. Tenn. May 24, 2021) ............................................................................................................................................ 7

*Stallard v. Goldman Sachs Group, Inc.*, No. 20-2703, 2022 WL 59395 (D.D.C. Jan. 6, 2022) ..... 5

*Strange v. Islamic Republic of Iran*, No. 14-cv-435, 2018 WL 11409987 (D.D.C. Aug. 24, 2018) 6

*Zavadovsky v. Rabl*, No. 24-1997, 2025 WL 2466024 (D.D.C. Aug. 27, 2025) ............................ 6

**Rules**

Fed. R. Civ. P. 4(f)(1) ....................................................................................................................... 3

Fed. R. Civ. P. 4(f)(2) ............................................................................................................. passim

Fed. R. Civ. P. 4(f)(3) ............................................................................................................. passim

Red. R. Civ. P. 4(f) .......................................................................................................... 3, 6, 13

**Other Authorities**

Julia Califano, "What Is a Crypto Wallet Address?" SoFi (Oct. 27, 2025) .................................. 12

v

I.      **INTRODUCTION**

This Court's September 22, 2025 Order (ECF No. 79) ("**Order**") was clear. It directed Plaintiffs to attempt service on Defendant Changpeng Zhao ("**Mr. Zhao**") through the traditional international methods outlined in Rule 4(f)(2) of the Federal Rules of Civil Procedure ("**Rules**") and to return to the Court for relief under Rule 4(f)(3) only "[i]n the event those efforts also fail." Order at 5. But Plaintiffs did not attempt service under Rule 4(f)(2). They did not initiate the letters rogatory process. They did not submit a diplomatic request. They did not retain UAE counsel to begin the court-driven service procedure required under UAE law. Instead, they researched service options and returned to Court seeking permission to bypass Rule 4(f)(2) altogether because they insist that traditional international service may be too difficult or time-consuming.

Rule 4(f)(3) does not permit litigants to disregard Rule 4(f)(2) because international service may be slower or more burdensome than traditional domestic service. This Court already made clear that prior service efforts matter in deciding whether alternative service is appropriate here. Order at 3–5. Plaintiffs made none. Mr. Zhao is not evading service. His residence is known. The mechanisms contemplated by Rule 4(f)(2), therefore, remain available. Under these circumstances, authorizing service by airdropping a non-fungible token ("**NFT**") into a cryptocurrency wallet— as Plaintiffs seek to do through their amended motion ("**Motion**" or "**Mot**.")—would thus not be an exercise of discretion; it would be a departure from both Rule 4's structure and this Court's directive.

The Motion independently fails because Plaintiffs cannot show that NFT service would minimize offense to UAE law, as is required under Rule 4(f)(3). Plaintiffs' declarant, Mr. Roger Boutros, argues that NFT service must be permissible because UAE law does not expressly prohibit it. That is not the test. As Mr. Zhao's UAE law declarant (a UAE-registered legal consultant with 23 years of litigation experience practicing in the UAE), Ms. Susie Abdel-Nabi,

1

explains, service in the UAE is conducted through the courts and not by private litigants acting unilaterally. Any method that bypasses that court-controlled process, whether traditional or technological, is inconsistent with the structure of UAE law. Moreover, NFT service has never been used in the UAE and is not recognized as an approved means of effecting service, even if undertaken through a UAE court.

Plaintiffs also fail to establish that NFT service satisfies constitutional due process. They offer no competent evidence establishing that the identified cryptocurrency wallet belongs to Mr. Zhao, that he controls it, or that he would receive or review an NFT airdrop. Nor have they shown that NFT service is reasonably calculated to provide notice, particularly when established and reliable methods remain untried.

Service of process is not a technicality. It governs the Court's exercise of jurisdiction and protects fundamental due process rights. If Plaintiffs were concerned about delay, they could have initiated the letters rogatory process immediately after this Court's September 22, 2025 Order. They did not. Plaintiffs should not now be permitted to circumvent Rule 4(f)(2)—and this Court's Order—by seeking authorization for an unprecedented method of service.

