**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LIAT ATZILI, et al.<br><br>*Plaintiffs*,<br><br>vs.<br><br>ISLAMIC REPUBLIC OF IRAN, HARAKAT AL-MUQAWAMA AL-ISLAMIYA A/K/A HAMAS, BINANCE HOLDINGS LIMITED, D/B/A BINANCE.COM, BAM MANAGEMENT US HOLDINGS, INC., BAM TRADING SERVICES INC. D/B/A BINANCE.US, AND CHANGPENG ZHAO,<br><br>*Defendants*. | Civil Action No. 1:24-cv-03365-CJN |

**DECLARATION OF SUSIE ABDEL-NABI**

I, Susie Abdel-Nabi, declare as follows:

1. I have been asked by counsel for Changpeng Zhao ("**Defendant**") to give a further independent opinion as to the validity under UAE law of the proposed method of service of proceedings against him by the plaintiffs in this action ("**Plaintiffs**").

I. **QUALIFICATIONS**

2. I am a solicitor of the Senior Courts of England and Wales, and a registered Legal Consultant in Dubai, United Arab Emirates. I am in good standing before the Solicitors Regulation Authority of England and Wales and the Dubai Legal Affairs Department.

3. I studied law at the University of Hertfordshire, graduating with a Bachelor of Laws in 2000, with honors, and the Legal Practice Course at BPP Law School, graduating in 2001. I

completed my training contract between 2003-2005 and qualified as a solicitor in 2005. Since 2005, I have practiced as a litigation solicitor in the United Arab Emirates ("**UAE**").

4.      I am currently a senior partner at the international law firm Clyde & Co LLP and the head of the Middle East Dispute Resolution Group.

5.      My experience and qualifications are summarized in my curriculum vitae, attached as Appendix A to this Declaration.

6.      In formulating my opinions on the issues raised in this case, I have relied on my education, training, and years of professional experience as a legal practitioner in the UAE. I have practiced law in the UAE for a total of over 23 years as a solicitor and UAE Legal Consultant. To clarify, with the exceptions of the Dubai International Financial Centre ("**DIFC**") Court and Abu Dhabi Global Market ("**ADGM**") Court (which I explain below), non-Emirati lawyers such as me do not have rights of audience in UAE Courts. When conducting litigation in the UAE Courts, which we regularly do, we act in a similar way as we would when practicing as a solicitor in England, where there is a "split profession" of solicitors and barristers. Although we instruct a local advocate to appear in the UAE Courts, there are very limited oral advocacy opportunities, as nearly all pleadings are done in writing. Moreover, we work with local advocates in drafting pleadings and, therefore, we maintain a high degree of control of the UAE litigation process. If called as a witness, I could, and would, testify competently thereto.

## II.     SCOPE OF ASSIGNMENT

7.      I am retained by Defendant's counsel at BakerHostetler LLP as a witness with experience working on various legal issues arising under UAE law in connection with the case at bar. Specifically, I am asked to:

      a.      Review and opine on the conclusions of Mr. Boutros in his Declaration of 4 January 2026 ("**Boutros Declaration**"); and

      b.      Opine on whether service of process of a foreign proceeding via NFT would be permissible or would otherwise minimize offense to UAE law.

8. In order to carry out my assignment, I was provided and reviewed Plaintiffs' first Complaint filed November 29th 2024, Plaintiffs' Motion for alternate service filed February 5th 2025, Defendant's Memorandum in Opposition to Plaintiffs' Motion filed March 5th 2025, Plaintiffs' Reply Memorandum filed March 12th 2025, the Court's Order filed September 22nd 2025, Plaintiffs' Amended Motion and Renewed Motion for alternate service filed February 6th 2026, and the Declaration of Roger Boutros dated January 4th 2026. To support this declaration, I relied on different legal sources and decisions under UAE law. Attached as Appendix B is a copy of the UAE Civil Procedure Law referenced in the ensuing Declaration. I also refer to some of my opinions and conclusions in my Declaration dated 5 March 2025 ("**First Declaration**").

### III.   SUMMARY OF OPINIONS

9. Pursuant to the UAE legal system, service must be conducted through the court, and not by the plaintiff directly. When serving foreign proceedings on a UAE-domiciled defendant, the correct and only permissible method of service is to serve via diplomatic channels, requesting that the UAE court serve process on the defendant. This is considered effective and viable.

10. Service by NFT is not permitted under, and would in my opinion be offensive to, UAE law. A plaintiff attempting to serve via NFT runs into the same problem that service should be conducted via the court and not the plaintiff directly. In any event, UAE law (as admitted by

Mr. Boutros) does not permit the use of NFTs as a medium of service. Therefore, the proposed method of service would be completely inconsistent with UAE law, because it relies on a totally different concept (private service, rather than court service) and a technological method which is not permitted in UAE law.

