## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LIAT ATZILI, et al.,

     *Plaintiffs*,

    v.

ISLAMIC REPUBLIC OF IRAN,
HARAKAT AL-MUQAWAMA AL-
ISLAMIYA A/K/A HAMAS, BINANCE
HOLDINGS LIMITED, D/B/A
BINANCE.COM, BAM MANAGEMENT
US HOLDINGS, INC., BAM TRADING
SERVICES INC. D/B/A BINANCE.US,
AND CHANGPENG ZHAO,

     *Defendants*.

Civil Action No.: 1:24-cv-03365-CJN

## DEFENDANT CHANGPENG ZHAO'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PROTECTIVE ORDER

## I.      INTRODUCTION

Defendant Changpeng Zhao ("**Mr. Zhao**"), through undersigned counsel, respectfully moves the Court pursuant to Federal Rule of Civil Procedure 5.2(e) ("**Rule 5.2(e)**") and the Court's inherent authority to enter a narrowly tailored Protective Order prohibiting the public filing or disclosure of (i) any cryptocurrency wallet address alleged to belong to Mr. Zhao, and (ii) any associated identifying wallet information, including transaction history, balance information, public key data, or other blockchain analytics that could reasonably be used to identify or link a wallet to Mr. Zhao.[1]

Good cause exists for this limited relief. Plaintiffs' pending request to effect service by airdropping a non-fungible token ("**NFT**") creates a substantial likelihood that wallet identifiers or related blockchain data could be placed on the public docket.[2] Although transactions on public blockchains are generally visible, the judicial attribution of a specific wallet address to a named individual materially alters the security posture associated with that address. Publicly linking an individual to a specific wallet enables third parties to analyze the transaction history, balances, and

---

[1] For the avoidance of doubt, Mr. Zhao's motion should not be construed as a waiver of any of his rights and defenses, including, but not limited to, those related to personal jurisdiction, service of process, and other defenses and objections pursuant to Fed. R. Civ. P. 12. "According to Rule 12(g), *once a party has chosen to make a Rule 12(b) motion*, any available Rule 12(b) defenses must be joined in that motion or those that are omitted will be waived . . . [T]his does not apply to the defenses referenced in Rules 12(b)(1), 12(b)(6), and 12(b)(7), which are exempted by Rule 12(g) from the consolidation requirement and are protected against waiver by Rules 12(h)(2) and 12(h)(3)." 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1361 (3d ed. 2025) (emphasis added). Because the herein motion is not a Rule 12(b) motion, Mr. Zhao does not waive these defenses and objections.

[2] As set forth in Mr. Zhao's Memorandum of Law in Opposition to Plaintiffs' Amended Motion to Serve Defendant Zhao Pursuant to Rule 4(f)(3) (ECF No. 91), Plaintiffs have not demonstrated on this record that the cryptocurrency wallet they claim to have identified actually belongs to Mr. Zhao or that he controls or monitors it. *See* ECF No. 91 at 11–13. Absent competent evidence tying the wallet to Mr. Zhao, it is not clear that airdropping an NFT to that address would be reasonably calculated to provide notice sufficient to satisfy constitutional due process.

behavioral patterns using widely available blockchain analytics tools, thereby increasing the risk of targeted phishing, social engineering, extortion, and other forms of financial exploitation. In the cryptocurrency context—where transactions are typically irreversible and may be executed without intermediary oversight—such risks are uniquely consequential. Public attribution may also increase the risk of harassment or other forms of targeted misconduct directed at the alleged wallet holder.

The requested order is narrow. It does not restrict Plaintiffs from litigating their amended service motion ("**Motion**") or from presenting relevant arguments to the Court; it simply requires that any wallet identifiers or related blockchain data be filed under seal or appropriately redacted. Mr. Zhao seeks this relief solely to prevent unnecessary public disclosure of sensitive financial identifiers and expressly preserves all defenses and objections, including those relating to personal jurisdiction and service of process.

## II.    BACKGROUND

The requested Protective Order arises from Plaintiffs' representation in their Motion that they have "identified Changpeng Zhao's cryptocurrency wallet" and seek to effect alternate service by airdropping an NFT to that wallet. *See* ECF No. 90-2, Declaration of Marlene J. Goldenberg ("**Goldenberg Decl.**"), ¶ 6(a). In connection with that Motion, Plaintiffs may seek to file, reference, or otherwise disclose a specific wallet address or related blockchain data that they contend belongs to Mr. Zhao.

