**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LIAT ATZILI, KEITH SIEGEL, ADRIENNE SIEGEL, SHAI SIEGEL, SHIR SIEGEL, ELAN TIV, GAL SIEGEL, LUCY SIEGEL, DAVID SIEGEL, and LEE SIEGEL, | Civil Action No. <u>1:24-cv-03365-CJN</u> |
| *Plaintiffs*, | **PLAINTIFFS' REPLY IN SUPPORT OF RENEWED MOTION TO SERVE DEFENDANTS CHANGPENG ZHAO AND HARAKAT AL-MUQAWAMA AL-ISLAMIYA PURSUANT TO FED. R. CIV. P. 4(f)(3)** |
| v. | |
| ISLAMIC REPUBLIC OF IRAN, HARAKAT AL-MUQAWAMA AL-ISLAMIYA A/K/A/ HAMAS, BINANCE HOLDINGS LIMITED, D/B/A BINANCE.COM, BAM MANAGEMENT US HOLDINGS, INC., BAM TRADING SERVICES INC. D/B/A BINANCE.US, CHANGPENG ZHAO | **ORAL ARGUMENT REQUESTED** |
| *Defendants*. | |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

   I.   Plaintiffs Are Not Required to Exhaust Service Methods Under Rule 4(f)(2) .................. 2

   II.   Even if Plaintiffs Were Required to Exhaust Rule 4(f)(2) Methods, Plaintiffs Did by
Demonstrating the Infeasibility of Rule 4(f)(2) Methods .......................................... 4

      1.   Exhaustion Does Not Require Attempting an Infeasible Method ................................. 4

      2.   Service Under Rule 4(f)(2) Is Infeasible ...................................................... 5

   III.   Service via NFT Complies with Rule 4(f)(3) ............................................... 11

      1.   Service Via NFT Satisfies Due Process ...................................................... 11

      2.   Plaintiffs Made an Earnest Effort to Minimize Offense to UAE Law ........................ 13

CONCLUSION ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AngioDynamics, Inc. v. Biolitec, AG*,
    780 F.3d 420 (1st Cir.2015) ................................................................................ 3

*Barko v. Halliburton Co.*,
    952 F.Supp.2d 108 (D.D.C.2013) ..................................................................... 1, 2

*Bazarian Int'l. Fin. Assocs., L.L.C. v. Desarollos Aerohotelco, C.A.*,
    168 F.Supp.3d 1 (D.D.C. 2016) ......................................................................... 2

*Bowen v. Li*,
    2023 WL 2346292 (S.D. Fl. Mar. 3, 2023) ..................................................... 12

*BTL Indus., Inc. v. Rejuva Fresh, LLC*,
    2023 WL 3795302 (D. Me. June 2, 2023) .................................................... 4, 10

*Cipherblade, LLC v. Cipherblade, LLC*,
    2024 WL 69164 (D. Ala. Jan. 5, 2024) ...................................................... 12, 15

*Enovative Techs., LLC v. Leor*,
    622 Fed.Appx. 212, (4th Cir.2015) ................................................................... 3

*Freedom Watch v. OPEC*, 7
    66 F.3d 74 (D.C. Cir. 2014) ................................................... 2, 3, 13, 14

*Global Air Charters Inc. v. Mayfair Jets DWC-LLC*,
    2024 WL 5039907 (D. Minn. Dec. 9, 2024) ................................................ 5, 10

*Halvorssen v. Simpson*,
    328 F.R.D. 30 (E.D.N.Y. 2018) ...................................................................... 11

*Henning v. Arya*,
    2016 WL 4055641 (D. Nev. July 26, 2016) ...................................................... 8

*Heredia v. MTK Global Sports Mgmt., LLC*,
    2024 WL 3740104 (C.D. Cal. July 12, 2024) ................................................... 9

*Jones Lang LaSalle Americas, Inc. v. Nat'l Lab. Rels. Bd.*,
    2025 WL 516944 (D.C. Cir. Feb. 18, 2025) .................................................... 12

*Kohler Co. v. Bold Int'l FZCO*,
    F. Supp. 3d 681 (E.D.N.Y. 2018) ..................................................................... 9

*Kurd v. Republic of Turkey*,
    2018 WL 11248032 (D.D.C. Dec. 19, 2018) ................................................... 11

*Madu Edozie & Madu v. Socketworks Ltd. Nigeria*,
    265 F.R.D. 106 (S.D.N.Y. 2010) .................................................................... 11

*Moriarty v. Hashemite Kingdom of Jordan*,
    2023 WL 5748566 (D.D.C. Sept. 6, 2023) ...................................................... 11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ......................................................................................... 11

*Nuance Comms., Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed Cir. 2010) .......................................................................... 3

*Orsi v. Falah*,
    2012 WL 446120 (D. Mass. Sept. 25, 2012) .................................................. 10

*Oueiss v. Al Saud*,
    2021 WL 5088942 (S.D. Fla. Jan. 18, 2021) .................................................... 4

