UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LIAT ATZILI, *et al.*,

       *Plaintiffs*,

    v.                                                    Civil Action No. 1:24-cv-03365 (CJN)

ISLAMIC REPUBLIC OF IRAN, *et al.*,

       *Defendants*.

## ORDER

This matter is before the Court on Plaintiffs' amended motion to serve Changpeng Zhao and Harakat al-Muqawama al-Islamiya (more commonly known as Hamas), ECF 90, and Zhao's motion for a protective order, ECF 92. The Court previously granted Plaintiffs' motion for alternative service as to Hamas but denied it as to Zhao. ECF 79. With respect to Hamas, Plaintiffs were unable to serve Hamas through publication in *Al Jazeera*, and therefore seek approval to effect service through digital publication on GlobalLegalNotices.com. As for Zhao, Plaintiffs contend that their "diligent investigation of available service methods" demonstrates that other methods of serving Zhao would be costly and/or futile, and therefore seek to serve him by transmitting a non-fungible token to a cryptocurrency wallet he allegedly controls. ECF 90-1 at 5. Zhao in turn requests a protective order to prevent public disclosure of any information identifying that wallet. ECF 92. For the reasons that follow, the Court denies Plaintiffs' amended motion as to Zhao; grants that motion as to Hamas; and grants Zhao's motion for a protective order.

1

### I.      Amended Motion for Alternative Service

The Court's previous Order explained in detail the history of this case and the legal standard governing alternative service of foreign defendants. ECF 79. To reiterate, Federal Rule of Civil Procedure 4 provides three options for "serving an individual in a foreign country." Fed. R. Civ. P. 4(f). Rule 4(f)(1) permits service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." *Id.* R. 4(f)(1). Rule 4(f)(2) directs that "if there is no internationally agreed means, or if an international agreement allows but does not specify other means," a party may serve an individual "by a method that is reasonably calculated to give notice: (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or (C) unless prohibited by the foreign country's law, by: (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." *Id.* R. 4(f)(2). And Rule 4(f)(3) permits service "by other means not prohibited by international agreement, as the court orders." *Id.* R. 4(f)(3).

Resolution of this amended motion again hinges on Rule 4(f)(3). As the Court previously concluded, attempted service under Rule 4(f)(1) and Rule 4(f)(2) is not a prerequisite to the Court permitting service under Rule 4(f)(3). *See Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 16 (D.D.C. 2016). But even if not mandatory, prior attempts at service are relevant in deciding whether to exercise the Court's discretion to permit alternative service. *See Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 81–84 (D.C. Cir. 2014) (explaining that "the decision whether to allow alternative methods of serving

process under Rule 4(f)(3) is committed to the sound discretion of the district court" (alteration adopted) (citation and internal quotation marks omitted)).  In addition, Rule 4(f)(3) requires that alternative service "not [be] prohibited by *international agreement*," Fed. R. Civ. P. 4(f)(3) (emphasis added)—a different standard than Rule 4(f)(2)(C)'s requirement that service not be "prohibited by the *foreign country's law*," *id.* R. 4(f)(2)(C) (emphasis added).  The Advisory Committee Notes accordingly explain that "an earnest effort should be made to devise a method of communication that is consistent with due process and *minimizes offense to foreign law*."  Fed. R. Civ. P. 4 Notes of Advisory Comm. on Rules—1993 Amends. (emphasis added); *see also Freedom Watch*, 766 F.3d at 84.

*Zhao.*  In denying Plaintiffs' previous motion to serve Zhao through his counsel and X under Rule 4(f)(3), the Court instructed that "[g]oing forward, Plaintiffs may attempt to serve Zhao through other means that comply with Rule 4(f)(2)" and that "[i]n the event those efforts also fail, they may return to the Court to argue why alternative service under Rule 4(f)(3) is merited and would minimize offense to UAE law."  ECF 79 at 5.  Plaintiffs argue that they "ma[d]e multiple attempts at serving [Zhao] under [Rule] 4(f)" by "investigat[ing]" (1) "the use of personal service through several potential process servers," (2) "the use of Letters Rogatory," and (3) "diplomatic measures."  ECF 90-1 at 1–2.  But these options would not work, in their view, because (1) no process server was "willing to do more than bring the Summons and Complaint to the concierge of [Zhao]'s building," (2) "UAE courts rarely, if ever, execute Letters Rogatory in civil matters," and (3) "service via the Mutual Legal Assistance Treaty between the United States and the UAE is reserved for criminal matters only."  *Id.*

As Zhao points out, ECF 91 at 3–6, the Court's prior Order directed Plaintiffs to actually attempt—rather than merely research the plausibility of—service compliant with Rule 4(f)(2).