For these reasons, and those set forth below and in the accompanying declaration of Ms. Abdel-Nabi, the Motion should be denied.

**II.     ARGUMENT**

    **A.     International Service under Rule 4(f)**

Proper service of process "is not some mindless technicality." *Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987). It is a prerequisite to the Court's exercise of personal jurisdiction and to the protection of due process. A federal court may assert personal jurisdiction only if "the procedural requirements of effective service of process are satisfied." *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (internal citation omitted); *see also Omni Capital Int'l, Ltd. v. Rudolf*

*Wolff & Co.*, 484 U.S. 97, 104 (1987). When a defendant resides abroad, compliance with Rule 4 requires adherence to foreign law and respect for principles of international comity.

As this Court noted in its Order, Rule 4(f) provides three avenues for serving an individual in a foreign country. Order at 2–3. Rule 4(f)(1) permits service "'by any internationally agreed means of service that is reasonably calculated to give notice,' such as those authorized by the Hague Convention." *Id.* Rule 4(f)(2) applies when no internationally agreed means exists or when an agreement does not specify other means and permits service "by a method that is reasonably calculated to give notice" as prescribed by the foreign country's law, as directed in response to a letter rogatory, or, unless prohibited by foreign law, by personal delivery or clerk-addressed mail requiring a signed receipt. *Id.* Rule 4(f)(3), by contrast, permits service "by other means not prohibited by international agreement, as the court orders," but only where the proposed method is consistent with due process and minimizes offense to the foreign sovereign's law. *Id.*; *see also Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 81–84 (D.C. Cir. 2014).

**B.      This Court Should Not Permit Alternative Service under Rule 4(f)(3)**

When Plaintiffs previously sought alternative service, this Court denied the request because Plaintiffs had not made reasonable efforts under Rule 4(f)(2). Order at 3–4. This time, the failure is more direct. The Court instructed Plaintiffs to attempt service under Rule 4(f)(2) and return only if those efforts failed. Order at 5. Plaintiffs did not attempt service. They instead returned to Court requesting authorization solely based on Rule 4(f)(3) to serve Mr. Zhao through an NFT.[1] That is not compliance with the Court's directive, and it does not justify relief under Rule 4(f)(3).

---

[1] While Plaintiffs' Motion solely requests authorization to serve Mr. Zhao via NFT, the Declaration of Roger Boutros ("**Boutros Decl.**") also responds to the First Declaration of Susie Abdel-Nabi ("**First Abdel-Nabi Decl.**") regarding (1) the validity of serving Mr. Zhao via mail and leaving the Summons and Complaint at the front desk of his residence; and (2) the validity of

1. <u>Plaintiffs Failed to Attempt Service under Rule 4(f)(2) before Returning to Court</u>

Rule 4(f)(2) permits service (A) as prescribed by the foreign country's law, (B) as directed in response to a letter rogatory or letter of request, or (C), unless prohibited by foreign law, by personal delivery or clerk-addressed mail. Fed. R. Civ. P. 4(f)(2)(A)–(C). In the UAE, service is a court-driven process. A private plaintiff cannot unilaterally effect service. *See* Second Declaration of Ms. Susie Abdel-Nabi ("**Second Abdel-Nabi Decl.**") ¶¶ 24–25; *see also Karroum v. Special Equipment Supplies, LLC*, No. 2:22-cv-00504, 2022 WL 18278621, at *1 (C.D. Cal. Oct. 19, 2022) (confirming service of process in the UAE is a "court driven process") (citation omitted); *Smallwood v. Allied Pickfords, LLC*, No. 08cv2196, 2009 WL 3247180, at *13 (S.D. Cal. Sept. 29, 2009) ("Plaintiff failed to comply with Article 5 of the UAE Civil Procedure Law when he used a non-appointed private courier"). Thus, subsection (A) would require initiating the UAE court process. Subsection (B) would require formally requesting service through letters rogatory. And subsection (C) does not assist Plaintiffs here because personal mail service is inconsistent with UAE law. Accordingly, compliance with Rule 4(f)(2) here required initiating the UAE court process or invoking letters rogatory.