## IV. ANALYSIS

11. By way of background, the ordinary legal regime of the UAE is a civil law regime, as opposed to a common law regime. The law is codified in the various UAE federal laws and laws of individual emirates promulgated from time to time. Previous court judgments may be referred to as persuasive authority, but they are not binding on courts deciding subsequent cases. Service of proceedings is a matter governed by UAE federal law, and the primary law which regulates civil procedure in the UAE is Federal Decree-Law No. 42/2022 (the "**Civil Procedure Law**").

12. The laws of the UAE are written in Arabic and no official English language translation exists. In this declaration, I refer to the English translations of legislation produced by LexisNexis Middle East, which I consider to be a reputable and reliable source of legal materials.

13. For completeness, I should clarify that the UAE contains, effectively, multiple jurisdictions. The UAE is a federal country consisting of seven individual emirates. Each emirate has its own laws, as well as federal laws which are applicable to the entire nation (though as noted above, service is governed by federal legislation, and I do not believe that legal differences between the emirates are pertinent to the issues at hand). There are also two financial free zones – the ADGM, and the DIFC, in Abu Dhabi and Dubai respectively – which maintain their own civil and commercial laws and their own courts, which operate in the English language. The ADGM and DIFC are both common law jurisdictions, which draw heavily on English law for the substantive content of their laws. The ADGM and DIFC courts are referred to as "offshore" courts,

in contradistinction to the "onshore" ordinary civil courts and laws of the emirates. I draw attention to this important distinction, as this is relevant in responding to certain passages in the Boutros Declaration (in particular paragraph 14(b), where Mr. Boutros refers erroneously to the service rules of the DIFC and ADGM). Except where otherwise stated, in this Declaration, I analyze the issues based on the "onshore" civil law of the UAE and the procedures of the "onshore" civil courts, because I understand that Defendant is a resident of the "onshore" UAE and not in the DIFC or ADGM.

14. I am aware that Mr. Boutros has provided a Declaration dated January 4th 2026. I note that Mr. Boutros is a Lebanese lawyer who appears to be based in and admitted to practice in Lebanon. While Lebanon is a civil law jurisdiction, it is a separate country and its laws are different and distinct to those of the UAE. It is not clear to me from the material provided that Mr. Boutros has the requisite experience to opine on UAE law, nor that he is "admitted" as a licensed legal consultant in the UAE. Foreign-qualified lawyers are required to register in the emirate of Dubai and complete 16 mandatory Continuing Legal Professional Development points every year. My colleague has searched the Dubai Legal Affairs Department directory, and it appears that Mr. Boutros is not registered as a legal consultant in Dubai. In contrast, I am a British national, but I have practiced in the UAE for over 23 years, and I am registered as a legal consultant with the Dubai Legal Affairs Department.

### A. Service of foreign proceedings in the UAE

15. I respond in this section to section A, paragraphs 10 – 13 of the Boutros Declaration.

16. Mr. Boutros correctly notes in paragraphs 10 – 12 of his Declaration that the UAE is not a signatory to the Hague Convention, and that there is no legal assistance treaty between the USA and UAE dealing with civil litigation.

17. Therefore, a plaintiff must serve process through diplomatic channels.

18. I do not agree with Mr. Boutros's comments in paragraph 13 of his Declaration about service through diplomatic channels. Mr. Boutros claims that "*UAE courts rarely, if ever, grant assistance to foreign proceedings through Letters Rogatory*", and that "*Letters Rogatory are effectively not accepted in practice*". I do not know what is the basis for making these statements. My practice involves a large amount of international litigation but I have not encountered, and I am not aware of, any case of the UAE courts refusing to execute letters rogatory. I do not consider the process for obtaining and serving letters rogatory through diplomatic channels to be excessively time-consuming in the context of international litigation.

19. In carrying out research for this Declaration, my colleague contacted the UAE Ministry of Justice to confirm whether any alternative methods of service are accepted. The Ministry of Justice confirmed that service of foreign proceedings must proceed exclusively through diplomatic channels and advised that they have recently handled multiple service requests relating to UK and US court proceedings.

20. Therefore, I consider that service by letters rogatory, through diplomatic channels, is a valid and feasible method of serving a defendant which is domiciled in the UAE. Furthermore, that is the <u>only</u> permitted method of serving foreign proceedings on a defendant in the UAE.

21. Attempting to conduct service of proceedings on the plaintiff's own initiative, rather than through the court process, is not permitted in the UAE and is at odds with the way in which service is carried out in the UAE system, as I explained in paragraph 5 of my First Declaration, and in paragraphs 24 to 26 below.