A cryptocurrency wallet is a hardware or software mechanism that permits a user to access and control digital assets through cryptographic keys. *See* Declaration of Marco Molina ("**Molina Decl.**"), Ex. 1 (online educational article explaining how cryptocurrency wallets function and the role of public and private keys in authorizing blockchain transactions). Each wallet is associated with a public address—an alphanumeric string capable of receiving digital assets—as well as a

3

corresponding private key that authorizes transactions. *See* Molina Decl., Ex. 2 (online financial services article explaining that wallet addresses are publicly viewable on blockchain networks and that transaction histories may be accessed through blockchain explorers). While public blockchain networks record financial transactions associated with the wallet addresses, the identity of an individual controlling a particular wallet address is not publicly known unless affirmatively attributed to that person.

Public attribution materially alters the security posture of a wallet. Once a specific wallet address is publicly linked to a named individual in a judicial proceeding, third parties may analyze that wallet address's transaction history, balances, and behavioral patterns using widely available blockchain analytics tools. Even disclosure of partial identifiers, transaction histories, or balance information may enable identification through established address-clustering techniques that link related wallets based on transaction flows and common inputs.

An established ecosystem of blockchain analytics and reporting exists that identifies and tracks wallets believed to hold significant digital assets. *See, e.g.*, Whale Alert, https://whale-alert.io/ (website dedicated to tracking large cryptocurrency transactions). Such identification carries distinct risks. Unlike traditional financial systems, blockchain transactions are generally irreversible and may be executed without any intermediary oversight. If access credentials are compromised through phishing, social engineering, or coercion, the transferred assets may be unrecoverable. *See* Molina Decl., Ex. 5 (industry report describing common cryptocurrency scam typologies—including phishing, impersonation, drainware, and extortion schemes—and noting the largely irreversible nature of blockchain transactions).

Public reporting has documented incidents in which individuals who are perceived to hold substantial cryptocurrency have been targeted for extortion or other forms of coercion to compel

asset transfers. *See, e.g.*, Molina Decl., Exs. 3–4 (online news and industry reporting documenting recent kidnappings, armed robberies, and extortion schemes targeting individuals perceived to hold substantial cryptocurrency assets, including so-called "wrench attacks"). Publicly attributing a specific wallet to Mr. Zhao in a high-profile federal action would materially increase the risk of targeted financial exploitation or other harm. That risk exists even if the cryptocurrency wallet Plaintiffs have identified does not in fact belong to Mr. Zhao, because public misattribution could itself invite harmful targeting.

## III.    LEGAL STANDARD

Rule 5.2(e) authorizes a court to issue a protective order "[f]or good cause." Fed. R. Civ. P. 5.2(e). Such an order may require redaction or otherwise limit public access to filings in order to protect private information. *Id.* Rule 5.2(e) was adopted this century in response to increasing concerns regarding the risks associated with the public disclosure of sensitive information in court filings, including "the risks of misuse of a litigant's identity" caused by public disclosure of private information in U.S. litigations. *Bird v. Barr*, No. 19-cv-1581, 2019 WL 2870234, at *3, n.2 (D.D.C. July 3, 2019) (confirming that these risks "led to the provision of the E-Government Act of 2002 that prompted adoption of Federal Rule of Civil Procedure 5.2").

To establish good cause under Rule 5.2(e), the movant must demonstrate either that public disclosure of the information at issue would result in specific harm or prejudice, or that such information is of a sufficiently private and sensitive nature that its appearance on the public docket warrants protection. *Doe v. Noem*, 781 F. Supp. 3d 1055, 1063 (E.D. Cal. 2025); *Ramirez Ovando v. Noem*, No. 1:25-cv-3183, 2025 WL 3293467, at *25 (D. Colo. 2025); *Krumtum v. Crawford*, No. 1:16CV00007, 2016 WL 2894929, at *2 (W.D. Va. 2016) (citing Rule 5.2(e) and noting that a court has ample "discretion" to "order the sealing and redaction of . . . records to provide additional privacy protection").

Consistent with the foregoing, courts applying the analogous "good cause" standard under Rule 26(c) of the Federal Rules of Civil Procedure hold that protective relief may be warranted to prevent harm resulting from the disclosure of sensitive information and that the trial courts possess substantial latitude to tailor such relief. *See* Fed. R. Civ. P. 26(c)(1); *Avirgan v. Hull*, 118 F.R.D. 252, 253–54 (D.D.C. 1987).