*Pliteq, Inc. v. Mostafa*,

2024 WL 3070171 (S.D. Fla. June 20, 2024) ............................................................ 8
*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.,*
   2020 WL 70935592 (S.D.N.Y. Dec. 4, 2020) .................................................... 14
*Rio Props., Inc. v. Rio Int'l Interlink,*
   284 F.3d 1007 (9th Cir. 2002) ........................................................................... 2
*S.E.C. v. Nevatia,*
   2015 WL 6912006 (N.D. Cal. Oct. 19, 2015) .................................................... 9
*Smart Study Co., Ltd v. Shenzenshixindajixieyouxiangongsi,*
   164 F.4th 164 (2d Cir. 2025) ............................................................................. 3
*Spencer v. Caracal Int'l, LLC, (Caracal III),*
   2021 WL 3172312 (M.D. Tenn. July 27, 2021) ................................................ 8
*Spencer v. Caracal Int'l, LLC,*
   2021 WL 2073745 (M.D. Tenn. May 24, 2021) (*Caracal II*) ........................... 8
*Strange v. Islamic Republic of Iran,*
   2019 WL 13158028 (D.D.C. June 4, 2019) ..................................................... 11
*U.S. v. Real Property Known as 200 Acres of Land Near FM 2686 Rio Grande City, TX,* 773
   F.3d 654 (5th Cir. 2014) ................................................................................... 3

**Other Authorities**
Federal Judicial Center, *International Litigation Guide* (2015) .................................. 10
Service of Process, United States Department of State, (June 18, 2024) ................. 7, 10
Treaty Between the United Kingdom of Great Britain and Northern Ireland and the United Arab
   Emirates on Judicial Assistance in Civil and Commercial Matters ........................... 6
Treaty with the United Arab Emirates on Mutual Legal Assistance in Criminal Matters ............. 7

**Rules**
Rule 4(f)(2) ................................................................................... passim
Rule 4(f)(3) ................................................................................... passim

## INTRODUCTION

It is unsurprising that Defendant Changpeng Zhao (CZ), who flouted U.S. law for years as CEO of Binance Holdings Limited now asserts that U.S. laws are subordinate to those of a foreign nation. Specifically, CZ argues that Plaintiffs cannot serve him through alternate means under Rule 4(f)(3) unless they first attempt to serve him through diplomatic channels (Letters Rogatory) under Rule 4(f)(2), but that even if Plaintiffs could use alternate means, those means must still comply with UAE law. In other words, CZ's invented standard would require that Plaintiffs' only avenue to serve him would be through the UAE courts, an avenue that is unavailable to Plaintiffs as US-based litigants.

However, US laws do not give way to those of foreign jurisdictions in the context of international service of process. Courts in this District (and throughout the US) have consistently repudiated arguments like CZ's. *See*, *e.g.*, *Barko v. Halliburton Co.*, 952 F.Supp.2d 108, 116 (D.D.C.2013) (permitting alternate service by a method not authorized by foreign law and noting Rule 4(f) was satisfied where foreign law was taken into "consideration" though not ultimately followed). Under the Federal Rules, Plaintiffs may pursue *either* service under Rule 4(f)(2) *or* Rule 4(f)(3) and Plaintiffs' choice of the latter does not require compliance with the foreign jurisdiction's law where this is not possible. *Id.* Here, Plaintiffs did their due diligence: Plaintiffs made inquiries about personal service and investigated the possibility of serving CZ through Letters Rogatory—but learned  both options had grim chances of ever being successful, and it would be impossible to find out without spending months and thousands of dollars, all while CZ continues to be aware of this lawsuit and troll Plaintiffs on Twitter (X). ECF 90-3. Therefore, Plaintiffs presented two options that ensure direct delivery and traceability without impinging on CZ's alleged privacy interests: service via nonfungible token (NFT), which has been repeatedly

used in US courts, or simply emailing the Summons and Complaint to CZ's attorney, who has already entered an appearance in this case.

## ARGUMENT

### I.    Plaintiffs Are Not Required to Exhaust Service Methods Under Rule 4(f)(2)

CZ argues that before requesting leave to serve him through alternate means under Rule 4(f)(3), Plaintiffs first had to try (and fail) to serve him through the methods specified by Rule 4(f)(2). ECF 91 at 9–10. That is not the law. In this District, courts recognize that:

> Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f), and each subsection is separated from the one previous merely by the simple conjunction 'or.' ... Moreover, no language in rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

*Bazarian Int'l. Fin. Assocs., L.L.C. v. Desarollos Aerohotelco, C.A.*, 168 F.Supp.3d 1, 16 (D.D.C. 2016) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)); *see also U.S. ex rel. Barko v. Halliburton Co.*, 952 F.Supp.2d 108, 116 (D.D.C.2013) (same).[1] While the D.C. Circuit has not addressed this issue, it has cited *Rio Properties* approvingly in other contexts involving service under Rule 4(f), *see Freedom Watch v. OPEC*, 766 F.3d 74 (D.C. Cir. 2014) (citing *Rio Properties* for the proposition that "the district court retains discretion under Rule 4(f)(3) to authorize service even if the alternative means would contravene foreign law"), and appears that the five other federal appellate courts to address this issue are in accord with *Rio*

---

[1] CZ's reliance on *Stallard v. Goldman Sachs Group, Inc.* is misplaced. In *Stallard*, the court stated that unlike other cases in which service *on the party's attorney* was authorized, the defendant had not attempted any method of service outside the United States. 2022 WL 59395, *8 (D.D.C. Jan. 6, 2022). Here, Plaintiffs have not only attempted to serve CZ outside the United States, but have investigated the feasibility of other methods, including personal service through a process server, the use of diplomatic channels, and the use of Letters Rogatory, which proved infeasible based on Plaintiffs' investigation. *See* ECF 90-2 at ¶ 5. The *Stallard* court did not hold that parties must exhaust Rule 4(f)(2) methods before proceeding to alternative service under Rule 4(f)(3).