3

This failure to comply with the Court's earlier Order counsels against granting Plaintiffs' motion. "Although the Court agrees with Plaintiffs that there is no strict hierarchy between the methods of service under Rule 4(f), the Court in this case will not exercise its discretion to allow Plaintiffs to resort to tenuous and novel methods of serving the Defendant when they have not first made the modest efforts" to attempt another method of service expressly permitted under the Rule. *Strange v. Islamic Republic of Iran*, No. 14-cv-435, 2018 WL 11409987, at *3 (D.D.C. Aug. 24, 2018). Whether to authorize alternative service under Rule 4(f)(3) is ultimately "committed to the sound discretion of the district court," *Freedom Watch*, 766 F.3d at 81 (citation and internal quotation marks omitted), and the Court looks disfavorably upon Plaintiffs returning to ask for another novel form of alternative service without following the Court's instructions to attempt a more conventional approach first.

Plaintiffs' primary reason for not having actually attempted service is that such methods would be too expensive, time-consuming, and uncertain. In particular, Plaintiffs do not appear to dispute that issuance of letters rogatory would be a way to satisfy Rule 4(f)(2), but they object that going through with this form of service would be costly and futile.

The evidence that Plaintiffs rely on is inconsistent and does not fully substantiate their assertion that serving Zhao via letters rogatory would be futile. One of Plaintiffs' own declarants explains that in her experience at a process server company, "letters rogatory transmitted to the United Arab Emirates on behalf of litigants in the United States are *not* returned." ECF 93-4 ¶ 8. Yet in the same declaration, she seems to contradict that definitive statement by acknowledging that "[i]n the limited instances in which Letters Rogatory *are* returned for cases involving the United States, the duration is very lengthy and varied, with time frames between 6 months and more than one year." *Id.* ¶ 11 (emphasis added). Another of Plaintiffs' declarants similarly reports

4

that "Letters Rogatory in the UAE involve multiple bureaucratic layers, . . . meaning the entire process often stretches 6–12 months or longer." ECF 90-6 ¶ 13(a). Plaintiffs also make much of the Department of State's guidance about service of process, but that source expressly disclaims that "[t]he information relating to the legal requirements of specific foreign countries is provided for general information only and may not be totally accurate in a particular case." Service of Process, U.S. Department of State (June 18, 2024), https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process.html (last accessed April 28, 2026). Indeed, the Department recommends against relying on letters rogatory only "[i]f the laws of the foreign country permit other methods of service." *Id.* When taking into account that Zhao's declarant says that "[t]he Ministry of Justice confirmed that service of foreign proceedings must proceed exclusively through diplomatic channels and advised that they have recently handled multiple service requests relating to UK and US court proceedings" and that "service by letters rogatory, through diplomatic channels, . . . is the *only* permitted method of serving foreign proceedings on a defendant in the UAE," ECF 91-1 ¶¶ 19–20, the current record does not establish that Plaintiffs could not have attempted this method of service as the Court previously instructed them to do—or at least that doing so would be obviously futile. The Court therefore declines to authorize alternative service for Zhao under Rule 4(f)(3) at this time; but again, Plaintiffs may seek authorization for alternative service if they are unsuccessful serving Zhao through letters rogatory.

*Hamas*. Hamas is a different story. As noted above, the Court previously authorized alternative service of Hamas via publication in *Al Jazeera*. ECF 79 at 5–6. But *Al Jazeera* did not allow the proposed advertisement, and Plaintiffs therefore request permission to serve Hamas through digital publication on GlobalLegalNotices.com, which would include "notice directed at

Hamas on the process server's website, as well as the names Hazem Qassem and Khalil al-Hayya tagged as keyword searches." ECF 90-1 at 11. The Court agrees that this service is "consistent with due process and minimizes offense to foreign law."[1] Fed. R. Civ. P. 4 Notes of Advisory Comm. on Rules—1993 Amends. As was the case when Plaintiffs sought to publish an advertisement in *Al Jazeera*, where an entity's "address is not known, nor is it easily ascertainable," "service by publication" can satisfy due process. *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005) (citation and internal quotation marks omitted); *see also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950) ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."). And, once again, nothing in the record suggests that publication of the summons and amended complaint via GlobalLegalNotices.com would offend the law of any foreign country where Hamas is located.

## II.    Motion for Protective Order

In response to Plaintiffs' request that they be permitted to serve Zhao by airdropping a non-fungible token into a cryptocurrency wallet that he allegedly controls, Zhao moves for a protective order "prohibiting the public filing or disclosure of (i) any cryptocurrency wallet address alleged to belong to Mr. Zhao, and (ii) any associated identifying wallet information, including transaction history, balance information, public key data, or other blockchain analytics that could reasonably be used to identify or link a wallet to Mr. Zhao." ECF 92-1 at 2. He expresses concern that public disclosure of information linking the wallet to him would "increas[e] the risk of targeted phishing,

---

[1] As discussed in the previous Order on alternative service, the Court "treats Plaintiffs' reliance on Rule 4(f) as implicitly invoking Rule 4(h), which governs service of 'a corporation, partnership, or association' and directs that service of these kinds of entities located outside of the United States may be done 'in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).'" ECF 79 at 5 n.2 (quoting Fed. R. Civ. P. 4(h)).

social engineering, extortion, and other forms of financial exploitation." *Id.* at 3.  Plaintiffs respond that the motion "is neither ripe nor necessary" and argue that Rule 5.2 "applies only to private, not public, information."  ECF 94 at 2.  But they notably do not dispute Zhao's characterization of the risks associated with revealing his connection to a particular wallet.  Although the Court denies Plaintiffs' request for alternative service at this time, it addresses Zhao's request for a protective order now given the Plaintiffs have not disclaimed the possibility that they could post identifying information about the wallet in the future.