Plaintiffs did neither. Instead, the Motion describes the following steps that Plaintiffs took in response to the Order: (i) they spoke to three U.S.-based process servers; (ii) they reviewed (but did not initiate) the relevant letters rogatory process; (iii) they reviewed Mutual Legal Assistance Treaties, notwithstanding that these treaties are limited to criminal matters; and (iv) they proposed service by NFT. *See* Mot. at 1–2. Plaintiffs characterize these actions as having "investigated"

---

service via X.com (formerly Twitter). *See, e.g.*, Boutros Decl. ¶¶ 7–8. Mr. Zhao considers these arguments moot given the Court's prior Order rejecting service via these methods and given that Plaintiffs are not currently requesting to serve Mr. Zhao in these ways. Should Plaintiffs make another request under Rule 4(f)(3) to serve Mr. Zhao via these methods, Mr. Zhao reserves the right to rebut these arguments.

4

service under Rule 4(f)(2). *Id.* at 1. But the Court did not instruct Plaintiffs to investigate service; it instructed them to attempt it. And most of the items they "investigated" have nothing to do with Rule 4(f)(2) service.

Plaintiffs' reliance on their discussions with private process servers only underscores the deficiency of their efforts. Because service in the UAE cannot be effected unilaterally, contacting private process servers did not advance service under Rule 4(f)(2). That is particularly true here, where the process servers Plaintiffs consulted are U.S.-based entities with no apparent role in the UAE's court-directed service process. *See* ECF No. 90-8, Declaration of Celeste Ingalls ¶ 1 (noting that Alan H. Crowe & Associates is a U.S.-based business); ECF No. 90-9, Declaration of Nelson Tucker ¶¶ 1–2 (noting that Process Service Network, LLC is a U.S.-based business); ECF No. 90-2, Declaration of Marlene J. Goldenberg ("**Goldenberg Decl.**") ¶ 5 (describing discussions with Process Server One, which has U.S.-based offices and no UAE office). Nor did Plaintiffs take any of the steps required to initiate valid international service. They did not commence the letters rogatory process, submit a diplomatic request, contact the relevant UAE authorities to initiate court-directed service, or retain qualified Emirati counsel to begin the required procedure. *See* Second Abdel-Nabi Decl. ¶¶ 18–25.

This Court has already made clear that while Rule 4(f)(2) efforts are "not a prerequisite" to Rule 4(f)(3), "prior attempts at service are relevant in deciding whether to exercise the Court's discretion." Order at 3. Plaintiffs made no such attempts here. That principle guided this Court's decision in *Stallard v. Goldman Sachs Group, Inc.*, where the Court denied Rule 4(f)(3) relief because there was "no evidence" that the plaintiff had made any compliant attempt at service before seeking alternative means. No. 20-2703, 2022 WL 59395, at *7–8 (D.D.C. Jan. 6, 2022). The same is true here. Plaintiffs have researched service mechanisms but have not initiated them.

5

Their only prior service effort remains the mail attempt this Court already rejected. *See* Order at 4. Other decisions within this District likewise decline to authorize alternative service where plaintiffs have not first made reasonable efforts under Rule 4(f). *See, e.g., Strange v. Islamic Republic of Iran*, No. 14-cv-435, 2018 WL 11409987, at *3 (D.D.C. Aug. 24, 2018) ("Although the Court agrees with Plaintiffs that there is no strict hierarchy between the methods of service under Rule 4(f), the Court in this case will not exercise its discretion to allow Plaintiffs to resort to tenuous and novel methods of serving the Defendant when they have not first made the modest efforts required to determine whether their previous attempts at service by mail have been effective."); *Zavadovsky v. Rabl*, No. 24-1997, 2025 WL 2466024, at *10 (D.D.C. Aug. 27, 2025) (finding service improper when "Plaintiffs have not made reasonable efforts to serve Austrian Defendants in compliance with Rule 4(f)").