B. **What UAE law requires for adequate service**

22. I address, in this section, section B (paragraph 14) of the Boutros Declaration.

23. The relevant UAE legislation dealing with service of civil proceedings is the Civil Procedure Law.

24. Article 6 is the principal article governing service. Mr. Boutros summarizes the English translation. To expand upon my comments in my First Declaration, in the UAE civil courts, service is the domain of the court. When a claim is filed, the court, not the plaintiff, serves proceedings. A plaintiff cannot unilaterally serve process on a defendant. That would not be considered valid service. The actual service of process is typically delegated to a private company contracted by the court.[1] This explains the role of private service providers referred to in Article 6(3) of the Civil Procedure Law. It is similar to if a US court used FedEx to serve all claims filed with it on the defendants. Article 6(2) permits the plaintiff itself to serve process only when authorized to do so by the court. I am not aware of any cases where this has been done.

25. There is thus a fundamental difference between the UAE system and common law jurisdictions. In common law jurisdictions, it is usually the responsibility of the plaintiff to serve process on the defendant using an approved method. Different common law jurisdictions have different rules on the methods which are deemed valid service. Then, the plaintiff must satisfy the court that it has validly and properly served process on the defendant. This does not arise in the UAE judicial system, where the plaintiff files a claim with the court, and the court then carries out service.

26. Article 9 lists the methods by which the court (or private company engaged by the court) may conduct service. In practice, the court will most often conduct service by email and/or

---

[1] For example, UAE courts have often used Aramex, a UAE-based logistics and courier company, to carry out service and legal notifications.

SMS, where the email address or mobile phone number can be verified. (An individual resident in the UAE will have an email address and mobile phone number linked to their Emirates ID, and a company domiciled in the UAE will typically have an email address and telephone number listed on its trade license.) If these methods are not successful then the court will attempt other methods such as physical delivery.

27. Mr. Boutros also refers in paragraph 14(b) of his Declaration to the DIFC and ADGM courts. This is misleading as the DIFC and ADGM are separate jurisdictions in the UAE, with their own laws (heavily based on English law) and their own English-language, common law courts. The DIFC and ADGM courts have separate rules regarding service, which are irrelevant as I understand that the Defendant is not resident in either jurisdiction. Both permit electronic service, in particular by email, but "*prior court permission*" is not required. (The DIFC Courts do require agreement between the parties for email service.) As to paragraphs 14(b)(ii) and (iii), Article 9 of the Civil Procedure Law sets out the methods of electronic service which the court may employ, which include email, fax, SMS, and audio or video calls.

### C. Legality of serving a defendant with an NFT

28. I understand that Plaintiffs seek leave from the court to serve process on Defendant by airdropping a non-fungible token, or "**NFT**", into a cryptocurrency wallet which it believes is associated with Defendant. In this section, I give my view on whether this is permitted by UAE law, or whether it minimizes offense to UAE law; and express my opinions on section C, paragraphs 15 – 22 of the Boutros Declaration, which endorse this proposal.

29. Firstly, I believe that the entire proposal is misconceived. UAE law does not permit a plaintiff to serve process by itself. As I explain in paragraphs 24 to 26 above, and in my First Declaration, in the UAE the court serves process. The plaintiff does not serve process. Therefore,

the proposed method whereby Plaintiffs would airdrop an NFT containing a link to the case documents to a particular crypto wallet attributed to Defendant would not be valid service permitted by UAE law, because it involves service by Plaintiffs themselves rather than validly through the court. This is totally at odds with the UAE legal system. What medium the Plaintiffs use – whether an NFT or more conventional medium – is therefore irrelevant.

30. Secondly, notwithstanding the fact that service by Plaintiffs is impermissible under UAE law, an NFT would not be a permissible medium of communication.

31. I am not aware of any cases in which the UAE courts have conducted service by means of NFT. I have also conducted research and identified no cases in which the UAE courts have conducted service by means of NFT.

32. If the court served process on Defendant, it would not do so via NFT. Article 9(a) of the Civil Procedure Law lists the methods of communications technology that may be employed, namely: "*Audio or video recorded calls, SMS, e-mail or fax, or any other means of modern technology or another means provided for in this Law and agreed upon by the parties.*"

33. NFTs do not fall within the ambit of Article 9(a). In context, "*means of modern technology*" should be interpreted as meaning technological communications methods. This may, for instance, include applications or web portals developed and used by the government, or methods of communication which are analogous to those specifically mentioned (for example, it is possible that WhatsApp could be used, as a similar alternative to SMS messaging). To the best of my knowledge and belief, and as Mr. Boutros acknowledges, the UAE courts have never used NFTs for service. In my opinion, the UAE courts would not permit service by NFT, for the following principal reasons:

      a.      An NFT is not generally considered a means of communication. The UAE Civil Procedure Law obviously does not literally permit service via any technological device or innovation. That would have potentially absurd consequences. It permits service only by means of communications technologies, such as email and SMS, and similar technologies. An NFT is not a means of communication. It is a cryptographic token which can be used to demonstrate ownership of a particular file or image. NFTs are generally considered to be a form of digital asset. As far as I am aware, assets are not a means of serving process.

      b.      The UAE courts are generally conservative. Many judges are unlikely to be familiar with NFTs as a concept, and few are likely to have a detailed grasp of the technology. Service of process through recognized means is essential to ensure that a defendant in litigation has the right to a fair hearing and the opportunity to defend itself. Service through esoteric and unusual, even unique, means threatens that basic principle. If the UAE courts were asked to serve process on Defendant, through diplomatic channels, I am certain that they would not rely on NFTs, but would use more prosaic means.