## IV.    ARGUMENT

Good cause exists for the issuance of the proposed Protective Order here. As explained in Section II, *supra*, public disclosure of information identifying Mr. Zhao's alleged cryptocurrency wallet would expose him to concrete financial and security risks.

Federal courts routinely enter protective orders to prevent the public disclosure of sensitive financial identifiers. *See, e.g.*, *Cox v. WSP USA Inc. Grp. Ins. Plan*, No. 24-cv-8812, 2026 WL 121206, at *3 (N.D. Cal. Jan. 16, 2026) (finding good cause to seal personal financial information, including the amount of a settlement agreement, where such disclosure was unnecessary to public understanding of the litigation at bar); *Peskoff v. Faber*, 230 F.R.D. 25, 33 (D.D.C. 2005) (entering protective order covering "any financial information of a party or protected person, including tax, salary, or bank account information"); *Dubai Islamic Bank v. Citibank, N.A.*, 211 F. Supp. 2d 447, 449 n.1 (S.D.N.Y. 2001) (finding good cause for a protective order based on confidentiality and privacy concerns relating to bank account records). Courts likewise recognize good cause to redact information from public filings where disclosure would create safety or security risks. *See, e.g.*, *Noem*, 781 F. Supp. 3d at 1063 (ordering the redaction of personal information under Rule 5.2(e)); *Malhan v. Grewal*, No. 16-8495, 2020 WL 6689753, at *3 (D.N.J. Nov. 13, 2020) (recognizing safety concerns as proper basis for redacting home addresses); *Bratcher v. Walters*, No. 3:24-cv-1174, 2025 WL 722739, at *1 (M.D. Fla. Mar. 6, 2025) (finding good cause under Rule 5.2(e) to extend privacy protections based on general safety risks).

While there is limited case law addressing cryptocurrency wallet identifiers specifically, courts in analogous contexts have recognized that disclosure of information linking individuals to cryptocurrency holdings presents heightened risks. For example, in *In re Genesis Global Holdco, LLC*, the court approved redactions of identifying information for customers of a cryptocurrency trading platform, concluding that disclosure posed an "undue risk of identity theft or other unlawful injury." 652 B.R. 618, 637 (Bankr. S.D.N.Y. 2023). In so holding, the court emphasized that cryptocurrency transactions are near-instantaneous and largely irreversible, and that individuals perceived to hold substantial cryptocurrency assets face increased risks of financial exploitation and coercive targeting. *Id.* at 637–38. The record there, as here, reflected documented incidents of harassment and attacks motivated by cryptocurrency theft. *Id.* at 638–39.

The same principles apply here. A cryptocurrency wallet address functions as a financial account identifier. Once publicly attributed to a named individual in a high-profile judicial action, it enables third parties to analyze transaction history and balances using blockchain tools, materially increasing the risk of targeted exploitation. Because such risks are concrete and non-speculative, good cause exists to require that any wallet identifiers or related blockchain data be filed under seal or appropriately redacted.

## V.    CONCLUSION

For the foregoing reasons, the Court should enter the proposed Protective Order requiring that any cryptocurrency wallet identifiers or associated blockchain data alleged to belong to Mr. Zhao be filed under seal or appropriately redacted.

Dated: February 27, 2026                    Respectfully submitted,

                                            **BAKER HOSTETLER LLP**

                              By:    /s/ Marco Molina

                                     Marco Molina (admitted *pro hac vice*)
                                     45 Rockefeller Plaza
                                     New York, NY 10111
                                     Telephone: 212.589.4200
                                     Facsimile: 212.589.4201
                                     mmolina@bakerlaw.com

                                     Teresa Goody Guillén
                                     Washington Square, Suite 1100
                                     1050 Connecticut Avenue, N.W.
                                     Washington, DC 20036
                                     Telephone: 202.861.1500
                                     Facsimile: 202.861.1783
                                     tgoodyguillén@bakerlaw.com

                                     *Attorneys for Defendant Changpeng Zhao*

**Certificate of Conferral**

Pursuant to Local Civil Rule 7(m), I hereby certify that the Parties conferred regarding the filing of this motion. Plaintiffs have not indicated whether they oppose the Motion.

                                            /s/ Marco Molina