*Properties*.[2] CZ's argument therefore runs counter to the weight of authority from this District and across no less than six Circuits, not to mention this Court's holding in this case. *See* ECF 79 at 3 ("Attempted service under Rule 4(f)(1) and Rule 4(f)(2) is not a prerequisite to the court permitting service under Rule 4(f)(3).").

CZ attempts to conflate the Court's statement that "prior attempts at service are relevant" with a prerequisite that Plaintiffs make other attempts under Rule 4(f)(2). ECF 91 at 10. No such prerequisite exists. In *Freedom Watch*, on which the Court relied in its prior Order, ECF 79 at 3, the D.C. Circuit affirmed denial of a motion for alternate service where none of the prior attempts complied with foreign law or—a critical distinction from this case—with United States law. 766 F.3d at 77–78. Here, there is no need for the Court to consider whether Plaintiffs' prior attempts complied with United States law because that is not at issue; what *is* at issue is that CZ objects to service of process that complies with U.S. law but which, he avers, does not comply with UAE law. Moreover, Plaintiffs took this Court's prior order to heart and made several attempts to find other ways to serve CZ.

Tellingly, CZ has not identified any authority pursuant to which Plaintiffs are required to attempt service under Rule 4(f)(2) before they may pursue this Motion. Instead, as the Court

---

[2] *AngioDynamics, Inc. v. Biolitec, AG*, 780 F.3d 420, 429 (**1st Cir.2015**) ("By its plain terms, Rule 4(f)(3) does not require exhaustion of all possible methods of service before a court may authorize service by 'other means,' such as service through counsel and by email."); *Smart Study Co., Ltd v. Shenzenshixindajixieyouxiangongsi*, 164 F.4th 164, 168 (**2d Cir.** 2025) ("Both the Rule 4(f)(2) and 4(f)(3) paths are open" but ultimately denying motion for alternate service because proposed method violated international convention to which China was a party); *Enovative Techs., LLC v. Leor*, 622 Fed.Appx. 212, 214 (**4th Cir.**2015) (similar); *U.S. v. Real Property Known as 200 Acres of Land Near FM 2686 Rio Grande City, TX*, 773 F.3d 654, 659 (**5th Cir.** 2014) (rejecting argument that compliance with Rule 4(f) requires exhaustion of methods under Rule 4(f)(1) or 4(f)(2) before proceeding to 4(f)(3)); *Nuance Comms., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239–40 (**Fed Cir.** 2010) (similar).

recognized, Rule 4(f)(2) does *not* function as a prerequisite to service under Rule 4(f)(3). ECF 79 at 3.

## II.    Even if Plaintiffs Were Required to Exhaust Rule 4(f)(2) Methods, Plaintiffs Demonstrated the Infeasibility of Rule 4(f)(2) Methods
### 1.    Exhaustion Does Not Require Attempting an Infeasible Method

Even if Plaintiffs were required to exhaust Rule (4)(f)(2) before seeking leave to serve CZ pursuant to Rule 4(f)(3), exhaustion does not require Plaintiffs to actually attempt a method known in advance to be futile. ECF 90-2 at ¶ 5; ECF 90-8 at ¶¶ 5–6. *Oueiss v. Al Saud*, 2021 WL 5088942, at *7 (S.D. Fla. Jan. 18, 2021) (finding that alternate service of process under Rule 4(f)(3) was appropriate since "Plaintiff's only available mechanism to effect service of process, absent approval from the Court, is via Letters Rogatory, which even the State Department recommends against where an alternative exists.") Letters rogatory, specifically, are recognized to be such futile or ineffective attempts at service upon foreign defendants that have not implemented treaties or agreements regarding international service of process. *See Id.* (letters rogatory are effectively acknowledged by the State Department to be "time-consuming" and "cumbersome" and "need not be utilized unless there are no other options available.") (quoting *Service of Process*, United States Department of State, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process.html (last updated June 18, 2024)). CZ would have Plaintiffs spend thousands of dollars and potentially more than a year of time waiting for a service of process method that Plaintiffs know will not result in service on CZ, a party who already has actual notice of this action. *See ECF 90-3*. Such an onerous requirement serves no purpose other than delay. This is why courts do not require Plaintiffs to *actually attempt* futile methods of service. *See BTL Indus., Inc. v. Rejuva Fresh, LLC*, 2023 WL 3795302, at *2–3 (D. Me. June 2, 2023) (finding plaintiff "has shown reasonable efforts" to serve defendant through