Rule 5.2(e) permits the Court to enter a protective order "[f]or good cause."  Fed. R. Civ. P. 5.2(e).  "To show 'good cause,' the party seeking redaction must show that 'specific harm or prejudice will result' if the protective order is not granted."  *Doe v. Noem*, 781 F. Supp. 3d 1055, 1063 (E.D. Cal. 2025) (quoting *In re Roman Cath. Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011)).  Zhao has made such a showing here.  His concern that public disclosure of identifying information regarding his cryptocurrency wallet would "materially increas[e] the risk of targeted exploitation" is unrebutted.  ECF 92 at 7.  Other courts have recognized the seriousness of the risks associated with identifying cryptocurrency account information, *see, e.g.*, *In re Genesis Glob. Holdco, LLC*, 652 B.R. 618, 637–38 (Bankr. S.D.N.Y. 2023), and the Court sees no reason to doubt that Zhao would face a heightened risk if Plaintiffs publicly linked a particular wallet to him.  That the requested scope of the protective order is narrow and there is no apparent public interest in this sensitive account information further confirms that granting this motion is appropriate.

Plaintiffs' arguments against the protective order are unpersuasive.  Although Plaintiffs contend that Rule 5.2(e) applies only to private information, nothing in the text of the Rule supports

such a limitation.[2]    Indeed, the Advisory Committee Notes discuss "personal" and "sensitive"

information generally and "account number[s]" specifically, with no indication that information

loses all protection if it could be discovered from a public source.  Fed. R. Civ. P. 5.2 Notes of

Advisory Comm. on Rules—2007 Adoption.  In addition, it is not clear that the information linking

this wallet to Zhao is publicly available, as Plaintiffs have merely stated that they "identified . . .

Zhao's cryptocurrency wallet" without specifying how.  ECF 90-2 ¶ 6(a); *see also* ECF 94 at 2

(explaining that "[t]he only way for Plaintiffs to identify [Zhao]'s cryptocurrency wallet is through

investigation of materials already available in the public domain" but not stating that the

information about the wallet being controlled by Zhao is itself public knowledge).    Finally,

Plaintiffs' argument that this motion is not ripe because they have not yet filed any information

about the wallet is inapposite because *post hoc* redaction would likely be insufficient to cure the

harms of disclosure.  If a later dispute arises that turns on identifying information about the wallet,

the Court would be open to reconsidering whether a different degree of sealing/redaction would

---

[2] Plaintiffs rely on two cases for the proposition that Rule 5.2 "applies only to private, not public, information," ECF 94 at 2–3, but neither supports such a restriction here.  First, the Supreme Court made the statement in *Seattle Times Co. v. Rhinehart* that a "party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes" in the context of a protective order under Rule 26 covering "information obtained through use of the discovery process."  467 U.S. 20, 34 (1984).  Yet Rule 5.2, which protects a broader category of "filings made with the court," was not adopted until 2007—well after the Court interpreted Rule 26 in *Seattle Times*.  *See* Fed. R. Civ. P. 5.2.  That case therefore has minimal force here.  Second, although the district court in *Delarosa v. Singh* relied on Rule 5.2 when discussing whether it would be appropriate to seal certain medical records, it ultimately concluded that striking, rather than sealing, the documents in question was the best course of action given that they were unnecessary to resolve the legal question at issue.  No. 2:26-cv-160, 2026 WL 196608, at *2–3 (W.D. La. Jan. 26, 2026).  Applying that logic to this case, there is no need at this stage to enter the wallet information into the record, as the service questions can be decided here without such specifics.  And the remedy the Court ordered in *Delarosa*—striking the documents in question—would be functionally equivalent to not allowing identifying information about the wallet to be filed on the docket here in the first place.

be merited.  Given the current record, however, the Court grants Zhao's motion for a protective order.

Accordingly, it is hereby

**ORDERED** that Plaintiffs' Amended Motion to Serve, ECF 90, is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Plaintiffs may not serve Zhao under Rule 4(f)(3) at this time; and it is further

**ORDERED** that Plaintiffs may serve Hamas under Rule 4(f)(3) within 90 days of this Order by publishing a link on GlobalLegalNotices.com.  The link shall contain a publicly available copy of Plaintiffs' Summons and Amended Complaint, as well as a copy of this Order; and it is further

**ORDERED** that Zhao's Motion for Protective Order, ECF 92, is **GRANTED**.  A Protective Order will be entered contemporaneously with this Order.

DATE:  April 28, 2026

CARL J. NICHOLS
United States District Judge