Nothing materially distinguishes this motion from Plaintiffs' prior request, except that this time Plaintiffs were expressly instructed to attempt service under Rule 4(f)(2) before returning to Court. Order at 5. They did not do so, nor do they contend that Mr. Zhao is evading service or that UAE authorities are obstructing service. Instead, Plaintiffs chose not to initiate the traditional and available international mechanisms of service and now seek to bypass them. Rule 4(f)(3) does not permit that result.

For these reasons, Plaintiffs have not met their burden to justify relief under Rule 4(f)(3), and the Motion should be denied.

> 2. <u>Plaintiffs' Argument that Service via Rule 4(f)(2) is Difficult and Time-Consuming Does Not Justify Alternative Service Under Rule 4(f)(3)</u>

Given that Plaintiffs have not actually attempted to serve Mr. Zhao under Rule 4(f)(2), their renewed Motion rests largely on the assertion that those methods are too difficult or too slow. Plaintiffs contend, for example, that letters rogatory "are not available in civil matters" and are

6

rarely executed by UAE courts. Mot. at 2. That is incorrect. Defendant's UAE law declarant, Ms. Abdel-Nabi, explains that letters rogatory via diplomatic channels are in fact the only permitted method for serving process in non-UAE proceedings on a defendant located in the UAE. Second Abdel-Nabi Decl. ¶¶ 18–21. She is unaware of any case in which UAE courts have refused to execute letters rogatory and has confirmed with UAE's Ministry of Justice that foreign service requests—including those arising from U.S. proceedings—are currently being processed. *Id.* ¶¶ 18–19. Nor does she find the process excessively time-consuming. *Id.* ¶ 18.

Even a cursory review of the case law confirms that service under Rule 4(f)(2) on UAE defendants is not hypothetical—it is routinely accomplished. *See, e.g.*, *Pliteq, Inc. v. Mostafa*, No. 23-CV-24868, 2024 WL 3070171, at *14 (S.D. Fla. June 20, 2024) (holding that a UAE defendant had been properly served under Rule 4(f)(2)(A)); *Spencer v. Caracal Int'l, LLC*, No. 2:21-cv-00005, 2021 WL 2073745, at *1 (M.D. Tenn. May 24, 2021) (*Caracal II*) (holding that a UAE defendant could be served under Rule 4(f)(2)(C) by mail care of the UAE Ministry of Justice); *Henning v. Arya*, No. 2:14-cv-00979, 2016 WL 4055641, at *3–4 (D. Nev. July 26, 2016) (holding that a UAE defendant had been properly served under Rule 4(f)(2)(A)); *Heredia v. MTK Global Sports Mgmt., LLC*, No. 5:20-cv-02618, 2024 WL 3740104, at *7–9 (C.D. Cal. July 12, 2024) (holding that a UAE defendant had been properly served under Rule 4(f)(2)(A)); *S.E.C. v. Nevatia*, No. 14-cv-05273, 2015 WL 6912006, at *4 (N.D. Cal. Oct. 19, 2015) (holding that a UAE defendant had been properly served under Rule 4(f)(2)(A)); *Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 715 n.8 (E.D.N.Y. 2018) (holding that a UAE defendant had been properly served under Rule 4(f)(2)(A)).

Nor have courts permitted plaintiffs to bypass Rule 4(f)(2) simply because compliance may be complex or time-consuming. *See e.g.*, *Orsi v. Falah*, No. 11-10451, 2012 WL 4469120, at *2–

7

4 (D. Mass. Sept. 25, 2012) (rejecting allegation that it was too difficult to serve someone in the UAE as "mere conjecture"); *Halvorssen v. Simpson*, 328 F.R.D. 30, 34–35 (E.D.N.Y. 2018) (denying Rule 4(f)(3) motion even where the international service options "may be costly and time consuming"); *Madu Edozie & Madu v. Socketworks Ltd. Nigeria*, 265 F.R.D. 106, 115–17 (S.D.N.Y. 2010) (rejecting argument that judicial intervention is necessary because it would have been futile to try to serve defendants in Ghana and Uganda).