34.     Mr. Boutros correctly notes that the UAE is a technologically sophisticated society and that its government welcomes digital innovation. However, that does not mean that digital assets can be used as a means of serving process. As I explain above, in practice, they are not. Mr. Boutros gives three examples of the use of other types of blockchain technology by courts in

paragraphs 18(b) – (d) of the Boutros Declaration. However, none of these pertain to the "onshore" UAE courts. They pertain to the DIFC and ADGM courts, which as I explain in paragraph 13 above are completely separate jurisdictions and procedurally have nothing in common with the onshore UAE courts. In any event, blockchain, or distributed ledger technology, is a technological concept with a wide range of potential applications, including cryptocurrency, NFTs, "smart" contracts, supply chain management, and secure record management. It does not follow in my opinion that the use of blockchain in one context implies that it may be used in other contexts.

35. Furthermore, while both the DIFC and ADGM have adopted regulatory frameworks for virtual assets such as NFTs, importantly, neither the DIFC nor the ADGM courts permit service by means of NFT.

36. Plaintiffs note that Defendant is familiar with NFTs and the blockchain technology which underpins them. A UAE court would not consider this relevant to the question of service. Service is a standard process carried out through standard means, regardless of the identity of the party being served and without reference to their personal knowledge or familiarity with a particular mode of communication. A UAE court would not engage in an exercise of trying to determine whether a particular method of service is appropriate for an individual based on that individual's technological literacy.

37. Besides the fact that service by NFT is not permitted by UAE law, I do not consider that the proposed method of service "minimizes offense" to UAE law. In my view, this proposal does considerable offense to UAE law, for the following reasons.

    a. It is not consistent with the approach to service in the UAE, which is via the court. Service via any means – including traditional means

        like courier or personal delivery – must be conducted through the court.

    b.    UAE law provides for a clear protocol, which is service through diplomatic channels. I have not experienced the alleged difficulties that Mr. Boutros and Plaintiffs assert. On the contrary, the Ministry of Justice confirmed that this is the exclusive means of serving foreign proceedings in the UAE (see paragraph 19 above). It is a tried and tested method for service between foreign jurisdictions in general. Anything else would be seen as a way of circumventing the exclusive means of service.

    c.    The UAE courts are conservative in their approach to the law and prefer tested solutions. The proposal to airdrop an NFT is creative, but I believe that it would be seen as somewhat outlandish. It has the character of improvisation. Service through tried and tested methods is important to ensure that due process is followed. Creating bespoke solutions to serve individual defendants is the opposite of that. I do not believe that a court applying UAE law would be persuaded that there is any justification to embark on an experiment to circumvent the established process that already exists for serving foreign proceedings on a defendant in the UAE.

**D. <u>Response to Mr. Boutros's comments on my First Declaration</u>**

38.    I respond to sections A and D (paragraphs 7 – 8 and 23 – 26) of the Boutros Declaration insofar as they comment on my First Declaration.

39.     For the reasons I explained in paragraphs 15 and 16 of my First Declaration, service of process by Plaintiffs by mail and/or by leaving the process documents at the front desk of Defendant's residence is not permitted in the UAE, because this contravenes the system whereby service is conducted by the court, not the plaintiff. Moreover, delivery to an unknown person residing in or employed at an apartment building, rather than the defendant themselves, is not sufficient, as it does not meet the requirements of Article 9(1)(b) of the Civil Procedure Law.

40.     For the reasons I explained in paragraphs 18 – 27 of my First Declaration, service by Plaintiffs via Twitter/X is not permitted in the UAE. Service is conducted by the court, not the plaintiff. Furthermore, it would potentially amount to a criminal offence under UAE law. I am not able to comment on specific posts made by Defendant, but in general, the media environment in the UAE is not permissive. I stand by my analysis in my First Declaration that service by X/Twitter would potentially amount to a criminal offence under the UAE Penal Code and/or Cybercrimes Law. There is also a difficulty of attribution of any given social media account to Defendant, and of knowing whether/when Defendant himself personally uses any social media account. For these reasons I consider it highly implausible that the court would ever permit or approve service via X/Twitter.

I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of February 2026 in Dubai, United Arab Emirates.

_____

Susie Abdel-Nabi