conventional means by attempting to have defendant waive service through counsel and "forcing [plaintiff] to serve [defendant] in Thailand would be a waste of time and money given that she is clearly already aware of the suit"). In *Global Air Charters Inc. v. Mayfair Jets DWC-LLC,* the plaintiffs researched service of process in the UAE and consulted with process servers but learned the only available method that complied with UAE law was Letters Rogatory, which would cost thousands of dollars and could take 8–12 months. *See Barth Decl.*, No. 24-cv-3862 (LMP/SGE), Dkt. 12 (Nov. 22, 2024). This investigation mirrors the investigation Plaintiffs performed here. *See* ECF 90-2 at ¶ 5; ECF 90-8 at ¶¶ 5–6. Under those analogous circumstances, the the Court found that plaintiff's analysis of the time and cost of effectuating service through UAE court (i.e. initiating letters rogatory) constituted a reasonable attempt at effectuating service of process, granting plaintiffs motion to serve the complaint and summons by other means. 2024 WL 5039907, at *2 (D. Minn. Dec. 9, 2024)

Here, Plaintiffs did their due diligence. Plaintiffs consulted with three international service of process consultants regarding the process for *in personam* service and service through diplomatic channels, such as letters rogatory. ECF 90-2 at ¶ 5; ECF 90-8 at ¶¶ 5–6. Plaintiffs determined that *in personam* service would not succeed, nor would service through diplomatic channels including letters rogatory based on the experience of U.S.-based entities who have actually made service attempts in the UAE in the past—something Ms. Abdel-Nabi has never done or attempted for a U.S. based client. *Compare* ECF 90-8 at ¶¶ 5–6 *with* ECF 91-1 at ¶¶ 18–21.

### 2. Service Under Rule 4(f)(2) Is Infeasible

Though CZ claims service in the UAE under Rule 4(f)(2) is "routinely accomplished," he ignores that service under Rule 4(f)(2) is *not* accomplished in cases like this one. ECF 91 at 12.

#### a. *Ms. Abdel-Nabi's Declaration Fails to Engage with the Proper Standard for Foreign Service of Process*

CZ relies on the Second Declaration of Susie Abdel-Nabi, who states, in relevant part "service by letters rogatory, through diplomatic channels, is a valid and feasible method of serving a defendant which is domiciled in the UAE. Furthermore, that is the only permitted method of serving foreign proceedings on a defendant in the UAE." ECF 91-1 at ¶ 21 (emphasis in original). This misses the point. The standard, as the Court articulated it in its previous Order on Plaintiff's Motion for Alternate Service (ECF 79), is that service of a defendant is a foreign country need not comply with foreign law but instead should "minimize offense to foreign law." ECF 79, at 3. Thus, even if letters rogatory were the only means of service that were legal in UAE Courts, that does not prohibit US Courts from authorizing an alternate means, so long as there is an "effort" (not necessarily success) to minimize offense to local laws.

Ms. Abdel-Nabi further indicates that she has "not encountered" and is not personally "aware of" cases in which the UAE courts refused to execute Letters Rogatory. *Id.* at ¶ 20. Ms. Abdel-Nabi's assertions are misleading at best. Ms. Abdel-Nabi is a commercial lawyer based in the UK, not the US. *Id.* at ¶ 2. She therefore does not have experience representing—or attempting to serve— parties in the UAE on behalf of U.S.-based litigants. *Id.* This is critical because the UAE and UK have a judicial assistance treaty related for civil and commercial matters.[3]

Ms. Abdel-Nabi also indicates that her office contacted the UAE Ministry of Justice and was informed that they do cooperate with Letters Rogatory requests for the US and UK. ECF 91-1 at ¶ 19. Again, the UAE's cooperation with the UK is immaterial—it is a separate country and one with a judicial assistance treaty for civil cases. This conversation is also unhelpful because the UAE Ministry of Justice did not indicate whether it cooperates with Letters Rogatory requests in

---

[3] *See* Treaty Between the United Kingdom of Great Britain and Northern Ireland and the United Arab Emirates on Judicial Assistance in Civil and Commercial Matters: London, 7 December 2006, https://www.gov.uk/government/publications/treaty-between-the-uk-and-uae-on-judicial-assistance (last accessed Feb. 25, 2026).

*civil* as opposed to *criminal* cases. *See* ECF 91-1 at ¶ 19. The US and UAE have a judicial assistance treaty though it is limited to criminal cases only.[4] Thus, the UAE will cooperate with the US in some instances. What matters to this case, however, is whether it will cooperate in civil cases.