Plaintiffs' timing argument is particularly unpersuasive. Plaintiffs assert that service in the UAE is "time-consuming" and suggest that any process taking longer than a year is unreasonable. Mot. at 1–3, 6, 10. But if Plaintiffs were genuinely concerned about the passage of time, they could have initiated the letters rogatory process when Defendant first raised the issue back in March 2025 (ECF No. 35), or at the very least immediately after the Court's September 22, 2025 Order denying their initial Rule 4(f)(3) motion. They did neither. Instead, between September 24 and November 5, 2025, Plaintiffs contacted U.S.-based process servers (*see* Goldenberg Decl. ¶ 5) and subsequently focused their efforts not on initiating service on Mr. Zhao but, rather, on preparing declarations to explain why service would be difficult—three months before renewing their motion.

Rule 4(f)(3) is not a mechanism for avoiding a process that a party simply prefers not to undertake. Plaintiffs chose not to initiate the available service procedures. They cannot now rely on the time those procedures might require as a justification for bypassing them.

        3.    <u>Plaintiffs Fail to Demonstrate that Service via NFT Would Minimize Offense to UAE Law</u>

Plaintiffs also fail to meet their burden under Rule 4(f)(3) to demonstrate that service via NFT would minimize offense to UAE law. The D.C. Circuit has made clear that Rule 4(f)(3) relief is appropriate only where a plaintiff makes "an earnest effort" to devise a method of service that

8

is consistent with due process and "minimizes offense" to the foreign jurisdiction. *Freedom Watch*, 766 F.3d at 84 (quoting the commentary to Rule 4(f)(3)); *accord Lagayan v. Odeh*, No. 15-CV-01953, 2016 WL 872228, at *1 (D.D.C. Mar. 1, 2016); Order at 4 ("[T]he Advisory Committee Notes to Rule 4(f)(3) explain that 'an earnest effort should be made to devise a method of communication that is consistent with due process and *minimizes offense to foreign law*.' (quoting the commentary to Rule 4(f)(3)) (emphasis added).

Plaintiffs do not dispute this standard. *See* Mot. at 4. Instead, their argument reduces to two propositions: (i) service via NFT cannot offend UAE law because the law does not expressly prohibit it; and (ii) because the UAE has embraced blockchain technology in other contexts, its courts must therefore tolerate NFT-based service. Mot. at 4–5. Neither proposition satisfies their burden.

*First*, NFT service would bypass the UAE courts entirely. Under UAE law, service is court-controlled to ensure proper notice. *See* Second Abdel-Nabi Decl. ¶¶ 21–27, 29. Any attempt to serve Mr. Zhao without routing the request through the UAE courts—whether by NFT or otherwise—contravenes that structure. That defect alone defeats Plaintiffs' "minimize offense" showing. UAE law expressly provides that foreign process must proceed through diplomatic channels via letters rogatory, which the Ministry of Justice regularly processes. *Id.* at ¶ 19. Plaintiffs' declarant Mr. Boutros (a Lebanese attorney who does not appear to be registered as a legal consultant in Dubai, *see* Second Abdel-Nabi Decl. ¶ 14) does not meaningfully address this structural requirement; instead, he focuses narrowly on whether NFT delivery is technologically possible. *See* Boutros Decl. ¶¶ 15–19. The relevant question, however, is not technological possibility—it is legal propriety under UAE law. Notably, in conducting this analysis, Mr. Boutros also erroneously relied on rules applicable only to the "offshore" courts of two financial free zones

9

located in the UAE. *See* Boutros Decl. ¶ 14(b). As explained by Ms. Abdel-Nabi, these rules do not apply here because Mr. Zhao resides within the jurisdiction of the "onshore" UAE courts. *See* Second Abdel-Nabi Decl. ¶ 13.