Ms. Abdel-Nabi's analysis focuses on what is theoretically possible. There is, in theory, nothing stopping the UAE from cooperating with a request for Letters Rogatory for a civil case in the US. In practice, however, the UAE does not cooperate. It makes sense that Ms. Abdel-Nabi would be ignorant about the practical realities of this as it relates to US Courts, because she is not licensed to practice law in the United States. *See generally* ECF 91-1, ECF 92-2. The US State Department, UAE-licensed Legal Consultant Hyam el Hachem, and Plaintiffs' US-based international process server all advise against the use of Letters Rogatory because they are rarely (if ever) returned in *civil* cases and because when they are returned this process can take up to a year. *See* Supp'l Ingalls Decl. ¶¶ 5–12; El Hachem Decl. ¶ 12; ECF 90-6 at ¶ 13; ECF 90-8 at ¶¶ 5–6.[5] Thus, in accordance with the practical experience of the US State Department and Plaintiffs' international service consultant who, unlike Ms. Abdel-Nabi, has experience effecting service on parties in the UAE for US-based litigants, Plaintiffs determined that service under Rule 4(f)(2) is impractical and infeasible.

> **b. *CZ Identifies No Analogous Case in Which Service Was Effectuated Under Rule 4(f)(2)***

---

[4] Treaty with the United Arab Emirates on Mutual Legal Assistance in Criminal Matters, Treaty Doc. 119-1, https://www.govinfo.gov/app/details/CDOC-119tdoc1/context (last accessed Feb. 25, 2026).

[5] Service of Process, United States Department of State, (June 18, 2024) https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process.html ("Letters rogatory are a time consuming, cumbersome process and need not be utilized unless there are no other options available. If the laws of the foreign country permit other methods of service, the use of letters rogatory is not recommended given the routine time delays of up to a year or more in execution of the requests.") (last accessed Feb. 25, 2026).

CZ points to a handful inapposite of trial court decisions that, he asserts, show successful service on entities in the UAE. ECF 91 at 12.  A closer reading of these cases, however, easily renders them inapposite at best and, in some cases, supportive of Plaintiffs' position.

First, CZ cites *Spencer v. Caracal Int'l, LLC*, 2021 WL 2073745 (M.D. Tenn. May 24, 2021) (*Caracal II*) for the proposition that "a UAE defendant could be served under Rule 4(f)(2)(c)" through the UAE Ministry of Justice. *See* ECF 91 at 12. In reality, the court in *Caracal II* simply granted an unopposed request to authorize service through the same process CZ now demands Plaintiffs follow. *Id.* at *1. Months later, in *Spencer v. Caracal Int'l, LLC*, (*Caracal III*), the parties were forced to return to court because the UAE refused to assist them in the absence of a mobile phone number for the person to be served. 2021 WL 3172312, at *2 (M.D. Tenn. July 27, 2021). The court therefore authorized alternate service through email under Rule 4(f)(3). *Id.* at *4. The court should do the same here.

Second, *Pliteq, Inc. v. Mostafa*, is distinguishable because one of the two plaintiffs, PBM, moving for service under Rule 4(f)(2) was organized under the laws of the UAE. 2024 WL 3070171, at *2 (S.D. Fla. June 20, 2024). Here, no plaintiff is an Emirati citizen, and this case is therefore unhelpful to the present set of facts.

Third, in *Henning v. Arya*, which CZ cites as an example of appropriate service under Rule 4(f), the "plaintiff's process server"—not a government process server—served the summons and complaint on another individual at the defendant's residence. 2016 WL 4055641, at *3–4 (D. Nev. July 26, 2016). The court in *Henning* concluded service complied with Rule 4(f), though it "did not comply perfectly with UAE law." *Id.* Here, the Court already rejected service on a third-party at CZ's residence; therefore, Plaintiffs have opted not to pursue *in personam* service because security protocols at CZ's residence prohibit anything other than serving the concierge of his building. ECF 90-2 at ¶ 5.

Fourth, in *Heredia v. MTK Global Sports Mgmt., LLC*, the plaintiff received permission from Dubai's public notary system to serve the complaint by publication. 2024 WL 3740104, at *7–9 (C.D. Cal. July 12, 2024). While, in that case, a UAE law expert indicated that this method was permissible under UAE law , CZ's own expert asserts that the only method available that complies with UAE law is a *different* method than used in *Heredia*: Letters Rogatory. *See* ECF 91-1 at ¶¶ 18–21. If Plaintiffs attempted to serve CZ through the method in *Heredia*, Plaintiffs anticipate that CZ would challenge this method also given that CZ's expert asserts Letters Rogatory is the "exclusive" method by which Plaintiffs may attempt to serve him. In any event, as the *Heredia* court observed, "service may be accomplished by other means" under Rule 4(f)(3), but the *Heredia* plaintiff never requested authorization to do so.

Fifth, *S.E.C. v. Nevatia*, involved service on a prisoner, which could be carried out under Rule 4(f)(2) and UAE Fed. Law No. 11, which permits serving prisoners by delivering documents personally to the administrator of the place where the person is imprisoned. 2015 WL 6912006, at *4 (N.D. Cal. Oct. 19, 2015). Though he was convicted of felonies in the U.S., CZ is not imprisoned in Dubai and is no longer in prison in the US; therefore, this method is not available.

Finally, in *Kohler Co. v. Bold Int'l FZCO*, the plaintiff personally served a UAE-based corporate defendant through their registered agent in the U.S. 422 F.Supp. 3d 681, 715 n.8 (E.D.N.Y. 2018). Here, CZ is an individual and does not have a US-based registered agent to serve, making this method infeasible.