**Second**, even assuming court authorization, service via NFT is not a recognized method of service in the UAE. Both Defendant and Plaintiffs' declarants on UAE law agree that UAE courts have never approved service through NFT. *See* Second Abdel-Nabi Decl. ¶ 31; Boutros Decl. ¶ 17(c). Article 9(a) of the Civil Procedure Law identifies the permissible electronic methods of service, including recorded calls, SMS, email, fax, and other means of modern technology provided for in the law or agreed upon by the parties. *See* Second Abdel-Nabi Decl. ¶ 32. Plaintiffs contend that NFTs fall within the category of "other means of modern technology." But Ms. Abdel-Nabi explains this language refers to established communication platforms used within the UAE legal system, not to digital assets. *Id.* ¶ 33. Indeed, an NFT is not a communication tool; it is a blockchain-based asset. Interpreting Article 9(a) to encompass NFT service would therefore not apply existing UAE law but expand it beyond its recognized scope.

**Third**, Plaintiffs' reliance on the UAE's broader embrace of blockchain technology is misplaced. Mr. Boutros does not identify a single UAE court that has approved service via NFT. To the contrary, he acknowledges that UAE courts have not formally recognized NFTs, crypto wallets, or blockchain assets as valid methods of delivering legal notice. Boutros Decl. ¶ 17(c). Instead, Plaintiffs point to the UAE's regulatory adoption of blockchain technologies in certain commercial contexts. But regulatory experimentation with digital assets does not equate to judicial authorization of NFT-based service of process. As Ms. Abdel-Nabi explains, the references to blockchain innovation concern offshore regulatory frameworks that have no bearing on service of process here—and even those frameworks do not authorize NFT service. Second Abdel-Nabi Decl.

10

¶¶ 34–35. Technological openness in commerce does not translate into procedural innovation in judicial service.

**Fourth**, Mr. Zhao's familiarity with blockchain technology is irrelevant. Service is not tailored to a defendant's profession or technological sophistication. As Ms. Abdel-Nabi explains, service in the UAE is conducted through standardized, legally recognized methods "regardless of the identity of the party being served and without reference to their personal knowledge." *Id.* ¶ 36. Plaintiffs' proposal would single out Mr. Zhao for an untested method of service based on his reputation, a concept foreign to UAE procedural law.

Taken together, Plaintiffs' showing falls far short of the "earnest effort" required to minimize offense to UAE law. NFT service would circumvent the UAE courts' authority over service, disregard the established letters rogatory method for foreign proceedings, and introduce a method never before recognized by UAE courts. *See* Second Abdel-Nabi Decl. ¶ 37. Rule 4(f)(3) does not authorize courts to risk diplomatic friction by approving an experimental method—particularly where Plaintiffs have not even attempted the procedures UAE law prescribes.

Accordingly, Plaintiffs' request for alternative service under Rule 4(f)(3) should be denied.

4. <u>Plaintiffs Fail to Demonstrate that Service via NFT Comports with Constitutional Notions of Due Process</u>

Plaintiffs also fail to demonstrate that service via NFT satisfies constitutional due process. Plaintiffs bear the burden of demonstrating that the proposed method of service is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Plaintiffs have not done so here.

Service via NFT is not reasonably calculated to provide effective notice because Plaintiffs have not established that the cryptocurrency wallet they identified actually belongs to Mr. Zhao or

11

that he uses it in a manner that would ensure receipt of notice. *See* Goldenberg Decl. ¶ 6(a). Crypto wallet addresses do not disclose the owner's personal identity. As even basic commentary explains, blockchain ledgers are public, but the identity of the wallet holder is not. *See* Julia Califano, "What Is a Crypto Wallet Address?" SoFi (Oct. 27, 2025) available [here](#) (noting that while wallet activity is publicly visible, the owner's personal identity is not revealed absent some voluntary association). Plaintiffs offer no evidence tying the wallet to Mr. Zhao in a way that would satisfy due process.

Plaintiffs argue that service via NFT is "not novel" and "comparable to service via email and website posting." Mot. at 8–9. But the analogy underscores the problem. This Court authorizes email service only after the plaintiff demonstrates diligent efforts at traditional service and shows that the defendant recently used the specific email account. *Phillips on behalf of Remus Enterprises 1, LLC v. Nasi*, No. 25-200, 2025 WL 1328315, at *2 (D.D.C. May 6, 2025); *Godson v. John Hopkins Medicine*, No. 23-3824, 2024 WL 2208196, at *3 (D.D.C. May 15, 2024) (same). Likewise, publication is permitted only when there is some assurance the defendant can reasonably be expected to receive actual notice. *Moriarity v. Hashemite Kingdom of Jordan*, No. 18-cv-2649, 2023 WL 5748566, at *3 (D.D.C. Sept. 6, 2023).