CZ failed to identify a single civil case in which a plaintiff—other than one from the UAE—succeeded in serving defendants through Letters Rogatory under Rule 4(f)(2).

### c.  *Service Under Rule 4(f)(2) Would Be Unduly Time-Consuming*

Serving CZ through the methods specified by Rule 4(f)(2) would be unduly costly and time-consuming. Though Ms. Abdel-Nabi claims this is not the case, Ms. Abdel-Nabi does not

appear to have used any of these methods to serve UAE-based defendants on behalf of US-based plaintiffs and has never practiced in US Courts. *See generally* ECF 91-1. Celeste Ingalls, whose company has done so, advises that this is costly, time-consuming, and unlikely to be successful. ECF 90-8 at ¶¶ 5–6; Supp'l Ingalls Decl. ¶¶ 5–12. The United States Department of State and the Federal Judicial Center agree with Plaintiffs' Ms. Ingalls.[6]

In comparable circumstances, federal courts *do* permit alternate service. *Global Air Charters Inc. v. Mayfair Jets DWC-LLC,* No. 24-cv-3862 (LMP/SGE), 2024 WL 5039907, at *2 (D. Minn. Dec. 9, 2024); *see also BTL Indus., Inc. v. Rejuva Fresh, LLC*, 2023 WL 3795302, at *2–3 (D. Me. June 2, 2023) (authorizing alternate service via email because "forcing [plaintiff] to serve [defendant] in Thailand would be a waste of time and money given that she is clearly already aware of the suit").

However, the authorities on which CZ relies are distinguishable. For example, in *Orsi v. Falah,* the court rejected the allegation it was too difficult to serve a UAE-based defendant as "mere conjecture" where the plaintiff had "not documented any attempts to contact such couriers" nor "demonstrated that the UAE would, for whatever reason, be unresponsive to the letter rogatory process." 2012 WL 4469120, at *2– 3 (D. Mass. Sept. 25, 2012). By contrast, Plaintiffs documented attempts to contact three process servers in the UAE and demonstrated that the UAE would be highly unlikely to respond to or approve the Letters Rogatory process based on representations from the US

---

[6]  *See* Federal Judicial Center, *International Litigation Guide* 21–22 (2015), https://www.govinfo.gov/content/pkg/GOVPUB-JU13-PURL-gpo64008/pdf/GOVPUB-JU13-PURL-gpo64008.pdf (last accessed Feb. 25, 2026) ("letters rogatory are a means by which a court may request assistance from a foreign judicial authority; in the absence of a treaty or an agreement requiring cooperation, the foreign state has no obligation to provide the assistance sought….Not only is the letters rogatory procedure unpredictable, it is also notoriously slow and cumbersome. The Department of State currently estimates that execution of letters rogatory can take a year or more."); *see also* Service of Process, United States Department of State (June 18, 2024) https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process.html  (last accessed Feb. 25, 2026).

Department of State. *See* ECF 90-2 at ¶ 5, 90-8 at ¶¶ 5–6.[7] In *Halvorssen v. Simpson*, service under the Hague convention was available, and Defendants were amenable to it. 328 F.R.D. 30, 34–35 (E.D.N.Y. 2018). Here, Plaintiffs' international service consultant, not to mention the United States Government, confirmed that the service options CZ demands Plaintiffs attempt, are not available in U.S. civil cases *in practice*. *See* ECF 90-2 at ¶ 5, 90-8 at ¶¶ 5–6.[8] Finally, in *Madu Edozie & Madu v. Socketworks Ltd. Nigeria*, the plaintiffs merely made the unsupported assertion that service in Uganda and Ghana was futile. 265 F.R.D. 106, 115 (S.D.N.Y. 2010). Here, Plaintiffs demonstrated based on the experience of international process servers who have actually attempted this process and consulted with the U.S. State Department that Letters Rogatory sent to the UAE are not typically returned. *See* Ingalls Decl. ¶¶ 5–6; Supp'l Ingalls Decl. ¶¶ 5–12.[9] The UAE has not returned Letters Rogatory to the US in **four years**. *Id.* UAE licensed legal consultant Ms. El Hachem likewise agrees that Letters Rogatory should not be used. *Compare* El Hachem Decl. ¶ 12 *with* ECF 90-6 at ¶ 13.

### III.    Service via NFT Complies with Rule 4(f)(3)
#### 1.    Service Via NFT Satisfies Due Process

Plaintiffs proposed method of service satisfies due process. First, service satisfies due process where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Strange v. Islamic Republic of Iran*, 2019 WL 13158028, at *2 (D.D.C. June 4, 2019) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Kurd v. Republic of Turkey*, 2018 WL 11248032, at *2 (D.D.C. Dec. 19, 2018) (same); *Moriarty v. Hashemite Kingdom of Jordan*, 2023 WL 5748566, at *3 (D.D.C. Sept. 6, 2023) (same). Here, CZ has actual notice of this

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

action. ECF 90-3. Thus, the due process interests of service (notice of the action) have already been accomplished.