Plaintiffs satisfy neither requirement here. They have not demonstrated that Mr. Zhao owns or regularly monitors the identified wallet.[2] *See id.* at *4 (rejecting publication where the record contained "little to no information" about the defendant's online presence). Nor have they made

---

[2] Because Plaintiffs did not include this information in their initial moving brief, they cannot include it in their reply brief. *See Jones Lang LaSalle Americas, Inc. v. Nat'l Lab. Rels. Bd.,* No. 24-1079, 2025 WL 516944, at *6 (D.C. Cir. Feb. 18, 2025) ("Apart from the problem of sandbagging other parties, we have also explained that issues not raised until the reply brief are forfeited because '[j]udges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.'") (citing *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).

diligent efforts to serve him through the prescribed Rule 4(f)(2) mechanisms. *See Isaac v. Defendant 1*, No. 25-1325, 2025 WL 3771276, at *3 (D.N.J. Dec. 30, 2025) (rejecting NFT service where plaintiff failed to show prior unsuccessful service attempts). On this record, NFT service is speculation, not a method reasonably calculated to provide notice.

Plaintiffs' out-of-circuit NFT cases do not compel a different result. In *Cipherblade, LLC v. Cipherblade, LLC*, the plaintiff had already attempted multiple unconventional methods of service before seeking authorization for NFT service. No. 3:23-cv-00238, 2024 WL 69164, at *1 (D. Ala. Jan. 5, 2024). In the other cases cited by Plaintiffs, the defendants were unidentified actors who allegedly operated through cryptocurrency wallets, and in at least two cases the plaintiffs did not know the defendants' identities. *See Bowen v. Li*, No. 23-cv-20399, 2023 WL 2346292, at *1 (S.D. Fla. Mar. 3, 2023); *Bandyopadhyay v. Defendant 1*, No. 22-cv-22907, 2022 WL 17176849, at *1 (S.D. Fla. Nov. 23, 2022); *Polansky v. Defendant 1*, No. 23-21852, 2023 WL 5951838, at *1 (S.D. Fla. Aug. 31, 2023). That posture bears no resemblance to this case, where Plaintiffs know Mr. Zhao's identity and have already attempted to serve him by mail. Unlike those cases, Plaintiffs here have traditional avenues available. They simply have not used them.

Finally, Plaintiffs' suggestion that Mr. Zhao has "actual notice" of this lawsuit does not cure defective service. Proper service under Rule 4 is not a mere formality. It is a prerequisite to the Court's exercise of personal jurisdiction. "[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant." *Omni Capital*, 484 U.S. at 104. There must also be a valid basis for amenability to service. Notice "cannot by itself validate an otherwise defective service." *Freedom Watch*, 766 F.3d at 81 (citation omitted). Even assuming awareness, that does not relieve Plaintiffs of compliance with Rule 4(f).

13

Because Plaintiffs have not demonstrated that NFT service is reasonably calculated to provide notice under the circumstances here, their Rule 4(f)(3) request fails on due process grounds as well.

## III.   CONCLUSION

Plaintiffs were instructed to attempt Rule 4(f)(2) service. They did not. They have not shown that NFT service minimizes offense to UAE law. And they have not shown that it satisfies due process. Rule 4(f)(3) relief is therefore unwarranted.

Dated: February 20, 2026

Respectfully submitted,

**BAKER HOSTETLER LLP**

By:   /s/ Marco Molina

Marco Molina (admitted *pro hac vice*)
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
mmolina@bakerlaw.com

Teresa Goody Guillén
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.861.1500
Facsimile: 202.861.1783
tgoodyguillén@bakerlaw.com

*Attorneys for Defendant Changpeng Zhao*