Second, service via NFT will deliver the Summons and Complaint directly and privately to CZ, a sophisticated cryptocurrency user, via a traceable method. ECF 90-2 at ¶ 6. CZ argues that service via NFT will not satisfy requirements of due process because Plaintiffs have not demonstrated that CZ owns the wallet in question. Plaintiffs indicated that they identified a wallet belonging to CZ. ECF 91 at ¶¶ 17–18.[10] As with traditional methods of service, once effectuated, Plaintiffs will file an affidavit of service outlining the date and time of service and how the person served was properly identified. Plaintiffs have not preemptively done so because Plaintiffs believe (based on CZ's refusal to accept personal service or waiver of service) that CZ is evading service, and disclosing how Plaintiffs located CZ's cryptocurrency wallet in advance will prompt CZ to evade service in this way as well.  At this stage, Plaintiffs must show that service via NFT is permissible—not that service via NFT has been successful, as this Motion asks for permission, rather than forgiveness.

*Cipherblade, LLC v. Cipherblade, LLC*, is instructive. There (as here) the plaintiff moved for leave to serve a defendant in the UAE through a nonfungible token (NFT).  2024 WL 69164, at *1–2 (D. Ala. Jan. 5, 2024); *see also Bowen v. Li*, 2023 WL 2346292, at *3 (S.D. Fl. Mar. 3, 2023) ("NFT and posting on a designated website are reasonably calculated to give notice to Defendants");[11]

---

[10] CZ claims that Plaintiffs are somehow precluded from responding to his argument because Plaintiffs did not respond to his argument preemptively in their opening brief. *See* ECF 91 at 17 n.2 (citing *Jones Lang LaSalle Americas, Inc. v. Nat'l Lab. Rels. Bd.*, 2025 WL 516944, (D.C. Cir. Feb. 18, 2025)). The court in *Jones Lang* prohibited the moving party from making new arguments in their reply, not from responding to the opposing party's arguments. 2025 WL 516944, at *6.

[11] CZ asserts that *Bowen* is distinguishable because the "plaintiffs did not know the defendant's identities." ECF 91 at 18. Nothing in *Bowen* suggests that the defendants (who are named) were unknown to the plaintiffs. Rather, *Bowen* indicates that the plaintiffs identified the named defendants' cryptocurrency wallets, 2023 WL 2346292 at *1, just as Plaintiffs did here.

The court authorized service where the plaintiff "indicate[d] it is aware of" the cryptocurrency wallets for a defendant, explaining that the defendants' "use of this technology in their profession makes it reasonable that service in this fashion would apprise them of the pendency of this action." *Id.* at *3. CZ asks the Court to disregard *Cipherblade* on the basis that the plaintiff "tried multiple unconventional methods of service before seeking authorization for NFT service." ECF 91 at 18. However, Plaintiffs did the same here, attempting to serve CZ via mail, through counsel (who declined to accept service), and through X.com (which was not authorized). In addition, like the *Cipherblade* plaintiffs, Plaintiffs can airdrop an NFT into CZ's cryptocurrency wallet which is reasonably calculated to give notice to  CZ, who routinely uses cryptocurrency in his profession. ECF 91 at ¶¶ 17–18. Service via NFT will enable Plaintiffs to securely drop an NFT transmitting the Summons and Complaint to him directly without impinging on UAE privacy interests—and because the blockchain is traceable, Plaintiffs can document that this has been transmitted once they have done so.[12]

### 2. Plaintiffs Made an Earnest Effort to Minimize Offense to UAE Law

CZ fundamentally misunderstands Rule 4(f)(3)—and its advisory committee comments. It is well-established that alternate means of service that offend foreign law *are* permitted under Rule 4(f)(3) so long as the moving party made an "earnest effort" to "minimize[] offense" to foreign law. *Freedom Watch, Inc. v. OPEC*, 766 F.3d 74, 84 (D.C. Cir. 2014). Plaintiffs have done so.

---

[12] It bears mentioning that this too can be avoided if the Court is willing to order CZ's counsel to accept service of the Summons and Complaint via email. Plaintiffs have been forced to come up with minimally offensive, alternative ways to serve CZ, but any concerns CZ has about service via an NFT could be obviated by simply allowing his attorney, who appeared in this case more than 11 months ago, (ECF 45) to simply accept service privately via email. *See* ECF 90 at 2 (requesting authorization to serve CZ through "other means" in the event the Court is not inclined to authorize service via NFT).

To state the obvious, "minimize" does not mean "eliminate." Nevertheless, CZ argues that service in the UAE under Rule 4(f)(3) still requires plaintiffs to use the UAE's court-directed process or at a minimum use a method of service that is used by UAE courts. ECF 91 at 14–15. This argument is absurd because if plaintiffs must follow a foreign country's process to serve a defendant, then Rule 4(f)(3) collapses into Rule 4(f)(2), rendering the provision redundant at best. Indeed, in its binding interpretation of Rule 4(f)(3)'s advisory committee comments, the D.C. Circuit emphasized that alternate service under Rule 4(f)(3) may be authorized "even if the alternative means would contravene foreign law. *Freedom Watch, Inc.*, 766 F.3d at 84; *see also Bazarian Int'l. Fin. Assocs., L.L.C. v. Desarollos Aerohotelco, C.A.*, 168 F.Supp.3d 1, 18 (D.D.C. 2016) ("compliance with foreign laws is not absolutely necessary under the Rule 4(f)(3)"); *Moriarty v. Hashemite Kingdom of Jordan*, 2024 WL 3010850, *4 (D.D.C. June 14, 2024) (stating that "regardless of whether service by publication is proper in Jordan, service must only 'minimize offense to foreign law,' not avoid it completely."). There is no requirement under Rule 4(f)(3) that Plaintiffs adhere to the law of the foreign jurisdiction or use their processes. To the contrary, methods of service under Rule 4(f)(3) may even "contravene" such methods. *Freedom Watch, Inc.*, 766 F.3d at 84.

Each of CZ's objections to Plaintiffs' proposed method of service boils down to one thing: Plaintiffs' proposed method does not go through the UAE court system. ECF 91 at 14–16. But "whether service conflicts with [foreign] law is inapposite to the Rule 4(f)(3) inquiry." *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2020 WL 70935592, at *4 (S.D.N.Y. Dec. 4, 2020) (quotations omitted). As this Court previously explained, while the advisory committee notes for Rule 4(f)(2) "state that service by methods that would violate foreign law is not generally authorized," the notes for Rule 4(f)(3) "more permissibly state that only an earnest effort should be made that is consistent with due process and *minimizes* offense to foreign law." *Bazarian*, 168

14

F.Supp.3d at 18 (citations and quotations omitted). In other words, CZ seeks to inject a requirement for Rule 4(f)(2)—that service does not violate foreign law—into Rule 4(f)(3), which has no such requirement.

Plaintiffs made the required "earnest effort" to "minimize" potential offense by retaining multiple experts and consultants to advise them on the feasibility of serving CZ through UAE diplomatic channels; and, barring that, devising a method that (1) conformed with the UAE's privacy laws; and (2) was consistent with other methods of exchanging information endorsed by the UAE's government. *See Cipherblade, LLC v. Cipherblade, LLC*, 2024 WL 69164, at *3 (D. Ala. Jan. 5, 2024) (authorizing service on defendants in the UAE and Singapore via NFTs airdropped into their cryptocurrency wallets under Rule 4(f)(3)).

## **CONCLUSION**

There is a strong irony that CZ's counsel can be served with this Motion via ECF and yet CZ continues to refuse to grant his attorney permission to accept service of the Summons and Complaint. Allowing CZ's evasion of service of process to continue does not serve the interests of justice and places form over substance. CZ is well aware of the pendency of this litigation and is mocking the US legal system on Twitter (X). Plaintiffs here ask for nothing more than the chance to have their case proceed to be decided on the merits.

Plaintiffs request the Court to assess all the attempts made to reasonably comply with both U.S. and UAE law in the interest of efficiency, feasibility, and time and grant Plaintiffs' Renewed Motion for Alternate Service on Defendants Hamas and CZ by allowing Plaintiffs to serve Hamas via publication of the Summons and Complaint on globallegalnotices.com.  and serve CZ either through (1) service on CZ directly by airdropping an NFT into his crypto wallet; or (2) service by "other means" (such as service upon his attorney via email).

Dated: <u>February 27, 2026</u>

Respectfully Submitted,


<u>/s/ Marlene J. Goldenberg</u>

Marlene J. Goldenberg (DC Bar No. 166040)

**NIGH GOLDENBERG RASO & VAUGHN PLLC**

14 Ridge Square

Third Floor

Washington, D.C. 20016

Phone: (202) 978-2228

Fax: (202) 792-7927

mgoldenberg@nighgoldenberg.com


Samantha V. Hoefs *(pro hac vice)*

**NIGH GOLDENBERG RASO & VAUGHN PLLC**

60 South 6th Street

Suite 2800

Minneapolis, MN 55402

Phone: (612) 445-0202

Fax: (202) 792-7927

shoefs@nighgoldenberg.com


<u>/s/ Amanda Fox Perry</u>

Amanda Fox Perry (DC Bar No. 230024)

**FOX MCKENNA PLLC**

14 Ridge Square

Third Floor

Washington, D.C. 20016

Phone: (202) 852-2000

Fax: (202) 915-0244

amanda@foxmckenna.com


Elyse McKenna *(pro hac vice forthcoming)*

**FOX MCKENNA PLLC**

14 Ridge Square

Third Floor

Washington, D.C. 20016

Phone: (202) 852-2000

Fax: (202) 915-0244

elyse@foxmckenna.com


*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following:

Served electronically via ECF:
Binance Holdings Limited, D/B/A Binance.com,
Bam Management Us Holdings, Inc.
Bam Trading Services Inc. D/B/A Binance.US
Changpeng Zhao

Served via Mailngrvcourtnotices.com:
Islamic Republic of Iran
Harakat Al-Muqawama Al-Islamiya A/K/A/ Hamas

Dated: February 27, 2026                              /s/ *Marlene J. Goldenberg*
                                                      Marlene J. Goldenberg

17